Jeffrey M. Reisner (State Bar No. 143715)
jreisner@irell.com
Kerri A. Lyman (State Bar No. 241615)
klyman@irell.com
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
Telephone: (949) 760-0991
Facsimile: (949) 760-5200

[Proposed] Reorganization Counsel for the
Debtor and Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>EMAK WORLDWIDE, INC., a Delaware corporation,<br><br>Debtor and Debtor-in-Possession. | Case No. 2:10-BK-42779<br><br>Chapter 11<br><br>**DECLARATION OF TERESA L. TORMEY IN SUPPORT OF DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING JOINT ADMINISTRATION OF RELATED CASES**<br><br>[No Hearing Requested] |

I, Teresa L. Tormey, declare as follows:

1. I am the Corporate Secretary of EMAK Worldwide, Inc. ("EMAK") and EMAK Worldwide Service Corp. ("EMAK Service" and, collectively, the "Debtors"). I was employed by the Debtors, most recently Chief Administrative Officer (following a promotion from Executive Vice President in 2006 and from Senior Vice President in 2004), General Counsel and Corporate Secretary from November 1, 2002 until March 31, 2010, and, since that time, continue to serve EMAK, pursuant to a consulting agreement, as its chief in-house counsel and Corporate Secretary. I also hold positions of Corporate Secretary and Director with each of EMAK's

#2284625.1

wholly-owned subsidiaries. Prior to joining the Debtors, I was a partner in the law firm of Oppenheimer Wolff & Donnelly LLP specializing in corporate and securities law as well as mergers & acquisitions.

2.    The facts stated herein are within my personal knowledge, and if called upon to testify to such facts I could and would competently testify.

3.    This Declaration is in support of the Debtor's Emergency Motion for Order Authorizing Joint Administration of Related Cases (the "Motion").

4.    On August 5, 2010, the within Debtor and its related entity EMAK Service (the "Debtors") filed their respective chapter 11 petitions with this Court ("Petition Date").

5.    EMAK and EMAK Service are related entities. EMAK Service, a Delaware corporation, is owned 100% by EMAK.

6.    EMAK, through its wholly-owned subsidiaries, is in the business of providing marketing services and promotional products. EMAK Service is the corporate "back-office" for EMAK, providing centralized services to EMAK and all of its subsidiaries. EMAK was formed in 1983 as Marketing Equities in New York City. In 1991, Marketing Equities was renamed Equity Marketing. In 1993, Equity Marketing opened an office in Hong Kong, and in 1994, relocated headquarters from New York to Los Angeles.

7.    In 1994, EMAK went public and its stock traded on NASDAQ under the symbol EMAK. In 2004, Equity Marketing changed its name to EMAK Worldwide, Inc. EMAK's common shares traded on NASDAQ from 1994 until April 14, 2008, when trading was suspended. On June 17, 2008, EMAK was delisted. EMAK subsequently deregistered with the Securities and Exchange Commission ending its status as a reporting public company, although its common shares continue to trade on the pink sheets.

8.    EMAK is the parent company of a number of entities (collectively, the "Companies") which provide strategic planning and research, consumer insight development, entertainment marketing, design and manufacturing of custom promotional products, marketing for children, event marketing, shopper marketing and environmental branding. The Companies' businesses are divided into two primary sectors – marketing services and promotional products.

The promotional products business includes planning and implementing promotional programs using licensed popular characters from studios such as Warner Bros. and Universal. The Companies also design and arrange for the manufacturing of a variety of items, such as figurines and plush toys, for their clients' campaigns. In 2007, 2008 and 2009, the promotional products business accounted for the majority of the Companies' sales, with long-time customer Burger King Corporation accounting for approximately half of the Companies' revenue. The Companies also provide marketing services, which include event and collaborative marketing, as well as retail and environmental design services.

9. EMAK's subsidiaries specialize in various areas of marketing services and promotional products as follows:

- Equity Marketing, Inc. is a Los Angeles based company that leverages entertainment properties to build brand value for its clients, providing entertainment marketing and promotion custom premiums. Equity Marketing, Inc. designs and contracts for the manufacture of promotional products that are used as free premiums or sold in conjunction with the purchase of other items at a retailer or quick service restaurant. These promotional products are used for marketing purposes by the companies sponsoring the promotions and the licensors of the entertainment properties. Until cancelling its contract in 2009, Burger King Corporation was the only client of Equity Marketing, inc. and largest client of the Companies on an aggregate basis.
- Logistix Marketing, Inc. and Logistix Inc. also develop promotional products and programs with a focus on marketing to family-focused brands. Logistix Marketing, Inc. and Logistix Inc. specialize in family insight, promotional marketing, 2-D and 3-D premium design and production, licensing consultancy and consumer products.
- Upshot, Inc. is a Chicago-based agency that provides clients with non-traditional marketing services by challenging customer indifference. Upshot, Inc. provides integrated marketing services to its clients, including strategic

|   |   |
|---|---|
| 1 | planning and research, promotion, event, collaborative marketing, retail and |
| 2 | environmental design. |
| 3 | • Neighbor, Inc. also offers full-service, strategic marketing services. Neighbor, |
| 4 | Inc. focuses its marketing services on environmental branding, community |
| 5 | building, movements and experiences. |

10. The Companies' blue-chip clients have included Kellogg, Kohl's, Kraft, Macy's, Procter & Gamble and Safeway, among others.

11. EMAK Service was formed in 2004. EMAK Service provides corporate and support services to the Companies. EMAK Service has no independent operations or source of income other than funds received in connection with the services provided to the Companies.

12. EMAK is a Delaware corporation based in Los Angeles, California. EMAK's headquarters are located at 6330 San Vicente Blvd., Los Angeles, California. EMAK has two classes of stock: common shares and the Series AA Preferred Stock. EMAK has issued and outstanding 7,243,018 shares of common stock. EMAK has issued and outstanding 25,000 shares of Series AA Preferred Stock, all held by Crown EMAK Partners, LLC ("Crown").

13. EMAK Service is a Delaware corporation and a wholly-owned subsidiary of EMAK. EMAK Service's headquarters are located at 6330 San Vicente Blvd., Los Angeles, California. As noted above, EMAK Service provides corporate and support services to the Companies. EMAK Service has no independent operations or source of income other than funds received in connection with the services provided to the Companies.

14. By the Motion, the Debtor is requesting an order authorizing joint administration of this case and that of EMAK Service.

15 I believe that joint administration will substantially reduce the costs of administering the Debtors' cases and will serve to eliminate the inefficiency created by maintaining separate dockets. To a great extent, the Debtor anticipates that numerous similar, if not identical, applications, motions and orders will be involved in the Debtors' cases. Joint administration will avoid wasting resources that would result through duplication of effort if the cases involving the Debtors were to proceed separately. I believe that the Debtors' creditors stand

1  to benefit from the increased efficiency of administration anticipated through joint administration
2  because they will not be require to review and separately respond to substantially similar motions,
3  disclosure statements, and other pleadings that would otherwise be filed in separate cases. On the
4  other hand, joint administration will permit the Debtors to respond more efficiently to the demands
5  of their creditors, and will reduce attorneys' fees, copying costs, mailing costs and costs of
6  administering the cases.

7      16.   I am aware of no conflict of interest or prejudice to creditors that will result from
8  joint administration of the Debtors' estates.

9      I declare under penalty of perjury under the laws of the United States of America that the
10 foregoing is true and correct.

11     Executed this 6th day of August, 2010, at Newport Beach, California.

                                            _____
                                            Teresa L. Tormey