| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| Oscar Garza, SBN 149790<br>Daniel B. Denny, SBN 238175<br>GIBSON, DUNN & CRUTCHER LLP<br>333 South Grand Avenue<br>Los Angeles, California 90071-3197<br>Telephone: (213) 229-7000<br>Facsimile: (213) 229-7520 | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

In re: EMAK WORLDWIDE, INC., a Delaware corporation,

CHAPTER 11

CASE NUMBER 2:10-42779-RN

Debtor.

(No Hearing Required)

## REQUEST FOR ISSUANCE OF NOTICE OF TRANSFER
## OF CLAIM PURSUANT TO F.R.B.P. 3001(e)

TO THE CLERK OF THE UNITED STATES BANKRUPTCY COURT:

Please issue the required notice to the Original Creditor identified below that all right, title and interest in and to the following claim has been transferred:

1. Person or entity to whom the claim has been transferred ("Substitute Creditor"):

   Name:    Somerville, LLC                    Telephone Number: ( 202 ) 466-5900

   Address:    1775 Pennsylvania Ave. NW, Suite 1200

   Washington, DC  20006

2. Date of Transfer of Claim: 02/22/11

3. Type of Claim:    ☐ Secured          ☐ Priority Unsecured        ☒ General Unsecured
4. Amount of Claim: $ 150,000.00                    5.  Date of Filing of Proof of Claim: 12/21/10
6. Claims Docket Number: 33                         7.  Date of Transfer of Claim: 02/22/11
8. Person or entity who filed the claim ("Original Creditor"):

   Name:    Bruce I. Raben / Hudson Capital Advisors LLC      Telephone Number: ( 310 ) 691-8761

   Address:    9601 Wilshire Blvd., Penthouse

   Beverly Hills, CA 90219

*(Continued on next page)*

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 3001.1

Request for Issuance of Notice of Transfer of Claim Pursuant to F.R.B.P. 3001(e) - *Page 2*    **F 3001.1**

| In re EMAK WORLDWIDE, INC., a Delaware corporation, | CHAPTER 11 |
|---|---|
| Debtor. | CASE NUMBER 2:10–42779-RN |

9. Attorney (if any) for Original Creditor, as set forth on Proof of Claim:  N/A.

Name: _____    Telephone Number: (_____) _____

Address: _____

_____

10. A true and correct copy of the Proof of Claim originally filed is attached hereto as "Exhibit A." True and correct copies of
the documents evidencing the transfer of the claim are attached as "Exhibit B."

Dated: May 6, 2011

SUBSTITUTE CREDITOR

By: _____

Name:  Peter Ackerman, Manager

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 3001.1**

Request for Issuance of Notice of Transfer of Claim Pursuant to F.R.B.P. 3001(e) - *Page 3*  **F 3001.1**

| In re  EMAK WORLDWIDE, INC., a Delaware corporation, | CHAPTER 11 |
|---|---|
| Debtor. | CASE NUMBER  2:10-42779-RN |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

333 South Grand Avenue, Los Angeles, CA  90071

A true and correct copy of the foregoing document described as Request For Issuance of Notice of Transfer of Claim Pursuant to F.R.B.P. 3001(e) _____ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On  May 18, 2011 _____  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☒  Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served): On May 18, 2011 _____  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Richard M. Neiter
Edward R. Roybal Federal Bldg.
255 E. Temple Street
Los Angeles, CA  90012-3300

☐  Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____  I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 5/18/2011 | Betty A. Mendelovitz | *Betty A. Mendelovitz* |
|---|---|---|
| Date | Type Name | Signature |

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 3001.1**

Request for Issuance of Notice of Transfer of Claim Pursuant to F.R.B.P. 3001(e) - *Page 4*    **F 3001.1**

| | |
|---|---|
| In re EMAK WORLDWIDE, INC., a Delaware corporation, | CHAPTER 11 |
| Debtor. | CASE NUMBER 2:10-42779-RN |

## ADDITIONAL SERVICE INFORMATION (if needed):

Austin K Barron    abarron@buchalter.com, IFS_filing@buchalter.com;tcarson@buchalter.com
Ron Bender    rb@lnbrb.com
Russell Clementson    russell.clementson@usdoj.gov
Daniel Denny    ddenny@gibsondunn.com
Ted A Dillman    Ted.dillman@lw.com
Joseph A Eisenberg    jae@jmbm.com
John-patrick M Fritz    jpf@lnbrb.com
Oscar Garza    ogarza@gibsondunn.com
Matthew A Gold    courts@argopartners.net
Michael I Gottfried    mgottfried@lgbfirm.com, msaldana@lgbfirm.com;ncereseto@lgbfirm.com
Irving M Gross    img@lnbrb.com, angela@lnbrb.com
Joshua Holt    josh.holt@bingham.com
Donald K Ludman    dludman@brownconnery.com
Kerri A Lyman    klyman@irell.com
David L. Neale    dln@lnbrb.com
Lisa N Nobles    LNobles@LGBFirm.com, MSaldana@LGBFirm.com;cscott@LGBFirm.com
Justin E Rawlins    jrawlins@winston.com, docketla@winston.com
Jeffrey M. Reisner    jreisner@irell.com
Jeffrey Rosenfeld    jeffrey.rosenfeld@bingham.com
Mark M Sharf    mark@forbankruptcy.com, msharf00@gmail.com
Michael K Sugar    msugar@irell.com
Rocky C Tsai    rocky.tsai@ropesgray.com, thad.davis@ropesgray.com;james.wilton@ropesgray.com;ross.martin@ropesgray.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
Pamela Kohlman Webster    pwebster@buchalter.com

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                **F 3001.1**

# Exhibit A

Case 2:10-bk-42779-RN    Doc 441    Filed 05/18/11    Entered 05/18/11 14:02:56    Desc
Main Document    Page 6 of 22
Case 2:10-bk-42779-RN    Claim 33    Filed 12/21/10    Desc Main Document    Page 1 of
14

Case 2:10-bk-42779-RN    Doc 146    Filed 10/28/10    Entered 10/28/10 12:49:25    Desc
Main Document    Page 4 of 13

B10 (Official Form 10) (04/10) – Page 1

| UNITED STATES BANKRUPTCY COURT – CENTRAL DISTRICT OF CALIFORNIA | PROOF OF CLAIM |
|---|---|

**Name of Debtor:**
☐ EMAK WORLDWIDE, INC.
☐ EMAK WORLDWIDE SERVICE CORP., INC.

**Case Number:**
2:10-bk-42779-RN [Jointly
Administered With:
2:10-bk-42784-RN]

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

**Name of Creditor (The person or other entity to whom the debtor owes money or property):**
BRUCE I RABEN / HUDSON CAPITAL ADVISORS LLC

**Name and address where notices should be sent:**
9601 WILSHIRE BLVD., PENTHOUSE
BEVERLY HILLS, CA 90210
Telephone No. 310 691 8761

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number:
_____
*(if known)*

Filed on: _____

**Name and address where payment should be sent (if different from above):**

FILED
DEC 21 2010
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

Telephone No.

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:**  $ 150,000.00

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or charges

2. **Basis for Claim:** CONTRACT FOR FINANCIAL ADVISORY SERVICES PERFORMED.
(See instruction #2a on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____

    3a. Debtor may have scheduled account as: _____
        (See instruction #3a on reverse side.)

4. **Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:  ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:

Value of Property: $_____ Annual Interest Rate: _____%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $_____   Basis for perfection: _____

Amount of Secured Claim: $_____   Amount Unsecured: $_____

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENT MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

5. **Amount of claim Entitled to Priority under 11 U.S.C. § 507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commission (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, which ever is earlier – 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:

$_____

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date:<br>12·15·2010 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any<br><br>BRUCE I RABEN, OWNER | FOR COURT USE ONLY |
|---|---|---|

2328952_1.DOC

B10 (Official Form 10) (04/10) - Page 2

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

### ITEMS TO BE COMPLETED IN PROOF OF CLAIM FORM

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services limits the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).** If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see Instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity owed a debt by the debtor that arose on or before the date of the bankruptcy filing. See 11 U.S.C. §101 (10)

**Claim**
A claim is the creditor's right to receive payment on a debt owed by the debtor that arose on the date of the bankruptcy filing. See 11 U.S.C. §101 (5) A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

Jeffrey M. Reisner (State Bar No. 143715)
jreisner@irell.com
Michael H. Strub, Jr. (State Bar No. 153828)
mstrub@irell.com
Kerri A. Lyman (State Bar No. 241615)
klyman@irell.com
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
Telephone: (949) 760-0991
Facsimile: (949) 760-5200

Reorganization Counsel for the
Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ☒ EMAK WORLDWIDE, INC., a Delaware corporation, | ) ) | Case No. 2:10-bk-42779-RN |
| ☒ EMAK WORLDWIDE SERVICE CORP., a Delaware corporation, | ) ) ) | Jointly Administered With Case No. 2:10-bk-42784-RN |
| Debtors and Debtors-in-Possession. | ) ) ) | Chapter 11 Proceeding |
| | ) | |

**NOTICE OF DEADLINES TO FILE PROOFS OF CLAIM**
**AGAINST THE DEBTORS**

**TO ALL PERSONS AND ENTITIES WITH CLAIMS AGAINST (1) EMAK WORLDWIDE, INC., A DELAWARE CORPORATION OR (2) EMAK WORLDWIDE SERVICE CORP., A DELAWARE CORPORATION, PLEASE TAKE NOTICE OF THE FOLLOWING:**

On August 5, 2010 (the "Petition Date"), EMAK Worldwide, Inc. ("EMAK") and EMAK Worldwide Service Corp. ("EMAK Service") (the "Debtors") each filed a petition under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California (the "Court"). On August 11, 2010, the Court entered an order directing joint administration of the Debtors' Chapter 11 cases.

**General Bar Date.** Pursuant to Order of the Court entered on October 8, 2010 (the "Bar Date Order"), the last date and time for filing proofs of claim based on prepetition claims as that term is defined in section 101(5) of the Bankruptcy Code, including a claim pursuant to section 503(b)(9) of the Bankruptcy Code ("Proofs of Claim" or a "Proof of Claim," as applicable) by any person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, estates and trusts) against either EMAK or EMAK Service is December 27, 2010[1], at 4:00 p.m. (PT) (the "General Bar Date"), subject only to the limited exceptions or exclusions set forth below.

**Government Bar Date.** Pursuant to the Bar Date Order, the last date and time for filing Proofs of Claim by governmental units (as defined in section 101(27) of the Bankruptcy Code) against either EMAK or EMAK Service is February 1, 2011, at 4:00 p.m. (PT) (the "Government Bar Date"), subject only to the limited exceptions or exclusions set forth below.

---

[1] Which is a date sixty (60) days following service of this Notice.



March 20, 2008

Mr. Jim Holbrook
Chief Executive Officer
EMAK Worldwide, Inc.
6330 San Vicente Blvd.
Los Angeles, CA 90048

Dear Jim:

This letter agreement (this "**Agreement**") confirms our mutual understanding concerning the retention by EMAK Worldwide, Inc. (the "**Company**" or "**you**") of Roth Capital Partners, LLC and Hudson Capital Advisors, LLC ("**Roth/Hudson**", "**we**" or "**us**") to act as your exclusive *financial advisor and exclusive agent (on a "best efforts" basis)* in connection with various (i) Strategic Transaction (as defined below) and (ii) Financing Transaction (as defined below), on the terms set forth below.

For purposes hereof, the term "**Strategic Transactions**" shall mean, whether in one or a series of transactions, (a) any merger, consolidation, joint venture or other business combination pursuant to which part or all of the *Consumer and Promotional Products segment (the "**Agency**") of the Company is combined with that of* any person or one or more persons formed by or affiliated with such person (collectively, the "**Partner**"); (b) the acquisition by a Partner, directly or indirectly, of a material portion of the capital stock of the Agency, by way of *negotiated purchase or any other means*; (c) the acquisition by a Partner, directly or indirectly, of a material portion of the assets, properties and/or businesses of the Agency, by way of a direct or indirect purchase, lease, license, exchange, joint venture or other means; or (d) a joint venture formed through a newco between the Agency and a Partner *where the Agency and the Partner's business will both be put into newco to create a new combined entity.*

For purposes hereof, the term "**Financing Transaction**" shall mean, whether in one or a series of transactions, (a) an Equity Financing or (b) a Debt Financing. The term "**Equity Financing**" shall mean any private placement of equity securities, preferred securities or convertible debt securities ("**Equity Securities**") issued by the Company or any of its *subsidiaries that is exempt from the registration requirements of the Securities Act of 1933, as amended (the "**Securities Act**"). The term "**Debt Financing**" shall mean any private placement of senior or subordinated debt securities, whether secured or unsecured ("**Debt Securities**"), issued by the Company or any of its subsidiaries exempt from the registration requirements of the Securities Act. "**Debt Securities**" shall also mean subordinated debt securities, whether secured or unsecured, that include warrants to purchase Equity Securities.

1.    **Scope of Engagement.** In connection with this Agreement, we will (a) provide you with financial advice and assistance in connection with a Strategic Transaction, which may

EMAK Worldwide, Inc
March 20, 2008
Page 2

include performing valuation analyses, searching for a transaction partner acceptable to you, coordinating visits of potential transaction partners, assisting you with due diligence and assisting you in negotiating the financial aspects of the Strategic Transaction, (b) provide you with advice on and assistance with the development of a recapitalization plan for the Company and a credile restructuring/monetization plan for Crown Capital, and (c) contacting potential investors, assisting in the negotiation and the structuring of a Financing Transaction, assisting in the preparation of appropriate materials and provide related services to help facilitate the successful completion of a Financing Transaction.

The Company acknowledges and agrees that Roth/Hudson reserves the right not to participate in a Strategic Transaction or a Financing Transaction and that the foregoing is not an agreement by Roth/Hudson to underwrite, place or purchase any securities or otherwise provide any financing.

2.   **Fairness Opinions.** If requested by the Board of Directors of the Company, we will also undertake a study to enable us to render an opinion (the "**Opinion**") as to the fairness to the Company or its stockholders, from a financial point of view, of the financial consideration to be received by the Company in connection with a Strategic Transaction. The nature and scope of our investigation as well as the scope, form and substance of our opinion shall be such as we consider appropriate. If requested our opinion will be in written form.

Roth/Hudson will not, as part of the Opinion or any other aspect of this Agreement, undertake any independent valuation or appraisal of any of the assets or liabilities of the Company or the buyer in a Strategic Transaction, or opine or give advice to the Company's Board of Directors or its management or shareholders on any issues of solvency. Any solvency opinion or issues addressed will be the responsibility of an independent solvency professional or professionals to be retained by the Board of Directors of the Company, the Company or the buyer in a Strategic Transaction. We will have no responsibility for monitoring the work or opinions of such solvency professionals.

3.   **Responsibility for Disclosure; Securities Act Compliance.** The Company agrees to furnish Roth/Hudson with all financial and other information concerning the Company and related matters (the "**Information**") which Roth/Hudson may reasonably request for inclusion in any offering document or otherwise. The Company represents that (i) any offering document will be complete and correct in all material respects and will not include an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading, (ii) all historical financial data provided to Roth/Hudson will be prepared in accordance with generally accepted accounting principals and practices then in effect in the United States (or with appropriate reconciliation to such generally accepted accounting principals and practices if required by law or regulation or requested by Roth/Hudson) and will fairly present the financial condition and operation of the Company and (iii) any projections, financial or otherwise, provided to Roth/Hudson will be prepared in good faith with a reasonable basis for the assumptions and the conclusions

2

EMAK Worldwide, Inc
March 20, 2008
Page 3

reached therein and on a basis consistent with the Company's historical financial data. The Company will notify Roth/Hudson promptly of any material adverse change in the business, properties, operations, financial condition or prospects of the Company or concerning any statement contained in any offering document or in any historical financial data provided to Roth/Hudson which is not accurate or which is incomplete in any material respect or which is misleading.

The Company acknowledges that Roth/Hudson may rely, without independent verification, upon the accuracy and completeness of the Information and any offering document, and that Roth/Hudson does not assume any responsibility therefore. Any definitive agreement, letter of intent or other instrument, document or agreement between the Company and investors concerning a Financing Transaction shall provide that Roth/Hudson shall be entitled to rely on the representations and warranties made by the Company to the investors and the representations and warranties made by investors to the Company.  The Company agrees that it shall cause an opinion of its counsel to be addressed and delivered to Roth/Hudson and any investors in a Financing Transaction.

The Company agrees to use all reasonable efforts to cause the buyer in a Strategic Transaction to provide us with such information concerning such buyer as we deem necessary for our financial review and analysis.

The Company represents that it has not taken and the Company will not take any action, directly or indirectly, so as to cause any Financing Transaction pursuant to this Agreement to fail to be entitled to rely upon the exemption from registration afforded by Section 4(2) of the Securities Act.  In effecting any such Financing Transaction, the Company agrees to comply in all material respects with applicable provisions of the Securities Act and any regulations thereunder and any applicable state laws and requirements.

4.    Fees and Expenses.  In consideration of our services, you agree to pay us the following:

(i)    The Company shall pay to Roth/Hudson an expense advance (the "Retainer") of $25,000, payable to us in cash upon execution of this Agreement.  The Retainer will only be used against expenses and any unused amount will be returned to the company upon completion or termination of this agreement.

(ii)    The Company shall pay to Roth/Hudson a monthly fee of $25,000 beginning on the one month anniversary and continuing until the fifth month anniversary of the date of this Agreement (the "Monthly Fee"), for an aggregate total inclusive of the Retainer of $150,000.  The Retainer and the Monthly Fee shall serve as compensation for the scope of work set forth in Section 1(b) hereof.

EMAK Worldwide, Inc
March 20, 2008
Page 4

(iii)   The Company shall pay to Roth/Hudson a fee in connection with a Strategic Transaction as contemplated in Section 1(a) hereof (a "**Strategic Transaction Fee**"), *payable upon consummation of a Strategic Transaction*, equal to the greater of (A) $200,000 or (B) two and one-half percent (2.5%) for the first $60 million in aggregate Consideration received in the Strategic Transaction, one and three-quarters percent (1.75%) for amounts between $60 million to $100 million of aggregate Consideration received and 1.25% for any aggregate Consideration received greater than $100 million

The term "**Consideration**" for purposes of calculating a Strategic Transaction Fee shall be:

(a)   in the case of a sale or disposition of assets of the Agency, the total consideration paid for such assets (including amounts paid into escrow), and *the principal amount of indebtedness for borrowed money assumed by the purchaser and any capital lease and preferred stock obligations of the Company* retired or defeased by the purchaser or issued to the Company or its shareholders in connection with the Strategic Transaction.

(b)   in the case of the sale, exchange or purchase of outstanding common stock of the Agency, the total consideration paid for such stock (*including amounts paid into escrow*), including amounts paid or payable in respect of convertible securities, options or similar rights, whether or not vested, plus, without duplication, the principal amount of all indebtedness for *borrowed money of the Company (including capitalized leases)* outstanding immediately prior to consummation of the Strategic Transaction

(c)   in the case of a merger, joint venture or any combination of the Agency with any other entity, the value received by the Company ("Value"). Such Value will equal *the valuation of the entity to be combined with the Agency (by merger, joint venture or any other combination) multiplied by the post-combination percentage ownership by the Company.* Notwithstanding the formula set forth above *in subsection (iii)(B)*, with respect to the currently contemplated "Project X" transaction, in no event will the aggregate sum of the Retainer, the Monthly Fee and the Strategic Transaction Fee exceed $500,000.

If the Consideration is subject to increase by contingent payments related to future events, the portion of our Strategic Transaction Fee *relating thereto shall be calculated and paid as and when such payments are made, regardless of the date* on which made, except that amounts held in escrow shall be deemed paid at closing. *If all or any portion of the Consideration is of a determined amount but is to be paid over time*, then the portion of the Strategic Transaction Fee attributable thereto shall be payable upon consummation of the Strategic Transaction, calculated based on the present value of such Consideration *utilizing*

4

EMAK Worldwide, Inc
March 20, 2008
Page 5

a discount rate of 6% per annum. For purposes of calculating the Consideration, any currency other than United States dollars shall be translated into United States dollars at the rate of exchange published in The Wall Street Journal (or, if no such rate is published, at the prevailing market rate) on the date a Strategic Transaction is consummated.  For purposes of determining the fair market value of any non-cash Consideration, such determination shall be made on the business day preceding the closing of the Strategic Transaction, except that if any part of the Consideration consists of marketable securities, for purposes of determining the amount of the Consideration the value of those securities shall be determined by using the average of the last sale prices for those securities on the 20 trading days ending the last business day preceding the closing of a Strategic Transaction.

If the Company receives any payment (the "**Break-Up Fee**") from another person (including any payment as reimbursement of expenses) following or in connection with the termination, abandonment or failure to occur of any proposed Strategic Transaction, then the Company shall pay to Roth/Hudson a fee in an amount equal to 10% of the Break-Up Fee upon the Company's receipt of the Break-Up Fee; provided, that in no event shall the amount payable under this paragraph exceed the amount of the Strategic Transaction Fee that would have been payable to Roth/Hudson if the Strategic Transaction had been consummated.

(iv)   In the event an Opinion is requested and furnished by us in accordance with Section 2 of this Agreement, the Company shall pay to Roth/Hudson a fee (the "**Opinion Fee**") in the amount of $250,000, which shall be payable by the Company upon issuance of such Opinion.

(v)   The Company shall pay to Roth/Hudson a fee in connection with a Financing Transaction as contemplated in Section 1(c) hereof (a "**Financing Transaction Fee**"), payable upon consummation of a Financing Transaction, equal to seven percent (7.0%) for equity or equity-linked securities, four percent (4.0%) for non-equity-linked debt of the aggregate consideration received or committed in the Financing Transaction.

(vi)   In connection with a Financing Transaction, the Company shall grant to Roth/Hudson warrants (the "**Agent's Warrants**") to purchase, at Roth/Hudson's option (a) Equity Securities or Debt Securities issued in the Financing Transaction or (b) shares of common stock of the Company, in an amount equal to 5% of (i) the aggregate Consideration in a Strategic Transaction or (ii) the aggregate consideration received or committed in a Financing Transaction, as the case may be.  The Agent's Warrants shall have (a) an exercise price equal to 110% of the 5-day VWAP of common stock preceding the closing of the Strategic Transaction or Financing Transaction, as the case may be, (b) a term of five (5) years, (c) cashless exercise provisions, (d) standard anti-dilution protections and (e) one demand registration right and unlimited "piggy-back" registration rights.

EMAK Worldwide, Inc
March 20, 2008
Page 6

Regardless of whether any Strategic Transaction or Financing Transaction is completed, you agree to reimburse us for, and Roth/Hudson will separately invoice and bill on a monthly basis for, all of the reasonable expenses we incur in connection with this Agreement, subject to a credit of the amount paid in advance pursuant to 4(i). Generally these expenses will include travel costs, document production and other similar expenses, and will also include the reasonable fees of outside counsel and other professional advisors. All payments to be made by you pursuant to this Section 4 shall be made within ten (10) days of receipt by the Company of such invoice and any amount unpaid thirty (30) days from the date of such receipt shall accrue interest at a rate of one percent (1%) per month thereafter until satisfied in full.

All amounts payable under this Agreement shall be paid in immediately available funds in U.S. Dollars, without setoff and without deduction for any withholding, value-added or other similar taxes, charges, fees or assessments.

No fee payable to any other person (by you or any other company) in connection with the subject matter of this Agreement shall reduce or otherwise affect any fee payable hereunder.

5.    Right of First Refusal.  During the period beginning on the date hereof and ending twelve (12) months following the expiration or termination of this Agreement, the Company grants Roth/Hudson the right to provide investment banking services to the Company on an exclusive basis in all matters for which investment banking services are sought by the Company (such right, the "Right of First Refusal").  For these purposes, investment banking services shall include, without limitation, (i) acting as lead, book-running manager for any underwritten public offering; (ii) acting as exclusive placement agent or financial advisor in connection with any private offering of securities of the Company; and (iii) acting as financial advisor in connection with any sale or other transfer by the Company, directly or indirectly, of a majority or controlling portion of its capital stock or assets to another entity, any purchase or other transfer by another entity, directly or indirectly, of a majority or controlling portion of the capital stock or assets of the Company, and any merger or consolidation of the Company with another entity. Roth/Hudson shall notify the Company of its intention to exercise the Right of First Refusal within 15 business days following notice in writing by the Company.  Any decision by Roth/Hudson to act in any such capacity shall be contained in separate agreements, which agreements would contain, among other matters, provisions for customary fees for transactions of similar size and nature, as may be mutually agreed upon, and indemnification of Roth/Hudson and its affiliates and shall be subject to general market conditions. If Roth/Hudson declines to exercise the Right of First Refusal (which it may do in its sole and absolute discretion), the Company shall have the right to retain any other person or persons to provide such services on terms and conditions which are not materially more favorable to such other person or persons than the terms declined by Roth/Hudson.

EMAK Worldwide, Inc
March 20, 2008
Page 7

6. **Indemnification.** The Company agrees to provide indemnification in accordance with the attached Schedule·I, which is incorporated herein by this reference, and such indemnification shall survive any termination or expiration of this Agreement.

7. **Term and Termination.** The initial term of this Agreement shall be for a period of one (1) year from the date hereof. After 180 days from the execution of this Agreement, this Agreement may be terminated by you or us at any time, upon 30 days' prior written notice to the other party, without liability or continuing obligation, except that, following such termination and any expiration of this Agreement, as the case may be, we shall remain entitled to any fees accrued, and to reimbursement of expenses incurred, pursuant to Section 4 but not yet paid prior to such termination or expiration. In addition, in the case of termination by the Company and any expiration of this Agreement, we shall remain entitled to full payment of all fees contemplated by Section 4 hereof in respect of any Strategic Transaction or Financing Transaction announced or resulting from negotiations commenced during the period from the date hereof until one (1) year following such termination or expiration, as the case may be.

In addition to the fees payable pursuant to Section 4, the provisions of this Agreement relating to the Right of First Refusal in Section 5, the confidentiality contained in Section 8, governing law and submission to jurisdiction contained in Section 10 and with respect to indemnification contained in Section 6 and in Schedule I hereto, as well as the provisions of this Section 7, will survive any termination or expiration of this Agreement.

8. **Confidentiality.** Roth/Hudson agrees to use all nonpublic information provided to it by or on behalf of the Company hereunder solely for the purpose of providing the services which are the subject of this Agreement and to treat confidentially all such information, provided that nothing herein shall prevent Roth/Hudson from disclosing any such information (i) to purchasers or prospective purchasers in connection with a Strategic Transaction or Financing Transaction, (ii) pursuant to the order of any court or administrative agency or in any pending legal or administrative proceeding, (iii) upon the request or demand of any regulatory authority having jurisdiction over Roth/Hudson or any of its affiliates, (iv) to the extent that such information becomes publicly available other than by reason of disclosure by Roth/Hudson or (v) to employees, legal counsel, independent auditors, affiliates and other experts or agents of Roth/Hudson who need to know such information. The Company agrees that, except as required by applicable law, any advice to be provided by Roth/Hudson under this Agreement shall not be disclosed publicly or made available to third parties without the prior approval of Roth/Hudson, which approval shall not be unreasonably withheld.

9. **Other Engagements.**

  (i) Nothing in this Agreement shall be construed to limit the ability of Roth/Hudson or its affiliates to pursue, investigate, analyze, invest in, or engage in investment banking, financial advisory or any other business relationship with entities other than the Company, notwithstanding that such entities may be engaged in a business which is similar to or competitive with the business of the Company, and

EMAK Worldwide, Inc
March 20, 2008
Page 8

notwithstanding that such entities may have actual or potential operations, products, services, plans, ideas, customers or·supplies similar or identical to the Company's, or may have been identified by the Company as potential merger or acquisition targets or potential candidates for some other business combination, cooperation or relationship. The Company expressly acknowledges and agrees that it does not claim any proprietary interest in the identity of any other entity in its industry or otherwise, and that the identity of any such entity is not confidential information.

(ii)    The Company acknowledges that Roth/Hudson may, in the ordinary course of its business, for its own account or the accounts of its customers, hold long or short positions in securities (including options), which may include securities relating *to the Company or other entities which may be involved in the engagement* contemplated hereby.   Nothing in this Agreement shall be deemed to prohibit Roth/Hudson from providing any services permitted by applicable law to any third party or from engaging in any lawfully permitted activity on its own behalf.

(iii)T    he Company acknowledges that Roth/Hudson and its affiliates may have fiduciary or other relationships whereby Roth/Hudson and its affiliates may exercise voting power over securities of various persons, which securities may from time to time include securities of the Company or of potential purchasers of the Equity Securities or Debt Securities in a Financing Transaction or others with interests in respect of a Strategic Transaction. The Company acknowledges that Roth/Hudson and its affiliates may exercise such powers and otherwise perform its functions in connection with such fiduciary or other relationships without *regard to Roth/Hudson's relationship to the Company hereunder.*

10.    <u>Miscellaneous.</u>

(i)    <u>Scope of Use</u>.  Any financial advice, written or oral, that we render pursuant to this Agreement is intended solely for the benefit and use of management and the Board of Directors of the Company in considering the matters to which this Agreement relates, and the Company agrees that such advice may not be disclosed publicly or made available to third parties without our prior written consent, which consent shall not be unreasonably withheld.

(ii)    <u>Successors and Assigns</u>.  The provisions of this Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Company, *Roth/Hudson and any other person entitled to indemnity pursuant to <u>Schedule I</u>* hereto.

(iii)    <u>Independent Contractor Status</u>.  Roth/Hudson has been retained under this Agreement as an independent contractor, and it is understood and agreed that this Agreement does not create a fiduciary relationship between Roth/Hudson and the Company or its Board of Directors.

8

EMAK Worldwide, Inc
March 20, 2008
Page 9

(iv)    **Governing Law; Waiver of Jury Trial.** This Agreement and any claim arising directly or indirectly out of this Agreement (including any claim concerning advice provided pursuant to this Agreement) shall be governed and construed in accordance with the laws of the State of California (without giving effect to the conflicts of law provisions thereof). No such claim shall be commenced, prosecuted or continued in any forum other than the state or federal courts located in California, and each of the parties hereby submits to the jurisdiction of such courts. The Company hereby waives, on behalf of itself and its successors and assigns, any and all right to argue that the choice of forum provision *is or has* become unreasonable in any legal proceeding. Each of Roth/Hudson and the Company waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of this Agreement, or the performance by Roth/Hudson of the services contemplated by, this Agreement.

(v)    **Amendments.** This Agreement may not be amended or modified except in a writing duly executed by the parties hereto.

(vi)    **Press Announcements.** The Company agrees that *Roth/Hudson shall*, upon a successful transaction, have the right to place advertisements in financial and other newspapers and journals at its own expense describing *its services to the Company hereunder.*

(vii)    **Counterparts; Headings.** This Agreement may be signed in counterparts with the same effect as if the signatures hereto were on the same instrument. The headings of the sections of this Agreement have been inserted for convenience only and shall not be deemed a part of this Agreement.

[Signature Page Follows]

9

03/21/2008  14:07    3147252319                FEDEX 4693                        PAGE   02

EMAK Worldwide, Inc
March 20, 2008
Page 10

If the foregoing correctly sets forth our understanding, please so indicate by executing this Agreement and returning the executed copy to us, together with a check or wire transfer for the Retainer set forth in Section 4(i) in the amount of $25,000.

We look forward to working with you toward the successful conclusion of this engagement, and developing and maintaining a long-term relationship with the Company.

Very truly yours,

ROTH CAPITAL PARTNERS, LLC

By: _____
Christopher D. Jennings
Managing Director

HUDSON CAPITAL ADVISORS LLC

By: _____
Bruce L. Raben
Partner

AGREED TO AND ACCEPTED
as of the date first above written:

EMAK WORLDWIDE, INC.

By: _____
Jim Holbrook
Chief Executive Officer

10

EMAK Worldwide, Inc
March 20, 2008
Page 10

If the foregoing correctly sets forth our understanding, please so indicate by executing this Agreement and returning the executed copy to us, together with a check or wire transfer for the Retainer set forth in Section 4(i) in the amount of $25,000.

We look forward to working with you toward the successful conclusion of this engagement, and developing and maintaining a long-term relationship with the Company.

Very truly yours,

ROTH CAPITAL PARTNERS, LLC

By: _____
Christopher D. Jennings
Managing Director

HUDSON CAPITAL ADVISORS LLC

By: _____
Bruce L. Raben
Partner

AGREED TO AND ACCEPTED
as of the date first above written:

EMAK WORLDWIDE, INC.

By: _____
Jim Holbrook
Chief Executive Officer

# Exhibit B

**TRANSFER NOTICE**

   HUDSON CAPITAL ADVISORS LLC ("Hudson") and ROTH CAPITAL PARTNERS, LLC (together with Hudson, the "Seller") sell and transfer to SOMERVILLE, LLC and its successors and assigns ("Buyer"), pursuant to that certain Claim Purchase Agreement between Seller and Buyer ("Agreement"), all of the Seller's rights, title and interest in, to and under the Claim of Seller, as set forth in the Agreement, against EMAK Worldwide, Inc. ("Debtor"), in the aggregate amount of $150,000.00 representing all claims of Seller pending against Debtor in the United States Bankruptcy Court for the Central District of California, administered as Case No. 2:10-bk-42779-RN.

   IN WITNESS WHEREOF, the Parties hereto have signed below as of the 22nd day of February, 2011.

**SELLER**       HUDSON CAPITAL ADVISORS LLC, a
             Delaware limited liability company

             By: _____
             Name: Bruce Raben
             Title: _____

**SELLER**       ROTH CAPITAL PARTNERS, LLC, a
             _____ limited liability company

             By: _____
             Name: _____
             Title: _____

**BUYER:**       SOMERVILLE, LLC, a Delaware limited
             liability company

             By: _____
             Name: Peter Ackerman
             Title: Manager

## TRANSFER NOTICE

HUDSON CAPITAL ADVISORS LLC ("Hudson") and ROTH CAPITAL PARTNERS, LLC (together with Hudson, the "Seller") sell and transfer to SOMERVILLE, LLC and its successors and assigns ("Buyer"), pursuant to that certain Claim Purchase Agreement between Seller and Buyer ("Agreement"), all of the Seller's rights, title and interest in, to and under the Claim of Seller, as set forth in the Agreement, against EMAK Worldwide, Inc. ("Debtor"), in the aggregate amount of $150,000.00 representing all claims of Seller pending against Debtor in the United States Bankruptcy Court for the Central District of California, administered as Case No. 2:10-bk-42779-RN.

IN WITNESS WHEREOF, the Parties hereto have signed below as of the 22nd day of February, 2011.

SELLER

HUDSON CAPITAL ADVISORS LLC, a
Delaware limited liability company

By: _____
Name: Bruce Raben
Title: _____

SELLER

ROTH CAPITAL PARTNERS, LLC, a
California limited liability company

By: _____
Name: Cliff Walker D. Fleming
Title: Managing Director

BUYER:

SOMERVILLE, LLC, a Delaware limited
liability company

By: _____
Name: Peter Ackerman
Title: Manager