1  IRELL & MANELLA LLP
   Jeffrey M. Reisner (State Bar No. 143715)
2  jreisner@irell.com
   Michael H. Strub, Jr. (State Bar No. 153828)
3  mstrub@irell.com
   Kerri A. Lyman (State Bar No. 241615)
4  klyman@irell.com
   840 Newport Center Drive, Suite 400
5  Newport Beach, California 92660
   Telephone: (949) 760-0991
6  Telecopier: (949) 760-5200

7  Reorganization Counsel for the
   Debtors and Debtors-in-Possession
8

9
                    UNITED STATES BANKRUPTCY COURT
10
                    CENTRAL DISTRICT OF CALIFORNIA
11
                         LOS ANGELES DIVISION
12
   In re                              Case No. 2:10-bk-42779-RN
13
                                      Jointly Administered With
14                                    Case No. 2:10-bk-42784-RN

15  ☒   EMAK WORLDWIDE, INC., a Delaware    Chapter 11 Proceeding
    corporation,
16                                    **[REDLINED] REVISED FIRST**
    ☒   EMAK WORLDWIDE SERVICE CORP., a    **AMENDED JOINT PLAN OF**
17  Delaware corporation,             **REORGANIZATION FOR EMAK**
                                      **WORLDWIDE, INC. AND EMAK**
             Debtors and Debtors-in-Possession.    **WORLDWIDE SERVICE CORP. DATED**
18                                    **APRIL 11, 2011, AS MODIFIED**
19
                                      Confirmation Hearing Date and Time:
20                                    DATE:     June 9, 2011
                                      TIME:     2:00 p.m.
21                                    PLACE:    Courtroom 1645
                                                255 East Temple Street
22                                              Los Angeles, CA 90012
23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2415947.1 02

# TABLE OF CONTENTS

Page

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS ...................................................8

    A.    Rules of Interpretation, Computation of Time and Governing Law ......................8

    B.    Defined Terms ............................................................................................9

ARTICLE II. ADMINISTRATIVE AND PRIORITY TAX CLAIMS .......................................25

    A.    General ...................................................................................................25

    B.    Administrative Claims ..............................................................................25

        1.    Description .........................................................................................25

        2.    Treatment .........................................................................................26

        3.    Bar Date for Administrative Claims ......................................................26

        4.    Professional Compensation and Reimbursement Claims .........................27

    C.    Priority Tax Claims .................................................................................27

        1.    Description .........................................................................................27

        2.    Treatment .........................................................................................28

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS ...............................................................29

    A.    Summary ................................................................................................29

    B.    Classification and Treatment of Claims and Equity Interests .........................30

        1.    Classes 1-A.1 and 1-B – Other Priority Claims against EMAK and EMAK Service .................................................................30

            (a)    *Classification* ...............................................................................30

            (b)    *Description* ..................................................................................30

            (c)    *Treatment* ...................................................................................30

            (d)    *Voting* ........................................................................................31

        2.    Class 2-A.1 – Secured Claims of Bank of America against EMAK ...............................................................................................31

            (a)    *Classification* ...............................................................................31

            (b)    *Description* ..................................................................................31

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2415947.1 02

Page

    (c)    *Treatment* .................................................................................... 31

    (d)    *Voting* ......................................................................................... 32

3.    Classes 2-A.2 and 2-B – Other Secured Claims against
EMAK and EMAK Service ............................................................... 32

    (a)    *Classification* ........................................................................... 32

    (b)    *Treatment* .................................................................................... 32

    (c)    *Voting* ......................................................................................... 32

4.    Classes 3-A and 3-B – General Unsecured Claims against
EMAK and EMAK Service ............................................................... 33

    (a)    *Classification* ........................................................................... 33

    (b)    *Description* ................................................................................. 33

    (c)    *Treatment* .................................................................................... 33

    (d)    *Voting* ......................................................................................... 33

5.    Classes 4-A and 4-B – Intercompany Claims against EMAK
and EMAK Service ............................................................................. 33

    (a)    *Classification* ........................................................................... 33

    (b)    *Treatment* .................................................................................... 33

    (c)    *Voting* ......................................................................................... 34

6.    Class 5-A – Preferred Equity Interests in EMAK ..................... 34

    (a)    *Classification* ........................................................................... 34

    (b)    *Treatment* .................................................................................... 34

    (c)    *Voting* ......................................................................................... 36

7.    Class 6-A – Common Equity Interests ......................................... 36

    (a)    *Classification* ........................................................................... 36

    (b)    *Treatment* .................................................................................... 36

    (c)    *Voting* ......................................................................................... 37

8.    Class 6-B – Equity Interests in EMAK Service ......................... 37

    (a)    *Classification* ........................................................................... 37

Page

(b)   *Treatment* ................................................................37

(c)   *Voting* ....................................................................38

C.   Special Provision Governing Unimpaired Claims .............................38

D.   Discharge of Claims ...................................................................38

ARTICLE IV. ACCEPTANCE OR REJECTION OF THE PLAN ...........................39

A.   Presumed Acceptance of Plan .....................................................39

B.   Voting Classes...........................................................................39

C.   Acceptance by Impaired Classes of Claims and Equity Interests .........39

D.   Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ......39

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN .........................40

A.   General Settlement of Claims ......................................................40

B.   Substantive Consolidation of Other Priority Claims and General
     Unsecured Claims against Debtors for Plan Purposes Only ................40

C.   Corporate Existence ...................................................................40

D.   Certificate of Incorporation and Bylaws .......................................41

E.   Directors and Officers of Reorganized EMAK ...............................41

F.   Corporate Action .......................................................................42

G.   Vesting of Assets in the Reorganized Debtors ...............................43

H.   Exit Facility and Sources of Cash for Plan Distributions..................43

I.   Crown EMAK Settlement ...........................................................44

J.   Funding of Plan: Term Loan and Revolving Loan ..........................45

     1.   Term Loan .....................................................................45

     2.   Revolving Loan ..............................................................46

K.   Release of Liens, Claims and Equity Interests................................47

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND
              UNEXPIRED LEASES ...............................................................47

A.   Assumption and Rejection of Executory Contracts and Unexpired
     Leases ......................................................................................48

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2415947.1 02

Page

B.   Cure of Defaults for Assumed Executory Contracts and Unexpired
     Leases .................................................................................................49

C.   Claims on Account of the Rejection of Executory Contracts or
     Unexpired Leases ...............................................................................49

D.   Assumption of Director and Officer Insurance Policies ......................50

E.   Indemnification Provisions ..................................................................50

F.   Compensation and Benefit Programs ...................................................51

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS ...............................................51

A.   Distributions for Claims and Equity Interests Allowed as of the
     Effective Date .....................................................................................51

B.   Post-petition Interest on Allowed General Unsecured Claims..............52

C.   Distributions by Reorganized EMAK or Other Applicable
     Distribution Agent...............................................................................52

D.   Delivery and Distributions and Undeliverable or Unclaimed
     Distributions .......................................................................................52

     1.   Record Date for Distributions ....................................................52

     2.   Delivery of Distributions in General ..........................................52

     3.   Distributions for the Benefit of Disputed Claims........................53

     4.   Minimum Distributions ..............................................................53

     5.   Undeliverable Distributions .......................................................53

          (a)   Holding of Certain Undeliverable Distributions ..........53

          (b)   Failure to Claim Undeliverable Distributions ..............54

          (c)   Failure to Present Checks ............................................54

E.   Compliance with Tax Requirements/Allocations .................................55

F.   Means of Cash Payment ......................................................................55

G.   Timing and Calculation of Amounts to Be Distributed .......................55

H.   Setoffs.................................................................................................56

I.   Finality of Distributions .....................................................................56

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2415947.1 02                                                      - iv -

Page

ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT,
      UNLIQUIDATED AND DISPUTED CLAIMS AND EQUITY
      INTERESTS ...................................................................................... 57

    A.    Resolution of Disputed Claims and Equity Interests ........................... 57

        1.    Allowance of Claims and Equity Interests ............................... 57

        2.    Prosecution of Objections to Claims and Equity Interests ........ 57

        3.    Estimation .................................................................................. 58

        4.    Deadline to File Objections to Claims and Equity Interests ...... 58

    B.    No Distributions Pending Allowance .................................................. 58

    C.    Distributions on Account of Disputed Claims and Equity Interests
        Once They Are Allowed ..................................................................... 59

ARTICLE IX. LITIGATION ................................................................................. 59

    A.    Preservation of Rights of Action ....................................................... 59

        1.    Maintenance of Causes of Action ............................................. 59

        2.    Preservation of All Causes of Action Not Expressly Settled
            or Released ................................................................................ 60

ARTICLE X. CONFIRMATION AND CONSUMMATION OF THE PLAN ........... 62

    A.    Conditions Precedent to Confirmation ............................................... 62

    B.    Conditions Precedent to Consummation ............................................. 62

    C.    Waiver of Conditions ......................................................................... 63

    D.    Effect of Non Occurrence of Conditions to Consummation ................ 63

ARTICLE XI. RELEASE, INJUNCTION AND RELATED PROVISIONS ............. 64

    A.    Discharge of Claims ........................................................................... 64

    B.    Release ............................................................................................... 65

        1.    Release by Debtors .................................................................... 65

        2.    Release by Crown and Crown EMAK ...................................... 68

        3.    Release by Holders of Common Equity Interests
            Participating in the Crown EMAK Settlement .......................... 69

    C.    Exculpation ........................................................................................ 70

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2415947.1 02

Page

D. Injunction ............................................................................................... 71

E. Binding Nature Of Plan .......................................................................... 71

ARTICLE XII. RETENTION OF JURISDICTION .................................................. 72

ARTICLE XIII. MISCELLANEOUS PROVISIONS ................................................ 74

A. Dissolution of the Committee ................................................................. 74

B. Payment of Statutory Fees ...................................................................... 74

C. Post-confirmation Status Report ............................................................ 74

D. Modification of Plan ............................................................................... 75

E. Revocation of Plan .................................................................................. 75

F. Successors and Assigns ........................................................................... 76

G. Reservation of Rights .............................................................................. 76

H. Further Assurances .................................................................................. 76

I. Severability ............................................................................................. 76

J. Service of Documents .............................................................................. 77

K. Exemption from Certain Transfer Taxes Pursuant to Section 1146(a)
   of the Bankruptcy Code ........................................................................... 78

L. Governing Law ........................................................................................ 78

M. Tax Reporting and Compliance ............................................................... 78

N. Schedules ................................................................................................ 78

O. No Strict Construction ............................................................................ 79

P. Conflicts .................................................................................................. 79

Q. Final Decree ............................................................................................ 80

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2415947.1 02

**REVISED FIRST AMENDED JOINT PLAN OF REORGANIZATION FOR**

**EMAK WORLDWIDE, INC. AND EMAK WORLDWIDE SERVICE CORP.**

EMAK Worldwide, Inc. ("EMAK"), and EMAK Worldwide Service, Inc. ("EMAK Service" and collectively, the "Debtors"), are the debtors and debtors-in-possession in these chapter 11 bankruptcy cases. On August 6, 2010 (the "Petition Date"), the Debtors commenced these bankruptcy cases by filing a voluntary bankruptcy petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et. seq.* (the "Bankruptcy Code"). This document is the *Revised First Amended Joint Plan of Reorganization for EMAK Worldwide, Inc. and EMAK Worldwide Service, Inc. dated April 11, 2011* (the "Plan").[1]

The Debtors and Crown EMAK Partners LLC ("Crown EMAK" and, collectively with the Debtors, the "Plan Proponents"), the pre-petition Holder of EMAK's preferred stock, File this Plan, which describes how Claims against and Interests in the Debtors will be treated. The Plan is a reorganization plan. In other words, the Plan restructures the Debtors' secured, priority, unsecured debt, and ownership structure. The Plan provides for the substantive consolidation of the Debtors solely for purposes of distributions under the Plan which means that, as of the Effective Date, the assets, claims, and affairs of the Debtors shall be substantively consolidated and the Debtors' Estates shall be deemed pooled for purposes of allowance, treatment, and distributions under the Plan (except to the extent they secure any Allowed Secured Claim).

The Debtors propose to make the following payments to creditors under the Plan:

- Priority Claims. Creditors holding Allowed Priority Claims against each Debtor shall receive Cash in an amount equal to such Allowed Priority Claim on the later of the Effective Date or the date upon which such Priority Claim becomes an Allowed Priority Claim.

- Secured Claim of Bank of America. Unimpaired. Bank of America shall be paid the unpaid portion of its Allowed Secured Claim in full, in Cash, on the Effective Date.

---

[1] Capitalized terms not otherwise defined herein have the meanings set forth in Section I of the Plan.

- <u>Other Secured Claims</u>.  Unimpaired.  Except to the extent that the Holder of an Allowed Other Secured Claim agrees to a different treatment, the Holder of an Allowed Other Secured Claim shall, at the sole election of the Debtors (made prior to the Effective Date), receive one of the following treatments: (a) the Allowed Other Secured Claim shall be cured and reinstated pursuant to section 1124(2) of the Bankruptcy Code, and the Debtors shall fund all amounts and take all actions otherwise necessary to reinstate such Allowed Secured Claim, on or prior to the tenth (10th) Business Day following the Effective Date; or (b) the legal, equitable and contractual rights to which the Holder of such Allowed Secured Claim is entitled shall remain unaltered.  Notwithstanding the foregoing, alternatively, the Debtors may elect to satisfy an Allowed Other Secured Claim by one of the following treatments: (x) the surrender to the Holder of the Allowed Secured Claim of such property of the applicable Estate as may be security and collateral for its Claim, or (y) the payment in Cash of the amount of such Allowed Secured Claim, as set forth in the Confirmation Order or other Final Order.

- <u>General Unsecured Claims</u>.  The Holders of Allowed General Unsecured Claims shall receive one of the following treatments: (i) the payment in Cash of the amount of such Allowed General Unsecured Claim, on the later of the Effective Date or the date upon which such General Unsecured Claim becomes an Allowed General Unsecured Claim; or (ii) such other treatment as agreed to in writing by the Debtors or Reorganized Debtors, as applicable, and such Holder.  Allowed General Unsecured Claims shall be entitled to receive interest from the Petition Date until the Allowed General Unsecured Claim is paid calculated at the Federal Judgment Rate.

- <u>Preferred Equity Interests in EMAK</u>.  Preferred Equity Interests in EMAK, which are owned 100% by Crown EMAK, will be converted into $10.625MM of Series AAA Senior Cumulative Preferred Stock of EMAK ("<u>New Series A Preferred Stock</u>"), $15MM of Series BBB Senior Cumulative Convertible Preferred Stock of

1  EMAK ("New Series B Preferred Stock") and 100% of the Common Stock of

2  EMAK ("New Common Stock"), comprised of 7,243,018 shares[2] of New Common

3  Stock of EMAK.  Following the Effective Date, EMAK shall be merged with and

4  into Newco, which shall be an Illinois corporation, and shall be known as EMAK

5  Holdings, Inc.  Pursuant to the Crown EMAK Settlement, discussed in greater

6  detail below, Crown EMAK will transfer shares of Common Stock of Newco to

7  qualifying Holders of Common Equity Interests in EMAK as discussed in greater

8  detail below.  Newco will establish a management incentive plan as described

9  below.

10  • Common Equity Interests in EMAK.  Common Equity Interests in EMAK shall be

11  cancelled as of the Effective Date and the Holders of Common Equity Interests in

12  EMAK shall receive no distribution on account of their Common Equity Interests.

13  In exchange for a release of all claims against (i) the Debtors; (ii) the Non-Debtor

14  Subsidiaries; (iii) the Crown Released Parties;[3] (iv) the Director and Officer

15  Released Parties;[4] and (v) the Related Persons of each of the foregoing, as

16  discussed in greater detail below, (a) Holders of Common Equity Interests in

17  EMAK holding more than 150,000 shares of Common Equity Interests in EMAK

18  as of the Voting Record Date that make typical private placement representations[5]

19  shall have the option to receive one share of New Common Stock of Newco (an

20  Illinois corporation to be known as EMAK Holdings, Inc.) from Crown EMAK for

21  each share of common stock of EMAK held; and (b) Holders of Common Equity

---

22  [2] This equals the total of the currently outstanding Common Equity Interests such that

23  existing Common Interest Holders will maintain their current percentage ownership of common stock in the Debtors.  This total includes 775,000 restricted shares of Common Equity Interests issued under EMAK's stock-based compensation plans, but excludes 353,081 shares of Common

24  Equity Interests reserved for issuance pursuant to awards granted under such plans.

25  [3] The Crown Released Parties consist of Crown EMAK, Crown, Jeffrey Deutschman, Jason Ackerman, and Peter Ackerman.

26  [4] The Director and Officer Released Parties consist of all current and former directors and officers of EMAK and EMAK Service, and expressly excludes all Non-Released Parties.

27  [5] A list of accreditation requirements will be attached to the Plan as Exhibit "8" or Filed

28  with the Plan Supplement.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

Interests in EMAK holding 150,000 or fewer shares of Common Equity Interests in EMAK as of the Voting Record Date shall have the option to receive $0.10 per share from Crown EMAK. Holders of Common Equity Interests in EMAK may elect this optional treatment by returning the enclosed Designation and Release Form May 19, 2011.

- Equity Interest in EMAK Service. EMAK is the 100% holder of Equity Interests in EMAK Service. Reorganized EMAK shall retain its Equity Interests in Reorganized EMAK Service.

The Plan constitutes a good faith compromise and settlement that has been negotiated between the Debtors, their Estates and Crown EMAK of the Derivative Litigation[6] and of all claims brought, or that could have been brought, by the Debtors, their Estates and their Non-Debtor Subsidiaries against Crown EMAK, the other Crown Released Parties, the Director and Officer Released Parties, and Related Persons, and all of the claims that could have been brought by Crown EMAK against the Debtors, their Estates and their Non-Debtor Subsidiaries, and all Related Persons, in all events excluding any Non-Released Party. In connection with the compromise embodied in the Plan, Crown EMAK will loan funds to the Debtors pursuant to two two-year secured facilities in the form of a term loan in the approximate amount of $2.2 million and a revolving loan in the approximate amount of $2.3 million to be used for the payment of Allowed Claims. Without this financing, it would be impossible for the Debtors to pay all Allowed Priority, Administrative and General Unsecured Claims in full on the Effective Date and, as a result, payments might be delayed for a substantial period of time. In addition, Crown EMAK's General Unsecured Claim against the Debtors, except as specifically agreed to by Crown EMAK in the Plan, shall be deemed Allowed.

---

[6] Pre-petition, certain Holders of Common Equity Interests in EMAK initiated two derivative lawsuits, purportedly on EMAK's behalf, alleging that certain of EMAK's current and former directors and officers had harmed EMAK. The term Derivative Litigation is defined in Section I.B(40) of this document and the Derivative Litigation is discussed in greater detail in Section IV.A.4.c of the Disclosure Statement.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1       Crown EMAK also has agreed to accept New Series A Preferred Stock, New Series B

2  Preferred Stock and New Common Stock in exchange for its Preferred Equity Interests in EMAK

3  (with a liquidation preference of $25 million). Crown EMAK has agreed that up to 15% of the

4  fully diluted common Equity Interests in Newco (approximately 1,086,453 shares) shall be

5  reserved for a management incentive plan to be implemented by Newco. Crown EMAK has also

6  agreed to waive its change of control put right, which Crown asserted entitled it to an immediate

7  payment of $25.625 million. Crown EMAK will also offer Holders of Common Equity Interests

8  in EMAK, who otherwise are receiving nothing in return for their interests, the option to receive a

9  Cash payment (for each Holder that owns 150,000 or fewer shares of Common Equity Interests in

10  EMAK) from Crown EMAK or New Common Stock of Newco (for each Holder that owns more

11  than 150,000 shares of Common Equity Interests in EMAK) from Crown EMAK in exchange for

12  a release of all claims against the Crown Released Parties, the Director and Officer Released

13  Parties, the Debtors, the Non-Debtor Subsidiaries and the Related Persons of each of the foregoing

14  (the "Crown EMAK Settlement").

15       After a careful review of the Debtors' businesses and their prospects for reorganization, as

16  well as the risks and costs associated with the Derivative Litigation, the Debtors and the Special

17  Litigation Committee of EMAK's Board of Directors (the "Special Litigation Committee"), in

18  consultation with their legal and financial advisors, concluded that recoveries to Holders of Equity

19  Interests in EMAK would be maximized and accelerated, and payment risk diminished, by settling

20  their claims against Crown EMAK as provided in the Plan. Crown EMAK has agreed to provide

21  post-Effective Date financing to the Reorganized Debtors. The Debtors believe that the value to

22  be distributed to the Debtors' creditors and equity holders under the Plan exceeds any value to be

23  distributed if the Debtors' assets were to be liquidated.

24       Further, it is the judgment of the Debtors and the Special Litigation Committee that, given

25  their analysis of the positions articulated in the Derivative Litigation and the substantial

26  uncertainty and expense surrounding the ultimate outcome of the Derivative Litigation, it is highly

27  likely that a final adjudication of the Derivative Litigation would, when finally resolved (which

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1  could take years and multiple millions of dollars), result in distributions that are far less than the

2  amounts made available under the Plan.

3  Sent to you in the same envelope as this document is the *Revised First Amended*

4  *Disclosure Statement in Support of the First Amended Joint Plan of Reorganization for EMAK*

5  *Worldwide, Inc. and EMAK Worldwide Service, Inc. dated April 11, 2011* (the "Disclosure

6  Statement"), which has been approved by the Court and is provided to help you understand the

7  Plan.  The Disclosure Statement contains a discussion of the Debtors' history, business, results of

8  operations, historical financial information, accomplishments during the Chapter 11 Cases (as

9  defined below), projections and properties, and a summary and analysis of this Plan and the

10  treatment provided for herein.

11  The Debtors and Crown EMAK are the proponents of this Plan within the meaning of

12  section 1129 of the Bankruptcy Code.  There also are other agreements and documents, which are

13  or will be Filed with the Bankruptcy Court (as defined below), that are referenced in this Plan, the

14  Plan Supplement or the Disclosure Statement as Exhibits.  All such Exhibits are incorporated into

15  and are a part of this Plan as if set forth in full herein.   Subject to certain restrictions and

16  requirements set forth in 11 U.S.C. § 1127 and Fed. R. Bankr. P. 3019, the Debtors reserve the

17  right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation.

18  If the Plan cannot be confirmed as to both of the Debtors, (a) in the Debtors' sole

19  discretion, the Plan may be revoked as to both of the Debtors, or (b) the Debtors may revoke the

20  Plan as to either Debtor not satisfying the cramdown requirements of Section 1129(b) of the

21  Bankruptcy Code (and any such Debtor's Chapter 11 Case may be converted to a chapter 7

22  liquidation, continued or dismissed in the Debtors' sole discretion) and confirm the Plan as to the

23  remaining Debtor.

24

25

26

27

28

# ARTICLE I.

## RULES OF INTERPRETATION, COMPUTATION OF TIME,

## GOVERNING LAW AND DEFINED TERMS

A.     *Rules of Interpretation, Computation of Time and Governing Law*

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or Exhibit having been Filed or to be Filed shall mean that document or Exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles", "Sections", "Exhibits" are references to Articles, Sections, and Exhibits hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) any reference to an Entity as a Holder of a Claim or Equity Interest includes such Entity's successors and assigns; (h) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (i) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules, or the laws of the State of Illinois are applicable, and subject to the provisions of any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, the rights and

1  obligations arising under the Plan shall be governed by, and construed and enforced in accordance

2  with, the laws of the State of California, without giving effect to the principles of conflict of laws

3  thereof.

4  B.    *Defined Terms*

5      Unless the context otherwise requires, the following terms shall have the following

6  meanings when used in capitalized form herein:

7      1.    *"Administrative Claim"* means a Claim for costs and expenses of administration of

8  the Chapter 11 Cases that is Allowed under section 503(b), 507(b), or 1114(e)(2) of the

9  Bankruptcy Code, including, without limitation: (a) any actual and necessary costs and expenses

10  incurred after the Petition Date of preserving the Estates and operating the businesses of the

11  Debtors (such as wages, salaries, and commissions for services and payments for inventory, leased

12  equipment, and leased premises); (b) Professional Compensation and any other compensation for

13  legal, financial, advisory, accounting, and other services and reimbursement of expenses Allowed

14  by the Bankruptcy Court under section 327, 328, 330, 331, 363, or 503(b) of the Bankruptcy Code

15  to the extent incurred prior to the Effective Date; and (c) all fees and charges assessed against the

16  Estates under section 1930, chapter 123, of title 28, United States Code.

17      2.    *"Administrative Claims Bar Date"* means the Business Day that is thirty (30) days

18  after the Effective Date or such other date as approved by order of the Bankruptcy Court.

19      3.    *"Affiliate"* means an "affiliate" as defined in section 101(2) of the Bankruptcy

20  Code.

21      4.    *"Allowed"* means, with respect to any Claim or Equity Interest, except as otherwise

22  provided herein, any of the following: (a) a Claim or Equity Interest that has been scheduled by

23  the Debtors in their Schedules as other than disputed, contingent or unliquidated and as to which

24  (i) the Debtors or any other party in interest have not Filed an objection by the date set forth in the

25  Disclosure Statement Order and (ii) no contrary Proof of Claim has been Filed; (b) a Claim or

26  Equity Interest or any portion thereof that either is not a Disputed Claim or Disputed Equity

27  Interest or has been allowed by a Final Order; (c) a Claim that is allowed: (i) in any stipulation

28  with the Debtors of the amount and nature of such Claim executed prior to the Confirmation Date

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 9 -

and approved by the Bankruptcy Court; (ii) in any stipulation with the Debtors of the amount and nature of such Claim executed on or after the Confirmation Date and, to the extent necessary, approved by the Bankruptcy Court; or (iii) in any contract, instrument, indenture or other agreement entered into or assumed in connection with the Plan; (d) a Claim relating to a rejected executory contract or unexpired lease that (i) is not a Disputed Claim or (ii) has been allowed by a Final Order; or (e) a Claim or Equity Interest that is allowed pursuant to the terms of the Plan.

5.    *"Allowed _____ Claim or Equity Interest"* means an Allowed Claim or Equity Interest of the type described.

6.    *"Amended Organizational Documents"* means the amended and restated certificate of incorporation and by-laws or other applicable organizational documents of the Reorganized Debtors in substantially the form attached to this Plan as Exhibit "1" or Filed with the Plan Supplement.

7.    *"Avoidance Actions"* means any and all avoidance, recovery, subordination or other actions or remedies that may be brought by and on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies arising under sections 502, 510 or 542-553 of the Bankruptcy Code.

8.    *"Ballots"* means the ballot forms, which were approved by the Disclosure Statement Order, distributed with the Disclosure Statement to Holders of Impaired Claims and Impaired Equity Interests entitled to vote upon which is to be indicated, among other things, their acceptance or rejection of the Plan.

9.    *"Bank of America"* means Bank of America, N.A.

10.    *"Bankruptcy Code"* means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Cases.

11.    *"Bankruptcy Court"* means the United States Bankruptcy Court for the Central District of California, or any other court having jurisdiction over the Chapter 11 Cases.

12.    *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, in each case as amended from time to time and as applicable to the Chapter 11 Cases.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

13.    *"Brincko"* means John P. Brincko, an independent director of EMAK appointed to the Board of Directors on October 7, 2010 and the sole member of the Special Litigation Committee.

14.    *"Business Day"* means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

15.    *"California Derivative Action"* has the meaning set forth in the definition of Derivative Litigation.

16.    *"Cash"* means the legal tender of the United States of America or the equivalent thereof.

17.    *"Causes of Action"* means any claims, causes of action (including Avoidance Actions), demands, actions, suits, obligations, liabilities, cross-claims, counter-claims, offsets, or setoffs of any kind or character whatsoever, in each case whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in contract, in tort, in law, or in equity, or pursuant to any other theory of law, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party action, action for indemnity or contribution or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date. A nonexclusive list of the Causes of Action held by the Debtors as of the Effective Date is attached to this Plan as Exhibit "2" or Filed with the Plan Supplement, which shall be deemed to include any derivative actions Filed against the Debtors as of the Effective Date and any Causes of Action against any Non-Released Party. The Debtors will serve Exhibit "2" on any Person or Entity added to such Exhibit.

18.    *"Chapter 11 Cases"* means the chapter 11 bankruptcy cases commenced by the Debtors on the Petition Date in the Bankruptcy Court.

19.    *"Claim"* means any "claim" against either Debtor as defined in section 101(5) of the Bankruptcy Code including (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,

1  legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of

2  performance if such breach gives rise to a right to payment, whether or not such right to an

3  equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed,

4  undisputed, secured or unsecured.

5      20.    *"Claims Bar Date"* means December 27, 2010, or such other date by which Claims

6  must be Filed, as ordered by the Bankruptcy Court.

7      21.    *"Claims Objection Bar Date"* means, for each Claim and Equity Interest that is not

8  otherwise Allowed under this Plan or by prior order of the Bankruptcy Court, the later of (a)

9  ninety (90) days after the Effective Date; (b) ninety (90) days after the Filing of a Proof of Claim

10  for, or request for payment of, such Claim or Equity Interest; (c) ninety (90) days following the

11  conclusion by Final Order of any proceeding other than in the Bankruptcy Court in which any

12  right to payment or equitable remedy set forth in a Proof of Claim is in issue; and (d) such other

13  date as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claim

14  or Equity Interest.  The Bankruptcy Court may extend the Claims Objection Bar Date, upon the

15  request of the Reorganized Debtors, after notice and hearing.

16      22.    *"Claims Register"* means the official register of Claims maintained by the

17  Bankruptcy Court.

18      23.    *"Class"* means a category of Holders of Claims or Equity Interests as set forth in

19  Section III hereof pursuant to section 1122(a) of the Bankruptcy Code.

20      24.    *"Collateral"* means any property or interest in property of either Debtor's Estate

21  that is subject to a valid and enforceable Lien to secure a Claim.

22      25.    *"Committee"* means the official committee of unsecured creditors of the Debtors

23  appointed by the United States Trustee in the Chapter 11 Cases pursuant to section 1102 of the

24  Bankruptcy Code, as reconstituted from time to time.

25      26.    *"Committee Members"* means the members of the Committee, namely:  Donald

26  Kurz, Bouchard Margules & Friedlander PA, and Michael Sanders and in the case of each of the

27  foregoing, their respective successors.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

27.    *"Common Equity Interests"* means the Equity Interests in EMAK other than the Preferred Equity Interests, including the common stock par value $0.001 per share.

28.    *"Confirmation"* means the entry of the Confirmation Order on the docket of the Bankruptcy Court, within the meaning of Bankruptcy Rules 5003 and 9021.

29.    *"Confirmation Date"* means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

30.    *"Confirmation Hearing"* means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

31.    *"Confirmation Order"* means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

32.    *"Consummation"* has the meaning set forth in Section X.B hereof.

33.    *"Crown"* means Crown Capital Group, Inc.

34.    *"Crown EMAK"* means Crown EMAK Partners, LLC.

35.    *"Crown Released Parties"* means Crown EMAK, Crown, Jeffrey Deutschman, Jason Ackerman, and Peter Ackerman.

36.    *"Crown EMAK Settlement"* has the meaning set forth in Section V.I.

37.    *"Cure Amount"* means the amount required to satisfy either of the Debtor's obligations under section 365(b) of the Bankruptcy Code with respect to such Debtor's assumption of any Executory Contract or Unexpired Lease.

38.    *"Debtor(s)"* means individually, EMAK and EMAK Service, and, collectively EMAK and EMAK Service, in each case, in their capacities as debtors in these Chapter 11 Cases.

39.    *"Debtor(s) in Possession"* means, individually, each Debtor, as debtor in possession in these Chapter 11 Cases and, collectively, each Debtor, as debtors in possession in these Chapter 11 Cases.

40.    *"Debtor Released Parties"* has the meaning set forth in Section XI.B.

41.    *"Delaware Derivative Action"* has the meaning set forth in the definition of Derivative Litigation.

42.    *"Derivative Litigation"* means (a) the litigation commenced by Donald Kurz in September 2009 in the Los Angeles County Superior Court captioned *Take Back EMAK, LLC, et al. v. Robeck et al.* asserting, inter alia, derivative and non-derivative claims for breach of fiduciary duty, gross mismanagement, and unlawful, unfair and fraudulent business practices against EMAK and certain current and former directors of EMAK and seeking in excess of $300 million in damages (the "California Derivative Action"); and (b) the litigation commenced by Donald Kurz and Sems Diversified Value, L.P. on October 26, 2009 in the Delaware Court of Chancery captioned *Kurz, et al. v. Holbrook, et al.* asserting, inter alia, claims for breach of fiduciary duty arising from a board decision to engage in a transaction with EMAK's preferred shareholder, Crown (the "Delaware Derivative Action").

43.    *"Designation and Release Form"* means the Designation and Release Form for Holders of Common Equity Interests to elect to receive Cash or New Common Stock in Newco, as the case may be.

44.    *"Director and Officer Released Parties"* means all current and former directors and officers of EMAK and EMAK Service, and expressly excludes all Non-Released Parties.

45.    *"Disclosure Statement"* means that certain *Revised First Amended Disclosure Statement in Support of First Amended Joint Plan of Reorganization for EMAK Worldwide, Inc. and EMAK Worldwide Service Corp. dated April 11, 2011* under Chapter 11 of the Bankruptcy Code, as amended, supplemented, or modified from time to time, that was approved by the Disclosure Statement Order and describes this Plan, including all Exhibits thereto and references therein that relate to this Plan.

46.    *"Disclosure Statement Order"* means that certain *Order (A) Approving the First Amended Disclosure Statement, (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving and Tabulating Votes on the First Amended Plan and for Filing Objections to the First Amended Plan and (D) Approving the Manner and Forms of Notice and Other Related Documents*, entered by the Bankruptcy Court on April [  ], 2011 [Docket No.___], as the order may be amended from time to time.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

47.    *"Disputed Claim or Equity Interest"* means a Claim or Equity Interest, or any portion thereof: (a) listed on the Schedules, as unliquidated, disputed or contingent; (b) that is the subject of an objection or request for estimation Filed or is otherwise disputed by either of the Debtors or any other party in interest in accordance with applicable law and which objection has not been withdrawn, resolved, or overruled by a Final Order of the Bankruptcy Court; or (c) that is otherwise disputed by either of the Debtors or any other party in interest in accordance with applicable law, which dispute has not been withdrawn, resolved, or overruled by Final Order. A nonexclusive list of the Disputed Claims is attached to this Plan as Exhibit "3" or Filed with the Plan Supplement.

48.    *"Disputed Claim Reserve"* means the fund established and held in trust in a segregated account by Reorganized EMAK on the Effective Date to pay Disputed Claims (plus interest) that later become Allowed Claims, which will be comprised of Cash on hand and funds drawn from the Exit Facility.

49.    *"Distribution Agent"* means Reorganized EMAK or any party designated by Reorganized EMAK to serve as distribution agent under this Plan.

50.    *"Distribution Record Date"* means the date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of Holders of Allowed Claims entitled to distributions from Reorganized EMAK under this Plan. The Distribution Record Date for determining the identity of Holders of Equity Interests shall be the Voting Record Date.

51.    *"D&O Liability Insurance Policies"* means all insurance policies for directors and officers' liability maintained by the Debtors as of the Petition Date.

52.    *"Effective Date"* means the Business Day that this Plan becomes effective as provided in Section X hereof.

53.    *"EMAK"* means EMAK Worldwide, Inc.

54.    *"EMAK Service"* means EMAK Worldwide Service Corp.

55.    *"Entity"* means an "entity" as defined in section 101(15) of the Bankruptcy Code.

56. *"Equity Interest"* means (a) any Equity Security in either Debtor, including, without limitation, all issued, unissued, authorized or outstanding shares of stock, together with (i) any options, warrants or contractual rights to purchase or acquire any such Equity Securities at any time with respect to such Debtor, and all rights arising with respect thereto and (ii) the rights of any Entity to purchase or demand the issuance of any of the foregoing and shall include: (1) conversion, exchange, voting, participation, and dividend rights; (2) liquidation preferences; (3) options, warrants, and put rights; and (4) stock-appreciation rights, and (b) any Claim against such Debtor subordinated pursuant to section 510(b) of the Bankruptcy Code, in each case as in existence immediately prior to the Effective Date.

57. *"Equity Security"* means an "equity security" as defined in section 101(16) of the Bankruptcy Code.

58. *"Estates"* means the bankruptcy estates of the Debtors created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

59. *"Exchange Act"* means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a et seq., as now in effect or hereafter amended, and the rules and regulations promulgated thereunder, and any similar federal, state or local law.

60. *"Exculpated Parties"* means, collectively: (a) the Debtors; (b) the Reorganized Debtors; (c) the Committee and the members thereof in their capacity as such; (d) the Plan Proponents; and (e) the respective Related Persons of each of the foregoing Entities; but expressly excludes all Non-Released Parties.

61. *"Exculpation"* means the exculpation provision set forth in Section XI.C hereof.

62. *"Executory Contract"* means a contract to which either Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

63. *"Exhibit"* means an exhibit annexed to either this Plan, the Plan Supplement or as an appendix to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time).

64. *"Exit Facility"* means the Revolving Loan and the Term Loan.

1        65.     *"Federal Judgment Rate"* means an interest rate of .3%; the interest rate described

2  by 28 U.S.C. § 1961, in effect on the Petition Date.

3        66.     *"File"* or *"Filed"* or *"Filing"* means file, filed or filing with the Bankruptcy Court or

4  its authorized designee in the Chapter 11 Cases.

5        67.     *"Final Decree"* means the decree contemplated under Bankruptcy Rule 3022.

6        68.     *"Final Order"* means an order of the Bankruptcy Court as to which the time to

7  appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as

8  to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or

9  rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial,

10  reargue, or rehear shall have been waived in writing in form and substance satisfactory to the

11  Debtors or the Reorganized Debtors, or, in the event that an appeal, writ of certiorari, new trial,

12  reargument, or rehearing thereof has been sought, no stay pending appeal has been granted or such

13  order of the Bankruptcy Court shall have been determined by the highest court to which such order

14  was appealed, or certiorari, new trial, reargument or rehearing shall have been denied and the time

15  to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing

16  shall have expired; provided, however, that the possibility that a motion under Rule 60 of the

17  Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed

18  with respect to such order shall not preclude such order from being a Final Order.

19        69.     *"General Unsecured Claim"* means any Claim against either Debtor that is not

20  a/an: (a) Administrative Claim; (b) Priority Tax Claim; (c) Secured Tax Claim, (d) Other Priority

21  Claim; (e) Other Secured Claim; or (f) Equity Interest.

22        70.     *"Governmental Unit"* means a "governmental unit" as defined in section 101(27) of

23  the Bankruptcy Code.

24        71.     *"Holder"* means an Entity holding a Claim against, or Equity Interest in, either

25  Debtor.

26        72.     *"Impaired"* means, when used in reference to a Claim or Equity Interest, a Claim or

27  Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

28

73.    *"Indemnification Provision"* means each of the indemnification provisions currently in place (whether in the bylaws, certificates of incorporation, board resolutions, employment contracts or otherwise) for the current and former directors, officers, employees, attorneys, other professionals and agents of the Debtors who served in such capacity on or any time after the Petition Date.

74.    *"Initial Distribution Date"* means, subject to the "Treatment" sections in Section III hereof, the date that is as soon as practicable after the Effective Date, when distributions under this Plan shall commence to Holders of Allowed Claims and Equity Interests.

75.    *"Insider"* as defined in section 101(31) of the Bankruptcy Code, means (a) if a Debtor is a corporation, (i) a director of the Debtor, (ii) an officer of the Debtor, (iii) a person in control of the Debtor, (iv) a partnership in which the Debtor is a general partner, (v) a general partner of the Debtor, or (vi) a relative of a general partner, director, officer, or person in control of the Debtor; or (b) if a Debtor is a partnership, (i) a general partner in the Debtor, (ii) a relative of a general partner in, general partner of, or person in control of the Debtor, (iii) a partnership in which the Debtor is a general partner, (iv) a general partner of the Debtor, or (v) a person in control of the Debtor; (c) an affiliate (as defined in section 101(2) of the Bankruptcy Code) of a Debtor, or an Insider of an affiliate as if such affiliate were a Debtor; and (d) a managing agent of a Debtor.

76.    *"Intercompany Claims"* means any Claim of a Debtor or Non-Debtor Subsidiary against any other Debtor or Non-Debtor Subsidiary.

77.    *"Lien"* means a "lien" as defined in section 101(37) of the Bankruptcy Code, and, with respect to any asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

78.    *"Local Rules"* means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Central District of California.

79.    *"New Board"* means the initial board of directors of Reorganized EMAK.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

80. *"New Common Stock"* means the new common equity interests in Reorganized EMAK.

81. *"New Series A Preferred Stock"* means the $10.625 million of AAA Senior Cumulative Preferred authorized to be issued pursuant to this Plan and the Amended Organizational Documents. The terms of the New Series A Preferred Stock are set forth in greater detail in Section III.B.6(b) hereof.

82. *"New Series B Preferred Stock"* means the $15 million of Series BBB Senior Cumulative Convertible Preferred Stock of EMAK authorized to be issued pursuant to this Plan and the Amended Organizational Documents. The terms of the New Series B Preferred Stock are set forth in greater detail in Section III.B.6(b) hereof.

83. *"Newco"* means an Illinois corporation to be formed prior to the Effective Date into which Reorganized EMAK shall be merged on the Effective Date.

84. *"Non-Debtor Subsidiaries"* means Corinthian Marketing, Inc., Equity Marketing, Inc., Logistix Marketing Inc. (f/k/a SCI Promotion, Inc.), Logistix, Inc., Upshot, Inc., EMAK Europe Holdings, Limited, Megaprint Group, Ltd., Logistix Limited, Megaprint Group, Ltd., Megapomotions B.V., Logistix Marketing GmbH (f/k/a Megapromotions GmbH), Johnson Grossfield, Inc., Logistix Retail, Inc. (f/k/a Pop Rocket, Inc.), Equity Marketing Hong Kong, Ltd., EMAK Asia Holding Company Limited, EMAK China Limited, EMAK Hong Kong Limited, Pine Wisdom Limited, and Neighbor, Inc.

85. *"Non-Released Party"* means each of the Entities listed as Non-Released Parties on Exhibit "4" attached hereto or Filed with the Plan Supplement except in their capacity as a member of the Committee. The Debtors will serve Exhibit "4" on any Person or Entity added to such Exhibit.

86. *"Non-Voting Classes"* means, collectively, Classes 1-A, 2-A.1, 2-A.2, 3-A, 4-A, 6-A, 1-B, 2-B, 3-B, 4-B, and 6-B.

87. *"Other Priority Claim"* means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

88.    *"Other Secured Claim"* means any Secured Claim other than Bank of America's Secured Claim or a Secured Tax Claim.

89.    *"Person"* means a "person" as defined in section 101(41) of the Bankruptcy Code.

90.    *"Petition Date"* means August 5, 2010, the date on which the Debtors commenced the Chapter 11 Cases.

91.    *"Plan"* means this *Revised First Amended Joint Plan of Reorganization of EMAK Worldwide, Inc. and EMAK Worldwide Service Corp. dated April 11, 2011*, including the Exhibits, the Plan Supplement, and all supplements, appendices, and schedules thereto, either in its present form or as the same may be altered, amended, modified or otherwise supplemented from time to time.

92.    *"Plan Proponents"* means the Debtors and Crown EMAK.

93.    *"Plan Supplement"* means, collectively, the compilation of documents and forms of documents, and all Exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, including, without limitation, the Exhibits, all of which are incorporated by reference into, and are an integral part of, this Plan, as all of the same may be amended, modified, replaced and/or supplemented from time to time, which shall be Filed with the Bankruptcy Court no later than twenty (20) days prior to the Confirmation Hearing.

94.    *"Preferred Equity Interests"* means the Equity Interests in EMAK that consist of the Series AA Senior Cumulative Preferred Stock, par value $0.001 per share.

95.    *"Priority Claim"* means a Claim other than an Administrative Claim or a Priority Tax Claim which, if Allowed, would be entitled to priority under section 507(a) of the Bankruptcy Code.

96.    *"Priority Tax Claim"* means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

97.    *"Pro Rata"* means proportionately, so that with respect to a particular Allowed Claim or Allowed Equity Interest, the ratio of (a)(i) the amount of property distributed on account of such Claim or Interest to (ii) the amount of such Claim, is the same as the ratio of (b)(i) the amount of property distributed on account of all Allowed Claims or Allowed Equity Interests of

the Class in which such Claim or Allowed Equity Interest is included to (ii) the amount of all Allowed Claims or Allowed Equity Interests in that Class.

98.    *"Professional"* means (a) any Entity employed in the Chapter 11 Cases pursuant to section 327, 363 or 1103 of the Bankruptcy Code or otherwise and (b) any Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

99.    *"Professional Compensation"* means, with respect to a particular Professional, an Administrative Claim of such Professional for compensation for services rendered or reimbursement of costs, expenses or other charges incurred after the Petition Date and prior to and including the Effective Date (including, without limitation, expenses of the members of the Committee incurred as members of the Committee in discharge of their duties as such).

100.    *"Professional Fee Claim"* means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code for accrued Professional Compensation.

101.    *"Professional Fees Bar Date"* means the Business Day that is thirty (30) days after the Effective Date or such other date as approved by order of the Bankruptcy Court.

102.    *"Proof of Claim"* means a proof of claim Filed against either Debtor in the Chapter 11 Cases.

103.    *"Record Holder"* means the Holder of a Claim or Interest as of the Record Date.

104.    *"Reinstated"* means, with respect to any Claim, (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim in accordance with Section 1124 of the Bankruptcy Code or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

such Claim arises from any failure to perform a non-monetary obligation, other than a default arising from failure to operate a non-residential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim (other than either Debtor or an insider of either Debtor) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim.

105.    *"Related Persons"* means, with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including *ex officio* members), managers, partners, trusts, agents, and advisors (including any financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals retained by such Person), in each case acting in such capacity, and any Person claiming by or through any of them; except that no insurer of either Debtor and no Non-Released Party shall be a Related Person.

106.    *"Reorganized Debtors"* means Reorganized EMAK and Reorganized EMAK Service, as reorganized pursuant to this Plan on or after the Effective Date.

107.    *"Reorganized EMAK"* means EMAK, as reorganized pursuant to this Plan. Following the merger of Reorganized EMAK with and into Newco pursuant to Section V.C hereof, all references in this Plan of Reorganized EMAK shall be deemed to refer to Newco, as the successor of such merger.

108.    *"Reorganized EMAK Service"* means EMAK Service, as reorganized pursuant to this Plan, on or after the Effective Date.

109.    *"Revolving Loan"* means the secured credit facility, comprised of a two-year revolving loan in an original principal amount equal to $2.3 million, plus interest accruing at the annual rate of LIBOR + 10.50% per annum (with a minimum of 12%), from and after the Effective Date, to be entered into between the Reorganized Debtors, as borrowers, and Crown EMAK, as lender, substantially as set forth in Exhibit "6" attached hereto or Filed with the Plan Supplement. The terms of the Revolving Loan are set forth in greater detail in Section V.J hereof.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

110.  *"Scheduled"* means with respect to any Claim or Equity Interest, the status and amount, if any, of such Claim or Equity Interest as set forth in the Schedules.

111.  *"Schedules"* means the schedules of assets and liabilities, schedules of Executory Contracts, and statement of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and the applicable Bankruptcy Rules, as such Schedules may be amended, modified, or supplemented from time to time.

112.  *"Secured Claim"* means a Claim that is secured by a Lien on property in which either Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

113.  *"Secured Tax Claim"* means any Secured Claim which, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code.

114.  *"Securities Act"* means the Securities Act of 1933, 15 U.S.C. §§ 77c-77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder, and any similar federal, state or local law.

115.  *"Settlement Deadline"* means the time by which Holders of Common Equity Interests must submit their Designation and Release Forms in order to participate in the Crown EMAK Settlement.

116.  *"Special Litigation Committee"* means the special committee of EMAK that was established on October 7, 2010.  Brincko, an independent director of EMAK, is the sole member of the Special Litigation Committee.

117.  *"Stamp or Similar Tax"* means any stamp tax, recording tax, personal property tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes imposed or assessed by any Governmental Unit.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

118.    *"Subsequent Distribution"* means any distribution of property under this Plan to Holders of Allowed Claims other than the initial distribution given on the Initial Distribution Date.

119.    *"Subsequent Distribution Date"* means the date ninety (90) days after the Initial Distribution Date and the date that is each ninety (90) days thereafter.

120.    *"Term Loan"* means a secured credit facility, comprised of a two-year term loan in an original principal amount equal to $2.2 million, plus interest accruing at the annual rate of LIBOR + 6.50% per annum (with a minimum of 8%), from and after the Effective Date, to be entered into between the Reorganized Debtors, as borrowers, and Crown EMAK, as lender, substantially as set forth in Exhibit "6" attached hereto or Filed with the Plan Supplement.  The terms of the Term Loan are set forth in greater detail in Section V.J hereof.

121.    *"Transfer"* or *"Transferable"* means, with respect to any security or the right to receive a security or to participate in any offering of any security, (a) the sale, transfer, pledge, hypothecation, encumbrance, assignment, constructive sale, participation in, or other disposition of such security or right or the beneficial ownership thereof, (b) the offer to make such a sale, transfer, constructive sale, or other disposition, and (c) each option, agreement, arrangement, or understanding, whether or not in writing and whether or not directly or indirectly, to effect any of the foregoing.  The term "constructive sale" for purposes of this definition means (a) a short sale with respect to such security or right, (b) entering into or acquiring an offsetting derivative contract with respect to such security or right, (c) entering into or acquiring a futures or forward contract to deliver such security or right, or (d) entering into any transaction that has substantially the same effect as any of the foregoing.  The term "beneficially owned" or "beneficial ownership" as used in this definition shall include, with respect to any security or right, the beneficial ownership of such security or right by a Person and by any direct or indirect subsidiary of such Person.

122.    *"Unexpired Lease"* means a lease to which either Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

123.    *"Unimpaired"* means, with respect to a Class of Claims or Equity Interests, a Claim or an Equity Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

124.    *"Voting Classes"* means, collectively, Class 5-A.

125.    *"Voting Deadline"* means May 19, 2011 at 5:00 p.m. prevailing Pacific Time for all Holders of Claims and Equity Interests, which is the date and time by which all Ballots must be received by the Debtors in accordance with the Disclosure Statement Order, or such other date and time as may be established by the Bankruptcy Court with respect to any Voting Class.

126.    *"Voting Record Date"* means (a) for purposes of the date for determining which Holders of Claims and Equity Interests are entitled to receive the Disclosure Statement and vote to accept or reject this Plan, as applicable, which date is April 14, 2011, as set forth in the Disclosure Statement Order, and (b) for purposes of determining the Holders of Common Equity Interests who are entitled to receive the Designation and Release Form (and thereby are entitled to participate in the Crown EMAK Settlement) and the number of shares such Holders will be deemed to hold, which date is **March 15, 2011** for Common Equity Interests in EMAK, as set forth in the Disclosure Statement Order.

## ARTICLE II.

## ADMINISTRATIVE AND PRIORITY TAX CLAIMS

A.    *General*

As required by the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified under this Plan. The following is a description of these Claims and their treatment under the Plan.

B.    *Administrative Claims*

1.    Description

Administrative Claims are costs or expenses of administration of the Chapter 11 Cases incurred prior to the Effective Date and allowed under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including (a) actual and necessary costs and expenses of preserving the Estates after the Petition Date, (b) the value of any goods sold to the Debtors in the ordinary course of the

1    Debtors' businesses, and received by the Debtors within twenty (20) days before the Petition Date,

2    (c) Professional Fee Claims, and (d) fees or charges assessed against the Estates under 28 U.S.C. §

3    1930.

4        2.    Treatment

5        Subject to sub-paragraph 3 below, on the later of the Effective Date or the date on which

6    an Administrative Claim becomes an Allowed Administrative Claim, or, in each such case, as

7    soon as practicable thereafter, each Holder of an Allowed Administrative Claim will receive, in

8    full satisfaction, settlement, discharge and release of, and in exchange for, such Claim either (a)

9    payment in full in Cash for the unpaid portion of such Allowed Administrative Claim; or (b) such

10   other treatment as agreed to in writing by the Debtors or Reorganized Debtors, as applicable, and

11   such Holder; provided, however, that Administrative Claims incurred by the Debtors in the

12   ordinary course of business may be paid in the ordinary course of business in the discretion of the

13   Debtors or Reorganized Debtors in accordance with such applicable terms and conditions relating

14   thereto without further notice to or order of the Bankruptcy Court.

15       3.    Bar Date for Administrative Claims

16       Except as otherwise provided in Section II, unless previously Filed or paid, requests for

17   payment of Administrative Claims must be Filed and served on the Reorganized Debtors pursuant

18   to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation

19   Order no later than the Administrative Claims Bar Date.  Holders of Administrative Claims that

20   are required to File and serve a request for payment of such Administrative Claims that do not File

21   and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped

22   and enjoined from asserting such Administrative Claims against the Debtors or the Reorganized

23   Debtors or their Estates and property and such Administrative Claims shall be deemed discharged

24   as of the Effective Date.  All such Claims shall, as of the Effective Date, be subject to the

25   permanent injunction set forth in Section XI hereof.

26       Objections to such requests must be Filed and served on the Reorganized Debtors and the

27   requesting party by the later of (a) sixty (60) days after the Effective Date, and (b) thirty (30) days

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 26 -

1  after the Filing of the applicable request for payment of Administrative Claims, if applicable, as

2  the same may be modified or extended from time to time by order of the Bankruptcy Court.

3      4.    Professional Compensation and Reimbursement Claims

4      Professionals or other Entities asserting a Professional Fee Claim for services rendered

5  before the Effective Date must File and serve on the Reorganized Debtors and such other Entities

6  who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the

7  Bankruptcy Court an application for final allowance of such Professional Fee Claim no later than

8  the Professional Fees Bar Date; provided that the Reorganized Debtors shall pay Professionals in

9  the ordinary course of business for any work performed after the Effective Date, including those

10  fees and expenses incurred by Professionals in connection with the implementation and

11  consummation of this Plan, in each case without further application or notice to or order of the

12  Bankruptcy Court.  Objections to any Professional Fee Claim must be Filed and served on the

13  Reorganized Debtors and the requesting party by the later of (a) thirty (30) days after the Effective

14  Date and (b) thirty (30) days after the Filing of the applicable request for payment of the

15  Professional Fee Claim.  Each Holder of an Allowed Professional Fee Claim shall be paid by the

16  Reorganized Debtors in Cash within five Business Days of entry of the order approving such

17  Allowed Professional Fee Claim.

18  C.    *Priority Tax Claims*

19      1.    Description

20      Priority Tax Claims are Allowed Claims of Governmental Units for taxes owed by the

21  Debtors that are entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy

22  Code.  The taxes entitled to priority are (a) taxes on income or gross receipts that meet the

23  requirements set forth in section 507(a)(8)(A) of the Bankruptcy Code; (b) property taxes meeting

24  the requirements of section 507(a)(8)(B) of the Bankruptcy Code; (c) taxes that were required to

25  be collected or withheld by the Debtors and for which the Debtors are liable in any capacity as

26  described in section 507(a)(8)(C) of the Bankruptcy Code; (d) employment taxes on wages,

27  salaries, or commissions that are entitled to priority pursuant to section 507(a)(3) of the

28  Bankruptcy Code, to the extent that such taxes also meet the requirements of section 507(a)(8)(D)

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1    of the Bankruptcy Code; (e) excise taxes of the kind specified in section 507(a)(8)(E) of the

2    Bankruptcy Code; (f) customs duties arising out of the importation of merchandise that meet the

3    requirements of section 507(a)(8)(F) of the Bankruptcy Code; and (g) pre-petition penalties

4    relating to any of the foregoing taxes to the extent such penalties are in compensation for actual

5    pecuniary loss as provided in section 507(a)(8)(G) of the Bankruptcy Code.

6        2.    <u>Treatment</u>

7        The legal, equitable and contractual rights of the Holders of Priority Tax Claims are

8    unaltered by this Plan.  Subject to Section VIII hereof, on, or as soon as reasonably practicable

9    after, the later of (a) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority

10   Tax Claim as of the Effective Date, or (b) the date on which such Priority Tax Claim becomes an

11   Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or

12   prior to the Effective Date shall receive in full satisfaction, settlement, discharge and release of,

13   and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtors or

14   Reorganized Debtors: (a) Cash in an amount equal to the amount of such Allowed Priority Tax

15   Claim; (b) such other less favorable treatment as agreed to in writing by the Debtors or

16   Reorganized Debtors, as applicable, and such Holder; or (c) pursuant to and in accordance with

17   sections 1129(a)(9)(C) and (D) of the Bankruptcy Code, Cash in an aggregate amount of such

18   Allowed Priority Tax Claim payable in regular installment payments over a period ending not

19   more than five (5) years after the Petition Date, plus simple interest at the rate required by

20   applicable law on any outstanding balance from the Effective Date, or such lesser rate as is agreed

21   to in writing by a particular taxing authority and the Debtors or Reorganized Debtors, as

22   applicable, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code; <u>provided</u>, <u>further</u>, that

23   Priority Tax Claims incurred by the Debtors in the ordinary course of business may be paid in the

24   ordinary course of business in accordance with such applicable terms and conditions relating

25   thereto in the discretion of the Debtors or Reorganized Debtors without further notice to or order

26   of the Bankruptcy Court.  Any installment payments to be made under clause (c) above shall be

27   made in equal quarterly Cash payments beginning on the Subsequent Distribution Date, and

28

1 continuing on each Subsequent Distribution Date thereafter until payment in full of the applicable

2 Allowed Priority Tax Claim.

3                                                  **ARTICLE III.**

4                                  **CLASSIFICATION AND TREATMENT**

5                          **OF CLASSIFIED CLAIMS AND EQUITY INTERESTS**

6 A.     *Summary*

7        All Claims and Equity Interests, except Administrative Claims and Priority Tax Claims,

8 are placed in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy

9 Code, Administrative Claims and Priority Tax Claims have not been classified as described below.

10       The categories of Claims and Equity Interests listed below classify Claims and Equity

11 Interests for all purposes, including, without limitation, voting, confirmation and distribution

12 pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  This Plan

13 deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the

14 Claim or Equity Interest qualifies within the description of that Class and shall be deemed

15 classified in a different Class to the extent that any remainder of such Claim or Equity Interest

16 qualifies within the description of such different Class.  A Claim or Equity Interest is in a

17 particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class

18 and has not been paid, released or otherwise settled prior to the Effective Date.

19       Summary of Classification and Treatment of EMAK Claims and Equity Interests

20

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1-A | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2-A.1 | Secured Claims of Bank of America | Unimpaired | Deemed to Accept |
| 2-A.2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3-A | General Unsecured Claims | Unimpaired | Deemed to Accept |
| 4-A | Intercompany Claims | Unimpaired | Deemed to Accept |
| 5-A | Preferred Equity Interests | Impaired | Entitled to Vote |
| 6-A | Common Equity Interests | Impaired | Deemed to Reject |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

Summary of Classification and Treatment of EMAK Service Claims and Equity Interests

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1-B | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2-B | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3-B | General Unsecured Claims | Unimpaired | Deemed to Accept |
| 4-B | Intercompany Claims | Unimpaired | Deemed to Accept |
| 5-B | [Intentionally left blank] | | |
| 6-B | Equity Interests in EMAK Service | Unimpaired | Deemed to Accept |

B.    *Classification and Treatment of Claims and Equity Interests*

1.    Classes 1-A.1 and 1-B – Other Priority Claims against EMAK and EMAK Service

(a)    *Classification*

Classes 1-A and 1-B consist of the Other Priority Claims against EMAK and EMAK Service.

(b)    *Description*

Other Priority Claims are unsecured claims other than Administrative Claims, Priority Tax Claims, and General Unsecured Claims, which are entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code. Such Claims include, but are not limited to, Claims for wages, salaries or commissions, including vacation, severance, and sick leave pay as described and limited in section 507(a)(4) of the Bankruptcy Code.

(c)    *Treatment*

The legal, equitable and contractual rights of the Holders of Class 1-A and 1-B Claims are unaltered by this Plan. Subject to Section VIII hereof, on, or as soon as reasonably practicable after, the later of (a) the Initial Distribution Date if such Class 1-A or 1-B Claim is an Allowed Class 1-A or 1-B Claim on the Effective Date or (b) the date on which such Class 1-A or 1-B Claim becomes an Allowed Class 1-A or 1-B Claim, each Holder of an Allowed Class 1-A or 1-B Claim shall receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 1-A or 1-B Claim, at the election of the Debtors or Reorganized Debtors: (A)

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1  Cash equal to the amount of such Allowed Class 1-A or 1-B Claim; or (B) such other less

2  favorable treatment as to which the Debtors or Reorganized Debtors and the Holder of such

3  Allowed Class 1-A or 1-B Claim shall have agreed upon in writing; provided, however, that Class

4  1-A or 1-B Claims incurred by the Debtors in the ordinary course of business may be paid in the

5  ordinary course of business in accordance with the terms and conditions of any agreements

6  relating thereto in the discretion of the Debtors or Reorganized Debtors without further notice to

7  or order of the Bankruptcy Court.

8           (d)    *Voting*

9           Classes 1-A and 1-B are Unimpaired Classes, and the Holders of Class 1-A and 1-B

10  Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the

11  Bankruptcy Code. Therefore, the Holders of Class 1-A and 1-B Claims are not entitled to vote to

12  accept or reject this Plan.

13      2.    Class 2-A.1 – Secured Claims of Bank of America against EMAK

14           (a)    *Classification*

15           Class 2-A.1 is comprised of the Secured Claim of Bank of America against EMAK.

16           (b)    *Description*

17           In February of 2008, EMAK obtained a letter of credit from Bank of America to guarantee

18  the obligations of Upshot, one of EMAK's Chicago based marketing subsidiary, under its lease for

19  office space located in Chicago. In March 2009, Bank of America issued an irrevocable standby

20  letter of credit in the amount of $2,000,000 on behalf of EMAK. The landlord drew down on the

21  letter of credit in the amount of $1.7 million in February of 2011.

22           The letter of credit was secured by $2 million cash held in a restricted account at Bank of

23  America.

24           (c)    *Treatment*

25           Bank of America shall be paid the unpaid portion of its Allowed Secured Claim in full, in

26  Cash, on the Effective Date.

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1       (d)    *Voting*

2       Class 2-A.1 is an Unimpaired Class, and the Holders of Class 2-A.1 Claims are not entitled

3   to vote to accept or reject this Plan.

4       3.    Classes 2-A.2 and 2-B – Other Secured Claims against EMAK and EMAK Service

5       (a)    *Classification*

6       Each Claim that is an Other Secured Claim against either of the Debtors shall be deemed to

7   be classified in a separate sub-Class of Class 2.  Each such sub-Class of Class 2 shall be deemed to

8   be a separate Class under this Plan and, for purposes of voting on the Plan, each sub-Class shall be

9   deemed to be Unimpaired.

10      (b)    *Treatment*

11      Except to the extent that the Holder of an Allowed Other Secured Claim agrees to a

12  different treatment, the Holder of the Allowed Other Secured Claim shall, at the sole election of

13  the Debtors (made prior to the Effective Date), receive one of the following treatments: (a) the

14  Allowed Other Secured Claim shall be cured and reinstated pursuant to section 1124(2) of the

15  Bankruptcy Code, and the Debtors shall fund all amounts and take all actions otherwise necessary

16  to reinstate such Allowed Secured Claim, on or prior to the tenth (10th) Business Day following

17  the Effective Date; or (b) the legal, equitable and contractual rights to which the Holder of such

18  Allowed Secured Claim is entitled shall remain unaltered.    Notwithstanding the foregoing,

19  alternatively, the Debtors may elect to satisfy an Allowed Other Secured Claim by one of the

20  following treatments: (x) the surrender to the Holder of the Allowed Secured Claim of such

21  property of the applicable Estate as may be security and collateral for its Claim, or (y) the payment

22  in Cash of the amount of such Allowed Secured Claim, as set forth in the Confirmation Order or

23  other Final Order.

24      (c)    *Voting*

25      Each sub-class of Class 2 is Unimpaired and the Holders of Class 2-A.2 and 2-B Claims

26  are not entitled to vote to accept or reject this Plan.

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1      4.      <u>Classes 3-A and 3-B – General Unsecured Claims against EMAK and EMAK</u>

2   <u>Service</u>

3              (a)      *Classification*

4      Class 3-A consists of the General Unsecured Claims against EMAK, and Class 3-B

5   consists of the General Unsecured Claims against EMAK Service.

6              (b)      *Description*

7      General Unsecured Claims are Claims that are not Administrative Claims, Priority Tax

8   Claims, Other Priority Claims or Secured Claims.

9              (c)      *Treatment*

10      Subject to Section VIII hereof, the Holders of Allowed General Unsecured Claims shall

11   receive one of the following treatments: (i) the payment in Cash of the amount of such Allowed

12   General Unsecured Claim, on the later of the Effective Date or the date upon which such General

13   Unsecured Claim becomes an Allowed General Unsecured Claim; or (ii) such other treatment as

14   agreed to in writing by the Debtors or Reorganized Debtors, as applicable; and such Holder. The

15   Debtors shall pay interest, from the Petition Date until the Allowed General Unsecured Claim is

16   paid, on all Allowed General Unsecured Claims.    Interest shall be calculated at the Federal

17   Judgment Rate.

18      **<u>In order to resolve the objection to the Plan filed by Bouchard, upon the</u>**

19   **<u>determination by a Court of competent jurisdiction that Bouchard has an Allowed General</u>**

20   **<u>Unsecured Claim, Bouchard shall be entitled to interest on such allowed claim as follows: (a)</u>**

21   **<u>at the Federal Judgment Rate for the period between the Petition Date and the Effective</u>**

22   **<u>Date; and (b) at the Federal Judgment Rate or other legally appropriate rate of interest for</u>**

23   **<u>the period following the Effective Date.</u>**

24              (d)      *Voting*

25      Classes 3-A and 3-B are Unimpaired, and the Holders of Class 3-A and 3-B Claims will be

26   conclusively deemed to have accepted this Plan.    Therefore, Holders of Class 3-A and 3-B Claims

27   will not be entitled to vote to accept or reject this Plan.

28

1        5.      Classes 4-A and 4-B – Intercompany Claims against EMAK and EMAK Service

2            (a)    *Classification*

3      Class 4-A consists of the Intercompany Claims against EMAK and Class 4-B consists of

4  the Intercompany Claims against EMAK Service.

5            (b)    *Treatment*

6      On the Effective Date, all Class 4 Intercompany Claims shall be Reinstated.

7            (c)    *Voting*

8      Classes 4-A and 4-B are Unimpaired and the Holders of Class 4-A or 4-B Claims will be

9  conclusively deemed to have accepted this Plan.  Therefore, Holders of Class 4-A and 4-B Claims

10  will not be entitled to vote to accept or reject this Plan.

11       6.      Class 5-A – Preferred Equity Interests in EMAK

12            (a)    *Classification*

13      Class 5-A consists of all of the Preferred Equity Interests in EMAK.

14            (b)    *Treatment*

15      Crown EMAK, as the 100% holder of the Preferred Equity Interests in EMAK, shall

16  receive the following on account of its Preferred Equity Interests (which shall be cancelled):

17         •   $10.625 million of New Series A Preferred Stock, which –

18                o   shall be converted into Series A Senior Cumulative Preferred Stock

19                    of Newco upon the merger of EMAK with and into Newco;

20                o   shall receive cumulative, compounding dividends of 6% per annum

21                    in 2011, increasing by 1% per year thereafter, to a maximum of

22                    12%;

23                o   shall receive dividends quarterly starting on June 30, 2011;

24                o   shall be redeemed by Reorganized EMAK over a period of five (5)

25                    years from excess Cash;

26                o   shall have the right to elect a majority of Reorganized EMAK's

27                    Board  while  the  New  Series  A  Preferred  Stock  remains

28                    outstanding; and

- o shall have a negative covenant preventing the Reorganized Debtors or the Non-Debtor Subsidiaries from incurring debt (other than unsecured debt in the ordinary course of business and the Exit Facility) without the consent of the Holder of the New Series A Preferred Stock.

- $15 million of New Series B Preferred Stock (with a $1.50 conversion price) which –

  - o shall be converted into Series B Senior Cumulative Convertible Preferred Stock of Newco upon the merger of EMAK with and into Newco;

  - o shall receive cumulative paid-in-kind dividends of 6% per annum in 2011, increasing by 1% per year thereafter, to a maximum of 12%;

  - o shall have no mandatory redemption;

  - o votes with New Common Stock on all matters; and

  - o following the redemption of the New Series A Preferred Stock, the New Series B Preferred Stock may be converted to New Common Stock at Reorganized EMAK's option when (i) EBITDA for any year is greater than 25% of the fully diluted total share value at the conversion price of $1.50 per share or (ii) upon 60 days notice of an offer to redeem the New Series B Preferred Stock at par with all accrued dividends.

- 7,243,018 shares of New Common Stock of EMAK, comprising 100% of New Common Stock in EMAK, which shall be converted into New Common Stock of Newco upon the merger of EMAK with and into Newco, except that –

  - o in exchange for a release of all claims against (i) the Debtors; (ii) the Non-Debtor Subsidiaries; (iii) the Crown Released Parties; (iv)

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

the Director and Officer Released Parties;  and (v) the Related Persons of each of the foregoing (a) Holders of Common Equity Interests in EMAK holding more than 150,000 shares of Common Equity Interests in EMAK as of the Voting Record Date that make typical private placement representations shall have the option to receive one share of New Common Stock in Newco (an Illinois corporation to be known as EMAK Holdings, Inc.) from Crown EMAK for each share of common stock of EMAK held; and (b) Holders of Common Equity Interests in EMAK holding 150,000 or fewer shares of common stock in EMAK as of the Voting Record Date shall have the option to receive $0.10 from Crown EMAK for each share of Common Equity Interests of EMAK held; and

o  Crown EMAK has agreed that up to 15% of the fully diluted Equity Interests in Newco (approximately 1,086,453 shares) shall be reserved for a management incentive plan to be implemented by Newco.

In the event of any inconsistency between the description herein of the terms of the stock of Reorganized EMAK and the terms thereof as set forth in the Amended Organizational Documents, the terms of the Amended Organizational Documents shall govern.

(c)    *Voting*

Class 5-A is an Impaired Class, and the Holders of Class 5-A Preferred Equity Interests are entitled to vote to accept or reject this Plan.

7.    Class 6-A – Common Equity Interests

(a)    *Classification*

Class 6-A consists of all of the Common Equity Interests in EMAK.

(b)    *Treatment*

On the Effective Date, all of the Common Equity Interests in EMAK shall be cancelled.  In exchange for a release of all claims against the Crown Released Parties, the Director and Officer

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

Released Parties, the Debtors, the Non-Debtor Subsidiaries, and the Related Persons of each of the foregoing –

- Holders of Common Equity Interests in EMAK holding more than 150,000 shares of Common Equity Interests in EMAK as of the Voting Record Date that make typical private placement representations have the option to receive from Crown EMAK one share of New Common Stock in Newco for each share of common stock of EMAK held; and

- Holders of Common Equity Interests in EMAK holding 150,000 or fewer shares of Common Equity Interests in EMAK as of the Voting Record Date have the option to receive $0.10 per share of common stock of Newco held from Crown EMAK.

New Common Stock of Newco shall not be entitled to receive dividends until the New Series A Preferred Stock is redeemed in full and the New Series B Preferred Stock is redeemed or converted to New Common Stock. Furthermore, in addition to the transfer restrictions to be set forth in the Amended Organizational Documents, the consent of Newco shall be required prior to any transfer of the New Common Stock of Newco, which consent shall not be unreasonably withheld.

In the event of any inconsistency between the description herein of the terms of the stock of Newco and the terms thereof as set forth in the Amended Organizational Documents, the terms of the Amended Organizational Documents shall govern.

(c)    *Voting*

Class 6-A is Impaired, and the Holders of Class 6-A Equity Interests in EMAK are deemed to reject this Plan and shall have no vote thereon. Holders of Common Equity Interests in EMAK may accept Crown EMAK's offer to provide Holders of Common Equity Interests either Cash or New Common Stock in Newco as described above by signing their Designation and Release Form and then returning the Designation and Release Form by the Settlement Deadline, as directed in the Plan and Disclosure Statement.

8.  Class 6-B – Equity Interests in EMAK Service

(a)  *Classification*

Class 6-B consists of the Equity Interests in EMAK Service.

(b)  *Treatment*

On the Effective Date, Reorganized EMAK shall retain the Equity Interests it holds in Reorganized EMAK Service.

(c)  *Voting*

Class 6-B is an Unimpaired Class, and the Holders of Class 6-B Equity Interests shall be conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 6-B Equity Interests are not entitled to vote to accept or reject this Plan.

C.  *Special Provision Governing Unimpaired Claims*

Except as otherwise provided herein, nothing under this Plan shall affect the Debtors' rights in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

D.  *Discharge of Claims*

Except as otherwise provided herein and effective as of the Effective Date: (a) the rights afforded herein and the treatment of all Claims and Equity Interests shall be in exchange for and in complete satisfaction, settlement, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their assets, property, or Estates; (b) this Plan shall bind all Holders of Claims and Equity Interests, notwithstanding whether any such Holders abstained from voting to accept or reject this Plan or voted to reject this Plan; (c) all Claims and Equity Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, each of their successors and assigns, and each of their assets and properties, any other Claims or Equity Interests based upon any documents, instruments

1  or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the

2  Effective Date.

### ARTICLE IV.

### ACCEPTANCE OR REJECTION OF THE PLAN

5  *A.    Presumed Acceptance of Plan*

6      Classes 1-A, 2-A.1, 2-A.2, 3-A, 4-A, 1-B, 2-B, 3-B, 4-B, and 6-B are Unimpaired under

7  this Plan, and are, therefore, presumed to have accepted this Plan pursuant to section 1126(f) of

8  the Bankruptcy Code.

9  *B.    Presumed Rejection of Plan*

10     Class 6-A is Impaired under the Plan, and the Holders of Class 6-A Equity Interests in

11 EMAK are, therefore, presumed to have rejected this Plan pursuant to section 1126(g) of the

12 Bankruptcy Code.

13 *C.    Voting Classes*

14     Each Holder of an Allowed Claim or Allowed Equity Interest as of the applicable Voting

15 Record Date in each of the Voting Classes (Class 5-A) shall be entitled to vote to accept or reject

16 this Plan.

17 *D.    Acceptance by Impaired Classes of Claims and Equity Interests*

18     Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in

19 section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted this Plan if the

20 Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed

21 Claims in such Class actually voting have voted to accept this Plan.  Pursuant to section 1126(d)

22 of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy

23 Code, a Class of Equity Interests has accepted this Plan if at least two-thirds in amount of the

24 Allowed Equity Interests in such Class actually voting have voted to accept this Plan.

25 *E.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code*

26     The Debtors request confirmation of this Plan under section 1129(b) of the Bankruptcy

27 Code with respect to any Impaired Class that does not accept this Plan pursuant to section 1126 of

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1  the Bankruptcy Code.  The Debtors reserve the right to modify this Plan or any Exhibit in order to

2  satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

3                                    **ARTICLE V.**

4                        **MEANS FOR IMPLEMENTATION OF THE PLAN**

5  *A.      General Settlement of Claims*

6          Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in

7  consideration for the classification, distributions, releases and other benefits provided under this

8  Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise

9  and settlement of all Claims and Equity Interests and controversies resolved pursuant to this Plan.

10 *B.      Substantive Consolidation of Other Priority Claims and General Unsecured Claims*

11          *against Debtors for Plan Purposes Only*

12          As of the Effective Date, solely for the purposes of the Plan, the assets, claims, and affairs

13 of the Debtors and their Estates shall be substantively consolidated.  As a result of the substantive

14 consolidation, on the Effective Date, all property, rights, and claims of the substantively

15 consolidated Debtors and their Estates, and all Claims against the substantively consolidated

16 Debtors and their Estates shall be deemed pooled for purposes of allowance, treatment, and

17 distributions under the Plan (except to the extent they secure any Allowed Secured Claim) and

18 multiple proofs of Claim or Scheduled Claims on account of any Claim upon which any of the

19 substantively consolidated Debtors are co-obligors or guarantors or otherwise may be contingently

20 liable shall, without necessity of objection by any party, be deemed to constitute a single proof of

21 Claim entitled to a single satisfaction from the substantively consolidated Estates in accordance

22 with the terms of the Plan; the duplicative Claims being otherwise deemed disallowed.  For the

23 avoidance of doubt, the Debtors will not be substantively consolidated for any purpose other than

24 as set forth in the Plan or Confirmation Order.

25 *C.      Corporate Existence*

26          The Debtors shall continue to exist after the Effective Date as separate legal entities, with

27 all the powers of corporations, memberships, partnerships and other entities, as applicable,

28 pursuant to the applicable law in their states of incorporation or organization and pursuant to the

1  Amended Organizational Documents.  Except as otherwise set forth herein, or as modified by

2  appropriate corporate action after the Effective Date, the corporate structure and equity ownership

3  of EMAK Service shall be unchanged.  Following the Effective Date, EMAK shall be merged

4  with and into Newco, which shall be an Illinois corporation, and shall be known as EMAK

5  Holdings, Inc.  EMAK, Reorganized EMAK and Newco are authorized to take any and all actions

6  to register such change and the Confirmation Order shall require all government officials to

7  recognize such name change.  The certificate of incorporation and by-laws or other applicable

8  organizational documents of Newco shall be substantially the same as the Amended

9  Organizational Documents, and the equity ownership of Reorganized EMAK immediately

10  following the merger shall be the same as the equity ownership of Reorganized EMAK

11  immediately prior to the merger.

12  D.    *Certificate of Incorporation and Bylaws*

13        The Amended Organizational Documents shall amend or succeed the certificates or articles

14  of incorporation, by-laws, membership agreements, partnership agreements and other

15  organizational documents of the Debtors to satisfy the provisions of this Plan and the Bankruptcy

16  Code, and shall (a) include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy

17  Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent

18  required by section 1123(a)(6) of the Bankruptcy Code; and (b) to the extent necessary or

19  appropriate, include such provisions as may be needed to effectuate and consummate this Plan and

20  the transactions contemplated herein.  After the Effective Date, the Reorganized Debtors may

21  amend and restate their certificates or articles of incorporation and by-laws, and other applicable

22  organizational documents, as permitted by applicable law.

23  E.    *Directors and Officers of Reorganized EMAK*

24        Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose, no later

25  than twenty (20) days prior to the Confirmation Hearing, the identity and affiliations of any Person

26  proposed to serve on the initial board of directors of the Reorganized Debtors, and, to the extent

27  such Person is an insider other than by virtue of being a director, the nature of any compensation

28  for such Person.  Directors and officers shall be identified in Exhibit "5" attached hereto or Filed

1  with the Plan Supplement.  Each such director and officer shall serve from and after the Effective

2  Date pursuant to applicable law and the terms of the Amended Organizational Documents and the

3  other constituent and organizational documents of the Reorganized Debtors.

4  F.    *Corporate Action*

5      Each of the Debtors and the Reorganized Debtors, as applicable, may take any and all

6  actions to execute, deliver, File or record such contracts, instruments, releases and other

7  agreements or documents and take such actions as may be necessary or appropriate to effectuate

8  and implement the provisions of this Plan, including, without limitation, the distribution of the

9  securities to be issued pursuant hereto in the name of and on behalf of the Reorganized Debtors

10  and in each case without further notice to or order of the Bankruptcy Court, act or action under

11  applicable law, regulation, order, or rule or any requirement of further action, vote or other

12  approval or authorization by the security holders, officers or directors of the Debtors or the

13  Reorganized Debtors and as applicable or by any other Person (except for those expressly required

14  pursuant hereto).

15      Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to

16  this Plan that would otherwise require approval of the stockholders, directors or members of either

17  Debtor (as of prior to the Effective Date) shall be deemed to have been so approved and shall be in

18  effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and

19  without any requirement of further action by the stockholders, directors, managers or partners of

20  such Debtor, or the need for any approvals, authorizations, actions or consents of any Person.

21      All matters provided for in this Plan involving the legal or corporate structure of either

22  Debtor or either Reorganized Debtor, as applicable, and any legal or corporate action required by

23  either Debtor or either Reorganized Debtor as applicable, in connection with this Plan, shall be

24  deemed to have occurred and shall be in full force and effect in all respects, in each case without

25  further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation,

26  order, or rule or any requirement of further action, vote or other approval or authorization by the

27  security holders, officers or directors of either Debtor or either Reorganized Debtor, as applicable,

28  or by any other Person.  On the Effective Date, the appropriate officers of each Debtor and each

1   Reorganized Debtor, as applicable, are authorized to issue, execute, and deliver, and consummate

2   the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges,

3   consents, securities, certificates, resolutions and instruments contemplated by or described in this

4   Plan in the name of and on behalf of the Debtor and each Reorganized Debtor, as applicable, in

5   each case without further notice to or order of the Bankruptcy Court, act or action under applicable

6   law, regulation, order, or rule or any requirement of further action, vote or other approval or

7   authorization by any Person.   The secretary of each Debtor and each Reorganized Debtor, as

8   applicable, shall be authorized to certify or attest to any of the foregoing actions.

9   G.      *Vesting of Assets in the Reorganized Debtors*

10           Except as otherwise provided in this Plan or the Confirmation Order, on or after the

11  Effective Date, all property and assets of the Estates (including, without limitation, Causes of

12  Action, unless otherwise waived or released pursuant to an order of the Bankruptcy Court or this

13  Plan) and any property and assets acquired by the Debtors pursuant hereto shall vest in the

14  Reorganized Debtors, free and clear of all Liens, Claims, charges or other encumbrances.  Except

15  as may be provided herein, on and after the Effective Date, the Reorganized Debtors may operate

16  their businesses and may use, acquire or dispose of property and compromise or settle any Claims

17  without supervision or approval by the Bankruptcy Court and free of any restrictions of the

18  Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this

19  Plan and the Confirmation Order.  Without limiting the foregoing, the Reorganized Debtors shall

20  pay the charges that they incur after the Effective Date for Professionals' fees, disbursements,

21  expenses or related support services (including reasonable fees relating to the preparation of

22  Professional fee applications) in the ordinary course of business and without application or notice

23  to, or order of, the Bankruptcy Court.

24  H.      *Exit Facility and Sources of Cash for Plan Distributions*

25           On the Effective Date, the Reorganized Debtors shall be authorized to enter into the Term

26  Loan and the Revolving Loan, as well as execute, deliver, file, record and issue any notes,

27  guarantees, documents (including UCC financing statements), or agreements in connection

28  therewith, in each case without further notice to or order of the Bankruptcy Court, act or action

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity (other than expressly required by the Term Loan or Revolving Loan). Except as otherwise provided in this Plan or the Confirmation Order, all Cash necessary for the Reorganized Debtors to make payments required pursuant to this Plan will be obtained from the Reorganized Debtors' Cash balances, including Cash from operations, the Exit Facility, and reimbursement from the D&O Liability Insurance Policies. Cash payments to be made pursuant to this Plan will be made by the Reorganized Debtors.

I.      *Crown EMAK Settlement*

The effectiveness of the Plan shall automatically, and without the necessity of further notice or hearing approve for all purposes, the settlement described herein between the Debtors and their Estates, on the one hand, and Crown EMAK, on the other hand. The settlement provides:

- For broad exchanges of releases by and between Debtors, their Estates, Crown EMAK, and various related parties. As a result of those releases, (a) the California Derivative Action shall be automatically dismissed with prejudice on the Effective Date; and (b) the defendants in the Delaware Derivative Action shall move to dismiss the Delaware Derivative Action with prejudice to which Reorganized EMAK shall consent, subject to its right to appeal a pre-petition interim award of attorneys fees made in the Delaware Derivative Action;

- Crown EMAK shall provide the Exit Financing, comprised of the Term Loan and the Revolving Loan, as discussed in greater detail in Section V.J herein;

- Crown EMAK shall accept New Series A Preferred Stock, New Series B Preferred Stock and New Common Stock in exchange for its Preferred Equity Interests in EMAK (with a liquidation preference of $25 million);

- Crown EMAK shall also waive its change of control put right, which Crown EMAK asserted entitled it to an immediate payment of $25.625 million;

- Crown EMAK will offer Holders of Common Equity Interests in EMAK holding more than 150,000 shares of Common Equity Interests in EMAK as of the Voting

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations