1   IRELL & MANELLA LLP
    Jeffrey M. Reisner (State Bar No. 143715)
2   jreisner@irell.com
    Michael H. Strub, Jr. (State Bar No. 153828)
3   mstrub@irell.com
    Kerri A. Lyman (State Bar No. 241615)
4   klyman@irell.com
    840 Newport Center Drive, Suite 400
5   Newport Beach, California 92660
    Telephone:    (949) 760-0991
6   Facsimile:    (949) 760-5200

7   Reorganization Counsel for Debtors and
    Debtors-in-Possession
8

9

10

11              **UNITED STATES BANKRUPTCY COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13                  **LOS ANGELES DIVISION**

14  In re                                  ) Case No. 2:10-bk-42779-RN
                                           )
15  ☒  EMAK WORLDWIDE, INC., a Delaware    ) [Jointly Administered With
    corporation,                           ) Case No. 2:10-bk-42784-RN]
                                           )
16                                         )
    ☒  EMAK WORLDWIDE SERVICE CORP.,       ) Chapter 11 Proceeding
17  a Delaware corporation,                )
                                           ) **ORDER CONFIRMING REVISED FIRST**
18                                         ) **AMENDED JOINT PLAN OF**
            Debtors and Debtors-in-Possession. ) **REORGANIZATION FOR EMAK**
19                                         ) **WORLDWIDE, INC. AND EMAK**
                                           ) **WORLDWIDE SERVICE CORP. DATED**
20                                         ) **APRIL 11, 2011, AS MODIFIED**
                                           )
21                                         ) **Confirmation Hearing:**
                                           ) Date:  June 9, 2011
22                                         ) Time:  2:00 p.m.
                                           ) Place: Courtroom 1645
23                                         )         255 East Temple Street
                                           )         Los Angeles, CA 90012
24  _____   )

25

26

27

28

FILED & ENTERED

JUN 10 2011

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY paredes  DEPUTY CLERK

2441825.5 03

1   The Confirmation Hearing[1] with respect of the *Revised First Amended Plan of*

2   *Reorganization for EMAK Worldwide, Inc. and EMAK Worldwide Service Corp. Dated April 11,*

3   *2011, as Modified* (the "<u>Plan</u>") [Docket No. 458], filed by EMAK Worldwide, Inc., a Delaware

4   corporation ("<u>EMAK</u>") and EMAK Worldwide Service Corp., a Delaware Corporation ("<u>EMAK</u>

5   <u>Service</u>"), the debtors and debtors-in-possession in these jointly-administered cases (the

6   "<u>Debtors</u>"), and plan co-proponent Crown EMAK Partners, LLC, the pre-petition holder of 100%

7   of EMAK's preferred equity interests ("<u>Crown EMAK</u>" and, collectively with the Debtors, the

8   "<u>Plan Proponents</u>"), was held on June 9, 2011, at 2:00 p.m., before the Honorable Richard Neiter,

9   United States Bankruptcy Court Judge, in Courtroom 1645, 255 East Temple Street, Los Angeles,

10  California.   Appearances were made as indicated in the recorded transcript of the Confirmation

11  Hearing.

12  The Court considered the pleadings and documents filed by the Debtors in support of

13  confirmation of the Plan, including the: (1) *Memorandum of Points and Authorities in Support of*

14  *Confirmation of the Revised First Amended Joint Plan of Reorganization for EMAK Worldwide,*

15  *Inc. and EMAK Worldwide Corp. dated April 11, 2011, as Modified* (the  "<u>Confirmation</u>

16  <u>Memorandum</u>") [Docket No. 461]; (2) *Declaration of John P. Brincko in Support of Revised First*

17  *Amended Joint Plan of Reorganization for EMAK Worldwide, Inc. and EMAK Worldwide Corp.*

18  *dated April 11, 2011, as Modified* (the "<u>Brincko Declaration</u>") [Docket No. 462]; (3) *Declaration*

19  *of Teresa L. Tormey in Support of Revised First Amended Joint Plan of Reorganization for EMAK*

20  *Worldwide, Inc. and EMAK Worldwide Corp. dated April 11, 2011, as Modified* (the "<u>Tormey</u>

21  <u>Declaration</u>") [Docket No. 463]; (4) *Declaration of Lori Gauthier Regarding Tabulation of Ballots*

22  *Re: Revised First Amended Joint Plan of Reorganization for EMAK Worldwide, Inc. and EMAK*

23  *Worldwide Service Corp. Dated April 11, 2011* (the "<u>Ballot Analysis</u>"); and (5) *Statement of the*

24  *Special Litigation Committee in Connection with the Opposition of Bouchard Margules &*

25  *Friedlander, P.A., to Confirmation of the Revised First Amended Joint Plan of Reorganization*

26  *dated April 11, 2011 as Modified* [Docket No. 472]  (the "<u>Statement</u>" and , collectively with the

27

28       [1]   Capitalized terms not otherwise defined in this Confirmation Order shall have the meanings
ascribed to them in the Plan.

Confirmation Memorandum, the Brincko Declaration, the Tormey Declaration, and the Ballot Analysis, the "Supporting Documents") [Docket No. 456].

The Court considered that the Plan is supported by the Debtors, plan co-proponent Crown EMAK (the holder of 100% of the pre-petition preferred stock in EMAK), and the Official Committee of Unsecured Creditors (the "Committee").

The Court also considered the objection to the Plan (the "Bouchard Objection") filed by the law firm of Bouchard Margules & Friedlander ("Bouchard"), counsel to the plaintiffs in the Delaware Derivative Action and Chair of the Committee and reply in support of same [Docket Nos. 451 & 471].

Based on the above and upon the arguments of counsel and any evidence presented at the Confirmation Hearing, the Court hereby makes the following findings of fact and conclusions of law:[2]

## FINDINGS OF FACT

A.  Jurisdiction and Venue:  The Debtors commenced their Chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on August 5, 2010.  The Debtors were and are qualified to be debtors under section 109 of the Bankruptcy Code.  This matter is a core proceeding over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of this proceeding is proper under 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2) and the Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.  Solicitation Procedures Order:  On April 15, 2011, the Court entered the *Order: (1) Approving Disclosure Statement; (2) Approving Notice Procedures; (3) Establishing Cure Procedures; and (4) Establishing Confirmation Procedures and Deadlines* (the "Solicitation Procedures Order") [Docket No. 385].  The Solicitation Procedures Order, among other things, (i)

---

[2]    This Confirmation Order constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rules 7052 and 9014.  All such findings of fact shall constitute findings even if stated as conclusions of law, and all such conclusions of law shall constitute conclusions of law even if stated as findings of fact.

approved the Disclosure Statement as containing adequate information with the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017; (ii) fixed as May 19, 2011 at 5:00 p.m. the date and time for voting to accept or reject the Plan; (iii) fixed June 9, 2011 at 2:00 p.m. as the date and time for the commencement of the Confirmation Hearing; (iv) established the objection deadline and procedures for objecting to the Plan and to the assumption, rejection and cure amounts of the unexpired leases and executory contracts assumed or rejected in connection with the Plan; (v) approved the form and method of notice of the confirmation hearing; and (vi) established the record date and certain procedures for soliciting and tabulating votes with respect to the Plan.

C.    <u>Notice and Due Process</u>:    The Debtors provided notice of the Confirmation Hearing ("<u>Confirmation Hearing Notice</u>") [Docket No. 401], and of the time fixed for filing objections to Plan confirmation, to all entities entitled to receive such notice, as set forth in the Solicitation Procedures Order.  The Confirmation Hearing Notice fully and adequately described the requested relief; was reasonable and appropriate; and complied in all regards with due process.  The Confirmation Hearing Notice also complied with the applicable provisions of (1) the Bankruptcy Code; (2) the Bankruptcy Rules, including Bankruptcy Rules 2002, 3017, 3018, and 3019; (3) the Local Rules of the United States Bankruptcy Court for the Central District of California; and (4) all relevant orders of this Court, including the Solicitation Procedures Order.

D.    <u>Solicitation</u>:    The Debtors conducted their solicitation of acceptances or rejections of the Plan and their related distribution and tabulation of ballots with respect to that solicitation in good faith.  The solicitation, distribution and tabulation complied with the Solicitation Procedures Order; all applicable provisions of the Bankruptcy Rules (including Bankruptcy Rules 3017 and 3018); all applicable provisions of the Bankruptcy Code (including sections 1125, 1126 and 1127); and all other applicable laws, rules and regulations.  As evidenced in the (i) *Declaration of Lori Gauthier Re: Service of Plan Packages* [Docket No. 402]; (ii) *Declaration of Silvia Cauci Re: Service of Plan Packages* [Docket No. 407]; and (iii) *Declaration of Gabriel McLean Re: Service of Plan Packages* [Docket No. 422], the Debtors transmitted the Plan and Disclosure Statement to: (i) all creditors that have filed a proof of claim in the Chapter 11 Cases; (ii) all

creditors that the Debtors scheduled as holding a claim in their respective Schedules of Assets and Liabilities; (iii) all equity holders of the Debtors; (iv) all non-debtor parties to unexpired leases and executory contracts; (v) the Office of the United States Trustee and the governmental entities enumerated in Bankruptcy Rule 2002(j); (vi) counsel for the Committee; and (vii) all parties that have requested special notice in the Chapter 11 Cases.

E.  <u>Cure Notices</u>:  The Debtors served the *Notice of Cure Amounts to be Paid in Connection with the Assumption of Certain Leases and Executory Contracts Under Revised First Amended Joint Plan of Reorganization for EMAK Worldwide, Inc., and EMAK Worldwide Service Corp. (Dated April 11, 2011)* (the "<u>Cure Notice</u>") [Docket No. 404] in compliance with the service requirements and procedures approved in the Solicitation Procedures Order with respect to the assumption and rejection of unexpired leases and executory contracts.  The Cure Notice provided sufficient notice and complied with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order and no other or further notice is or shall be required.

F.  <u>Ballot Analysis</u>:  The only class entitled to vote on the Plan was Class 5-A, which consists of Preferred Equity Interests in EMAK.  The Preferred Equity Interests in EMAK are owned 100% by Crown EMAK.  Crown EMAK was sent a Class 5-A ballot.  The Class 5-A claimant timely cast its ballot in acceptance of the Plan.  As evidenced by the Ballot Analysis, Class 5-A has voted 100% to accept the Plan.  Accordingly, pursuant to sections 1124 and 1126 of the Bankruptcy Code, the one Impaired Class entitled to vote on the Plan has voted to accept the Plan.

G.  <u>Judicial Notice</u>:  The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court and/or its duly appointed agent (the "<u>Docket</u>"), including, without limitation, all pleadings and other documents on file, all orders entered, and all evidence (that was not subsequently withdrawn) and arguments made, proffered or adduced at the hearings held before the Court during the pendency of these Chapter 11 Cases.

H.  <u>Burden of Proof</u>:  The Debtors have met their burden of proving the elements of section 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is

the applicable evidentiary standard in this Court.  The Court also finds that the Debtors have satisfied the elements of section 1129(a) and 1129(b) of the Bankruptcy Code by clear and convincing evidence.

I.  Compliance with the Requirements of Section 1129 of the Bankruptcy Code:  As set forth below, the Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying the requirements of section 1129 of the Bankruptcy Code.

1.  Section 1129(a)(1) – Compliance of the Plan with Applicable Provisions of the Bankruptcy Code.  The Plan complies with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(1) of the Bankruptcy Code, including without limitation sections 1122 and 1123.

As required by sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan designates Classes of Claims and Equity Interests, other than Administrative Claims and Priority Tax Claims.[3]  Claims are classified separately in Classes 1-A, 2-A.1, 2-A.2, 3-A, 4-A, 1-B, 2-B, 3-B, and 4-B.  Equity Interests are classified separately in Classes 5-A, 6-A and 6-B.  As required by section 1122(a) of the Bankruptcy Code, each class of Claims or Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims and Equity Interests within that Class.  Accordingly, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

As required by section 1123(a)(2) of the Bankruptcy Code, Article III of the Plan specifies all classes of Claims which are Unimpaired under the Plan.  Accordingly, the Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

As required by section 1123(a)(3) of the Bankruptcy Code, Article III of the Plan specifies the treatment of all Classes of Claims and Equity Interests which are Impaired under the Plan.  Accordingly, the Plan satisfies section 1123(a)(3) of the Bankruptcy Code.

As required by section 1123(a)(4) of the Bankruptcy Code, Article III of the Plan provides the same treatment for each Claim or Equity Interest within a particular Class unless the holder of

---

[3] Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not required to be classified.

a particular Claim or Equity Interest in such Class has agreed to a less favorable treatment of its Claim or Equity Interest.  Accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

As required by section 1123(a)(5) of the Bankruptcy Code, Article V and various other provisions of the Plan provide adequate and proper means for the implementation of the Plan.  On or around the Effective Date, the following, among other actions, will occur to implement the Plan:

a.   The Term Loan and the Revolving Loan shall be executed on or prior to the Effective Date.  The funds under the Term Loan shall be distributed to the Debtors on the Effective Date and the funds under the Revolving Loan shall become available as of the Effective Date.

b.   As of the Effective Date, the assets, claims, and affairs of the Debtors shall be substantively consolidated (solely for the purposes of distributions under the Plan) and the Debtors' Estates shall be deemed pooled for purposes of allowance, treatment, and distributions under the Plan (except to the extent they secured any Allowed Secured Claim).

c.   On the Effective Date (or as shortly thereafter as practicable), all Allowed Administrative Claims (except Professional Fees, which are subject to Court approval), Allowed Secured Claims, Allowed Priority Claims, and Allowed General Unsecured Claims shall be paid in full, with interest as appropriate.

d.   On the Effective Date, the Disputed Claim Reserve shall be funded sufficiently to cover all Disputed General Unsecured Claims plus interest.[4]

e.   On the Effective Date, title to all assets, claims, causes of action, properties, and business operations of the Debtors and of the Estates shall revest in each respective

---

[4] Pursuant to the stipulation filed with the Court on May 20, 2011 [Dkt. No. 453], Ropes & Gray LLP waived the requirement under the Plan that the Debtors reserve for Proof of Claim No. 30, filed against EMAK in the liquidated amount of $655,297.50.  Also, in accord with the Court's ruling on May 11, 2011, the total amount of Disputed General Unsecured Claims includes the Court's determination that, except as expressly allowed or disallowed by the Court, Donald Kurz's claim is estimated in the amount of $0.

Reorganized Debtor, and thereafter, the Reorganized Debtors shall own and retain such assets free and clear of all liens and Claims, except as expressly provided in the Plan.

f.   On the Effective Date, the Reorganized Debtors shall make all cure payments and issue all shares of Common Equity Interests in EMAK as required by Exhibit "7" to the Plan.  The Common Equity Interests issued as cure amounts shall be deemed as issued as of the Voting Record Date, and, as of the Effective Date, all of the Common Equity Interests in EMAK shall be cancelled.  All Holders of Common Equity Interests in EMAK as of the Voting Record Date are eligible for treatment under the Crown EMAK Settlement described below.  From and after the Effective Date, in accordance with the terms of the Plan and Confirmation Order, the Reorganized Debtors shall perform in the ordinary course of their business all obligations under all executory contracts and unexpired leases assumed in accordance with the Plan.

g.   On the Effective Date, the Preferred Equity Interests in EMAK, which are owned 100% by Crown EMAK, will be converted on the Effective Date into $10.625 million of Series AAA Senior Cumulative Preferred Stock of EMAK ("New Series A Preferred Stock"), $15 million  of Series BBB Senior Cumulative Convertible Preferred Stock of EMAK ("New Series B Preferred Stock") and 100% of the Common Stock of EMAK ("New Common Stock"), comprised of 7,243,018 shares  of New Common Stock of EMAK.

h.   On or before the Effective Date, Newco, an Illinois company that will be a subsidiary of EMAK, will be created and all organizational documents finalized.  Following the Effective Date, pursuant to a reorganization under Section 368(a)(1) of the Internal Revenue Code of 1986, as amended, Reorganized EMAK shall be merged with and into Newco, which shall be named EMAK Holdings, Inc.[5]  The outstanding shares of Reorganized EMAK issued under the Plan, including the New Series A Preferred Stock, New Series B Preferred Stock and New Common Stock, will be converted into identical shares in Newco as a result of the merger discussed above.[6]

---

[5] All references in the Plan to Reorganized EMAK are also deemed to refer to Newco, as the successor of such merger.

[6] All references in the Plan to New Series A Preferred Stock, New Series B Preferred Stock and New Common Stock shall, following the merger of Reorganized EMAK and Newco, are also deemed to refer to the corresponding shares in Newco.

i. Reorganized EMAK Service shall not be merged into either Reorganized EMAK or Newco, and Reorganized EMAK (or Newco) and Reorganized EMAK Service shall continue to exist after the Effective Date as separate legal entities, with all the powers of corporation, memberships, partnerships and other entities, as applicable, pursuant to the applicable law in their states of incorporation or organization and pursuant to the Amended Organizational Documents.

j. Following the merger of Reorganized EMAK and Newco, and the conversion of the New Common Stock in Reorganized EMAK to New Common Stock in Newco, (a) Holders of Common Equity Interests in EMAK holding more than 150,000 shares of Common Equity Interests in EMAK as of the Voting Record Date that returned the Designation and Release Form and made typical private placement representations will receive one share of New Common Stock in Newco from Crown EMAK for each share of common stock of EMAK held as of the Voting Record Date; and (b) Holders of Common Equity Interests in EMAK holding 150,000 or fewer shares of common stock in EMAK as of the Voting Record Date that returned the Designation and Release Form will receive $0.10 from Crown EMAK for each share of Common Equity Interests of EMAK held as of the Voting Record Date.

Based on the foregoing, the Plan adequately describes the means for its implementation and, accordingly, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

As required by section 1123(a)(6) of the Bankruptcy Code, as noted in Article V.D of the Plan, the Amended Organizational Documents of the Reorganized Debtors and Newco prohibit the issuance of non voting equity securities.  Accordingly, the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

As required by section 1123(a)(7) of the Bankruptcy Code, the Plan contains only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the Plan and any successor to such officer, director, or trustee.  The Debtors have disclosed the identity and affiliations of the parties to serve on the initial board of directors of the Reorganized Debtors, such officers and directors to receive the same compensation post-confirmation as they

received pre-confirmation.  Following the Effective Date, the Reorganized Debtors' officers and directors will be kept in place or to be replaced in accordance with the Reorganized Debtors' organizational documents.  No party has suggested that the Plan provisions for the manner of selection of officers and their successors are inconsistent with public policy or the interests of creditors or equity holders.  Accordingly, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

As required by section 1123(b) of the Bankruptcy Code, the Plan contains various provisions that may be construed as discretionary but are not required for Confirmation under the Bankruptcy Code.  Such discretionary provisions comply with section 1123(b) of the Bankruptcy Doe and, as discussed in greater detail below, are not inconsistent in any way with the applicable provisions of the Bankruptcy Code.  Accordingly, the requirements of section 1123(b) of the Bankruptcy Code are satisfied.

2.    <u>Section 1123(b)(2) – Compliance of the Plan Proponents with the Applicable Provisions of the Bankruptcy Code</u>.  The Debtors have complied with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code, including without limitations, sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019.  In particular –

a.  The Debtors are proper debtors under section 109 of the Bankruptcy Code.

b.  The Debtors and Crown EMAK are proper plan proponents under section 1121 of the Bankruptcy Code.

c.  The Court approved the Debtors' Disclosure Statement as containing adequate information as required by section 1125.

d.  The procedures the Debtors used to transmit solicitation packages to all Holders of Claims and Equity Interests and the procedures by which the ballots for acceptance or rejection of the Plan were solicited and tabulated were fair and properly conducted and in accordance with sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017 and

1    3018.  Declarations of service regarding the distribution of the solicitation packages have been

2    filed with the Court.

3            e.  The Debtors, Crown EMAK (as plan co-proponent), and their directors,

4    officers, employees, agents and Professionals, as applicable, have acted in "good faith," within the

5    meaning of section 1125(e) of the Bankruptcy Code.

6        Accordingly, the Plan satisfies the requirements of section 1129(a)(2) of the Bankruptcy

7    Code and the solicitation requirements of section 1125.

8            12.    Section 1129(a)(3) – Proposal of Plan in Good Faith.  The Plan Proponents

9    have proposed the Plan in good faith and not by any means forbidden by law.  In determining that

10   the Plan has been proposed in good faith, the Court has examined the totality of the circumstances

11   surrounding the Chapter 11 Cases, the Plan itself, and the process leading to its formation.

12       The Court finds and concludes that the Plan is the culmination of extensive negotiations

13   among the Debtors, plan co-proponent Crown EMAK, the Committee and other parties, and is the

14   tangible product of the parties' efforts to reach an acceptable accommodation among various

15   creditor interests.  Based thereon, the Court finds and concludes that the Plan has been proposed

16   with the legitimate and honest purpose of resolving the affairs of the Debtors and maximizing the

17   returns to creditors.

18       Accordingly, the Plan satisfies section 1129(a)(3) of the Bankruptcy Code.

19           13.    Section 1129(a)(4) – Bankruptcy Court Approval of Certain Payments as

20   Reasonable.  Article II of the Plan provides that any Professional or other entity requesting a

21   Professional Fee Claim for services rendered before the Effective Date, must file and serve an

22   application for final allowance of such Professional Fee Claim by no later than the Professional

23   Fees Bar Date (i.e., the Business Day that is thirty (30) days after the Effective Date).  Payments to

24   Professionals will only be made after this Court allows such fees and expenses.  Accordingly, the

25   procedures set forth in the Plan for the Court's review and ultimate determination of the fees and

26   expenses to be paid to Professionals from the Estates the Plan satisfies section 1129(a)(4) of the

27   Bankruptcy Code.

28

1    14.    <u>Section 1129(a)(5) – Disclosure of Identity of Proposed Management,</u>

2    <u>Compensation of Insiders and Consistency of Management Proposals with the Interests of the</u>

3    <u>Holders of Claims and Equity Interests against the Debtors and Public Policy</u>.  The Debtors have

4    disclosed in Exhibit "5" to their Plan the identity and affiliations of the parties to serve on the

5    initial board of directors of the Reorganized Debtors.  The individuals proposed to serve, after

6    confirmation of the Plan, as a director or officer of Reorganized Debtors are current officers and

7    directors of the Debtors.  The continuance in such office of such individuals is consistent with the

8    interests of creditors and equity security holders and with public policy.  Accordingly, the Plan

9    satisfies section 1129(a)(5) of the Bankruptcy Code.

10    15.    <u>Section 1129(a)(6) – Approval of Rate Changes</u>.  The Debtors' business

11    does not involve the establishment of rates over which any regulatory commission has or will have

12    jurisdiction after Confirmation.  Accordingly, Section 1129(a)(6) does not apply in these cases.

13    16.    <u>Section 1129(a)(7) – Best Interests of Holders of Claims and Equity</u>

14    <u>Interests</u>.  The Plan satisfies the "best interests" test of Section 1129(a)(7) of the Bankruptcy Code.

15    The Liquidation Analysis annexed to the Disclosure Statement as Exhibit "F" (the "<u>Liquidation</u>

16    <u>Analysis</u>"), the information in the Disclosure Statement, and the other evidence related thereto that

17    was provided in the Supporting Documents  or adduced at the Confirmation Hearing, (i) is

18    reasonable, persuasive and credible, and (ii) has not been controverted by other evidence.  The

19    methodology used and assumptions made in the Liquidation Analysis, as supplemented by the

20    Supporting Documents and the evidence offered at the Confirmation Hearing, are reasonable.

21    With respect to each Impaired Class, each Holder of an Allowed Claim or Equity Interest,

22    as the case may be, in an Impaired Class has accepted the Plan or will receive under the Plan on

23    account of its respective Claim or Equity Interest, as the case may be, property of a value, as of the

24    Effective Date, that is not less than the amount that each Holder would have received if the

25    Debtors were to have liquidated on the Effective Date under Chapter 7 of the Bankruptcy Code.

26    Class 6-A (Common Equity Interests in EMAK), which is deemed to reject the Plan because the

27    Equity Interest Holders in this Class receive nothing under the Plan, would likewise receive

28    nothing if the Debtors were liquidated.

1    Accordingly, the requirements of section 1129(a)(7) are satisfied.

2    17.    <u>Section 1129(a)(8) – Acceptance of the Plan by Each Impaired Class</u>.    As

3    indicated in Article III of the Plan, the following Classes are Unimpaired and conclusively

4    presumed to have accepted the Plan:

5    | <u>Class Description</u> | <u>Class Designation</u> |
|---|---|

6    <u>EMAK</u>

| | |
|---|---|
| Other Priority Claims of EMAK | Class 1-A |
| Secured Claims of Bank of America of EMAK | Class 2-A.1 |
| Other Secured Claims of EMAK | Class 2-A.2 |
| General Unsecured Claims of EMAK | Class 3-A |
| Intercompany Claims of EMAK | Class 4-A |

13    <u>EMAK Service</u>

| | |
|---|---|
| Other Priority Claims of EMAK Service | Class 1-B |
| Other Secured Claims of EMAK Service | Class 2-B |
| General Unsecured Claims of EMAK Service | Class 3-B |
| Intercompany Claims of EMAK Service | Class 4-B |
| Equity Interests in EMAK Service | Class 6-B |

19    Specifically, the Court finds that Class 3-A is Unimpaired and is deemed to have accepted

20    the Plan.  Holders of Allowed General Unsecured Claims in Class 3-A will receive payment in full

21    with post-petition interest at the Federal Judgment Rate for the post-Effective Date period on the

22    terms set forth in the Plan.    Accordingly, section 1129(a)(8) is satisfied as to the foregoing

23    Classes.

24    As indicated in Article III of the Plan, the following Classes are Impaired:

25    | <u>Class Description</u> | <u>Class Designation</u> |
|---|---|

26    <u>EMAK</u>

| | |
|---|---|
| Preferred Equity Interests in EMAK | Class 5-A |
| Common Equity Interests in EMAK | Class 6-A |

As indicated in the Ballot Analysis, Impaired Class 5-A (Preferred Equity Interests in EMAK) has voted to accept the Plan.  As a result, section 1129(a)(8) is satisfied as to this Class.

The Plan provides that on the Effective Date, all of the Common Equity Interests in EMAK shall be cancelled.  Because Class 6-A (Common Equity Interests in EMAK) receives no distribution under the Plan and is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, section 1129(a)(8) is not satisfied as to this Class.  However, the Plan is nevertheless confirmable since the Plan satisfies the requirements of section 1129(b) with respect to Class 6-A.

18.    Section 1129(a)(9) – Treatment to Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.   Section 1129(a)(9) contains provisions generally requiring payment in cash of administrative and non-tax priority claims and permitting the deferred payment of priority tax claims over a period not exceeding five years from the Petition Date.  Article II of the Plan provides for the payment in full in Cash of Allowed Administrative Claim, unless the holder agrees to other treatment of the Claim.  Payment of an Allowed Administrative Claim shall occur on the later of the Plan's Effective Date (except Administrative Claims of Professionals), or the date on which the Administrative Claim is allowed.

With respect to Priority Tax Claims entitled to priority under section 507(a)(8), Article II of the Plan provides that, except as otherwise agreed by the parties, each holder of an Allowed Priority Tax Claim against the Debtors shall receive, on the Effective Date, in full satisfaction, release and discharge of such Allowed Priority Tax Claim, either: (i) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (ii) such other less favorable treatment as agreed to in writing by the Debtors or Reorganized Debtors, as applicable, and such Holder; or (iii) pursuant to and in accordance with section 1129(a)(9)(C) and (D) of the Bankruptcy Code, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in regular installment payments over a period ending not more than five (5) years after the Petition Date, plus simple interest at the rate required by applicable law on any outstanding balance from the Effective Date, or such lesser rate as agreed to in writing by a particular taxing authority and the Debtors or Reorganized Debtors, as applicable.

Article III also provides that all Allowed Class 1-A and Class 1-B Claims (*i.e.*, Allowed Priority Claims entitled to priority under any of sections 507(a)(3)-(6) of the Bankruptcy Code) are to be paid in full in Cash on the Effective Date.

Accordingly, the Plan satisfies all of the requirements of section 1129(a)(9).

19.      <u>Section 1129(a)(10) – Acceptance By At Least One Impaired Class</u>.  As indicated in the Ballot Analysis and reflected on the record at the Confirmation Hearing, all of the Classes of Claims under the Plan are Unimpaired and the only Impaired classes are Class 5-A (Preferred Equity Interests in EMAK) and Class 6-A (Common Equity Interests in EMAK).  Since no class of Claims is Impaired under the Plan, section 1129(a)(10) does not apply.

20.      <u>Section 1129(a)(11) – Feasibility of the Plan</u>.  Plan confirmation is not likely to be followed by either the liquidation or need for further financial reorganization of the Reorganized Debtors.  To satisfy their burden under section 1129(a)(11) of the Bankruptcy Code, the Debtors and their advisors prepared Exhibit "E" to the Disclosure Statement, which sets forth the Reorganized Debtors' expected annual performance through December 31, 2014    (the "<u>Financial Projections</u>").  The Financial Projections were prepared by the Debtors with the assistance of Sitrick Brincko and were based on a thorough analysis of economic, competitive, and general business conditions relevant to the Debtors and their subsidiaries.    The Financial Projections were based on a thorough analysis of the operations of the Debtors and the Non-Debtor Subsidiaries that considered historical and recent operational performance and opportunities to improve operational efficiency and reduce waste and costs.    The Financial Projections (along with the Supporting Documents and the evidence adduced at the Confirmation Hearing), establish that the Debtors will have sufficient Cash available to make all payments that must be made pursuant to the Plan, including paying all Allowed General Unsecured Claims in full, with interest, and to fund the Disputed Claim Reserve on account of all Disputed General Unsecured Claims on the Effective Date.

Based on the Financial Projections and other evidence, the Court finds that the funds received by the Reorganized Debtors from the operations of the Non-Debtor Subsidiaries will be sufficient to allow the Reorganized Debtors to repay the Exit Financing.   The Court further finds

that the Plan is feasible and is not likely to be followed by liquidation or the need for further reorganization.  Accordingly, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

21.  <u>Section 1129(a)(12) – Payment of Bankruptcy Fees</u>.  In accordance with section 1129(a)(12) of the Bankruptcy Code, Article XIII.B of the Plan provides for the payment on the Effective Date of all fees payable under 28 U.S.C. § 1930.  Accordingly, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

22.  <u>Section 1129(a)(13) – Retiree Benefits</u>.  Article VI.F of the Plan provides that all benefit plans, including retirement plans, are to be treated as Executory Contracts and assumed as of the Effective Date.  Accordingly, the Plan satisfies section 1129(a)(13) of the Bankruptcy Code.

23.  <u>Section 1129(a)(14) – Domestic Support Obligations</u>.  Section 1129(a)(14) of the Bankruptcy Code, which requires a debtor to pay domestic support obligations required to be paid by judicial or administrative order, has no application to the Plan or these Chapter 11 Cases.

24.  <u>Section 1129(a)(15) – Distributions in a Case in Which the Debtor is an Individual</u>.  Section 1129(a)(15) of the Bankruptcy Code, which applies to cases in which the debtor is an individual and accordingly, has no application to the Plan or these Chapter 11 Cases.

25.  <u>Section 1129(a)(16) – Transfers in Accordance with Non-Bankruptcy Law</u>. Section 1129(a)(16) of the Bankruptcy Code, which applies to only cases of nonprofit entities, has no application to the Plan or these Chapter 11 Cases.

G.  <u>Section 1129(b) – Confirmation of Plan Over Non-acceptance of Impaired Class</u>. The Plan is confirmable pursuant to section 1129(b)(1) of the Bankruptcy Code notwithstanding the fact that Class 6-A (Common Equity Interests in EMAK) is deemed to have rejected the Plan because holders of Common Equity Interests in Class 6-A are not entitled to any distribution under the Plan.  The Plan can be confirmed because:

a.  The Plan does not discriminate unfairly and is fair and equitable with respect to the holders of Common Equity Interests in Class 6-A.

b.   There are no classes junior in priority to Class 6-A, and thus no junior class is retaining property under the Plan.

Accordingly, the Plan satisfies the requirements of section 1129(b) with respect to Class 6-A.

H.    Section 1129(c) – Only One Plan.  Other than the Plan (including previous versions thereof), no other plan has been filed in these Chapter 11 Cases.  Accordingly, the Plan satisfies section 1129(c) of the Bankruptcy Code.

I.    Section 1129(d) – Principal Purpose of the Plan is not Avoidance of Taxes.  The primary purpose of the Plan is not avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e), as amended (the "Securities Act"), and there has been no objection filed by any governmental unit asserting such avoidance.

J.    Issuance and Distribution of Equity Interests under the Plan.  The Plan Proponents (and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys) have, and upon Confirmation of the Plan are deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the distribution of the Equity Interests in Reorganized Debtor EMAK and Newco under the Plan, and therefore are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  The issuance of the Equity Interests in Reorganized EMAK and, following the merger of Reorganized EMAK and Newco, issuance of the Equity Interests in Newco is in exchange for Claims against or Equity Interests in Debtor EMAK, or principally in such exchange and partly for cash or property, within the meaning of section 1145(a)(1) of the Bankruptcy Code.

Specifically, on the Effective Date, Reorganized EMAK will issue the New Series A Preferred Stock, New Series B Preferred Stock and New Common Stock to Crown EMAK on account of its Allowed Class 5-A Preferred Equity Interests.  Upon the merger of Reorganized EMAK and Newco after the Effective Date, the outstanding shares of Reorganized EMAK issued under the Plan will be converted into identical shares in Newco.  The Equity Interests in

Reorganized EMAK and Newco issued pursuant to the Plan shall be exempt from the registration requirements of the Securities Exchange Act of 1933, as amended (the "Securities Act"), and any State or local law requiring registration or qualification for the offer or sale of a security, pursuant to section 1145(a) of the Bankruptcy Code.  Reorganized EMAK and Newco qualify for the exemption under section 1145(a)(1)(A) because each is a successor to Debtor EMAK and will issue Equity Interests to Crown EMAK under the Plan in exchange for Crown EMAK's Preferred Equity Interests in EMAK.  As the successor to Debtor EMAK, neither Reorganized EMAK nor Newco qualifies as an underwriter within the meaning of section 1145(a)(1)(A).

In addition, Reorganized EMAK and Newco will not be required to register their equity interests under Section 12(g) of the Securities Exchange Act of 1934, as amended (the "Exchange Act").  The Exchange Act does not apply as neither Reorganized EMAK nor Newco will have more than $10 million in assets on the Effective Date or will be issuing equity securities in the form of equity interests to more than 500 persons.

K.    Executory Contracts and Unexpired Leases.  Article VI of the Plan provides for the assumption or rejection of the Debtors' executory contracts and unexpired leases not previously assumed or rejected on the Effective Date pursuant to section 365 of the Bankruptcy Code.  Under Article VI.A of the Plan, the Debtors have elected to assume each of the contracts and leases identified as "assumed" on Exhibit "7" to the Plan (collectively, the "Assumed Leases and Contracts") pursuant to the provisions of section 365 and 1123.  The assumed executory contracts and unexpired leases shall, as of the Effective Date, vest in the Reorganized Debtors.  The Debtors have, within the meaning of section 365(b)(1)(C), established adequate assurance of future performance with respect to all of the Assumed Leases and Contracts in which there has been a default.  Furthermore, the cure amounts, if any, for each of the Assumed Leases and Contracts are the only amounts necessary to cure any existing defaults under the Assumed Leases and Contracts in accordance with sections 365(b)(1)(A) and (B).

Pursuant to Article VI.C of the Plan, the Debtors have elected to reject any and all unexpired leases and executory contracts that are not identified on Exhibit "7" to the Plan (collectively, the "Rejected Leases and Contracts") on the Effective Date.  Each of the Rejected

Leases and Contracts is burdensome and the rejection thereof is in the best interest of the Debtors' estates.

The Debtors' decision to reject the Rejected Leases and Contracts and to assume the Assumed Leases and Contracts represents a valid and well-considered exercise of the Debtors' business judgment, is necessary to implementation of the Plan, and is in the best interest of the Debtors, their estates and their creditors.  Nothing herein is a waiver of any defenses, claims, or counterclaims that the Debtors (or their successors) may have against any party to a Rejected Lease or Contract or an Assumed Lease or Contract.

L.      Approval of Settlement and Compromises.  Pursuant to Bankruptcy Rule 9019 and any applicable State law, and as consideration for the distributions and other benefits provided under the Plan, all settlements and compromises of Claims, Causes of Action and objections to Claims that are embodied in the Plan, including but not limited to the Crown EMAK Settlement embodied at Article VI.D.9 of the Plan, constitute a good faith compromise and settlement of any Claims, Causes of Action and objections to Claims, which compromises and settlements are fair, equitable, reasonable, and appropriate in light of the relevant facts and circumstances underlying such compromise and settlement, and are in the best interests of the Debtors, their Estates and Holders of Claims and Equity Interests against the Debtors.

The Plan constitutes a good faith compromise and settlement that has been negotiated between the Debtors, their Estates, the Special Litigation Committee, and Crown EMAK of the Derivative Litigation and of all claims brought, or that could have been brought, by the Debtors, their Estates and their Non-Debtor Subsidiaries against Crown EMAK, the other Crown Released Parties, the Director and Officer Released Parties, and Related Persons, and all of the claims that could have been brought by Crown EMAK against the Debtors, their Estates and their Non-Debtor Subsidiaries, and all Related Persons, in all events excluding any Non-Released Party.  In connection with the compromise embodied in the Plan, Crown EMAK will loan funds to the Debtors on the Effective Date pursuant to two two-year secured facilities in the form of a term loan in the approximate amount of $2.2 million and a revolving loan in the approximate amount of $2.3 million to be used for the payment of Allowed Claims.  Without this financing, it would be

impossible for the Debtors to pay all Allowed Priority, Allowed Administrative, and Allowed General Unsecured Claims in full on the Effective Date and, as a result, payments might be delayed for a substantial period of time.

Crown EMAK also has agreed to accept New Series A Preferred Stock, New Series B Preferred Stock and New Common Stock in exchange for its Preferred Equity Interests in EMAK (with a liquidation preference of $25 million).[7]   Following the Effective Date, Reorganized EMAK shall be merged with and into Newco, and those shares will be converted into identical shares in Newco as a result of this merger.   Crown EMAK has agreed that up to 15% of the fully diluted common Equity Interests in Newco (approximately 1,086,453 shares) shall be reserved for a management incentive plan to be implemented by Newco.   Crown EMAK has also agreed to waive its change of control put right, which Crown EMAK asserted entitled it to an immediate payment of its liquidation preference of $25.625 million.   Finally, Crown EMAK offered Holders of Common Equity Interests in EMAK, who otherwise are receiving nothing in return for their interests, the option to receive (a) a Cash payment (for each Holder that owns 150,000 or fewer shares of Common Equity Interests in EMAK) or (b) New Common Stock of Newco (for each Holder that owns more than 150,000 shares of Common Equity Interests in EMAK) in exchange for a release of all claims against the Crown Released Parties, the Director and Officer Released Parties, the Debtors, the Non-Debtor Subsidiaries, and the Related Persons of each of the foregoing (the "Crown EMAK Settlement").

The evidence set forth in the Plan and Disclosure Statement, the Supporting Documents, and adduced at the Confirmation Hearing satisfies the Debtors' burden of proof in support of the Crown EMAK Settlement and the Court finds that:

- the Crown EMAK Settlement contemplated by the Plan is an arms' length, fair and reasonable, good faith settlement and compromise of the Derivative Action, represents a sound and prudent exercise of the Debtors' business judgment and is in the best interest of the Debtors and their Estates;

---

[7] In addition, Crown EMAK's General Unsecured Claim against the Debtors, except as specifically agreed to by Crown EMAK in the Plan, shall be deemed Allowed.

- a continuation of the Derivative Litigation would be costly to the Debtors and the outcome would be uncertain;

- the Debtors' ability to collect a judgment against Crown EMAK is unclear as the assets of Crown EMAK consist almost exclusively of the Preferred Equity Interests, which are subordinate to creditor claims and are not a source of cash;

- a final adjudication of the Derivative Litigation is likely to result in distributions to unsecured creditors far less than the amounts available to such creditors under the Plan;

- continuation of the Derivative Litigation would be protracted and vigorously defended;

- the Derivative Litigation would continue to distract the Debtors from the task of closing these Chapter 11 Cases and would disrupt the Debtors' prospects for a successful reorganization; and

- the settlement of the Derivative Litigation as provided in the Plan is fair to the Debtors' creditors.

M.    <u>Good Faith Negotiation, Implementation and Consummation</u>.    The Debtors, the Special Litigation Committee, Crown EMAK, and the Committee negotiated in good faith and at arm's length the Plan and each of the settlements and agreements embodied therein.  The Debtors and Crown EMAK negotiated in good faith, and at arms-length the Plan, the exhibits to the Plan, and all other related documents and agreements.  Each of the Debtors, Crown EMAK and the Committee participated in good faith in each of the actions taken to bring about, and in satisfying each of the conditions precedent to, confirmation and consummation.  In so determining, the Court has examined, among other things, the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the record of this proceeding, the Plan, and all other related affidavits, pleadings, exhibits, and statements in open Court regarding Plan Confirmation.

N.    <u>Releases and Discharges</u>.    Each of the discharge, release, indemnification and exculpation provisions set forth in the Plan and this Confirmation Order is: (i) within the

2441825.5 03

jurisdiction of the Court under 28 U.S.C. §§ 1334(a), 1334(b) and 1334(d); (ii) an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) an integral element of the transactions incorporated into the Plan; (iv) conferring material benefit on, and is in the best interests of, the Debtors, their estates and their creditors; (v) important to the overall objectives of the Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Cases with respect to the Debtors, their organization, capitalization, operation and reorganization; and (vi) consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

The injunction provisions set forth at Article XI.D of the Plan are necessary to preserve and enforce the release, exculpation, third party release and injunction provisions set forth in Article X of the Plan and are narrowly tailored to achieve that purpose.

The releases and discharges of Claims and Causes of Action by the Debtors set forth in Article XI.B.1 of the Plan represent a valid exercise of the Debtors' business judgment. Pursuing any such claims against the Debtor Released Parties is not in the best interest of the various constituencies of the Debtors' Estates. The Plan's release of the Debtor Released Parties will eliminate the costs and risks of litigation and allow the principals of the Reorganized Debtors to focus on operations after emergence, as opposed to being distracted by litigation (either as a party to such litigation themselves or the stakeholders who will bear the burdens of the Debtors' investigation, prosecution or participation in such litigation). In addition, the releases are an integral part of the Crown EMAK Settlement. The releases set forth in Article XI.B.1 are fair, necessary, equitable, reasonable, and in the best interests of the Debtors' Estates.

Article XI.B.2 and XI.B.3 of the Plan provide for a consensual exchange of releases of claims between Crown EMAK and certain Holders of Common Equity Interests in EMAK. It is permissible to solicit and obtain the foregoing voluntary releases of non-Estate claims through the Plan and the Plan confirmation process because all such releases are purely voluntary. Here, Holders of Common Equity Interests in EMAK are under no obligation to return the Designation and Release Form, and none of the release provisions were conditioned on acceptance or rejection

of the Plan.  Thus, the Court finds that these consensual, third party releases do not violate any provision of the Bankruptcy Code.

The exculpation provisions set forth at Article XI.C of the Plan are appropriately tailored to protect the exculpated parties from inappropriate litigation and do not relieve any party of liability for gross negligence or willful misconduct.  The exculpation provisions of the Plan set forth in Article XI.C are consistent with section 1125(e) and applicable Ninth Circuit law.

The release, exculpation and injunction provisions set forth in Article XI were the product of significant negotiation among the Debtors and Crown EMAK, were reviewed by the Committee, and are a critical component of the Crown EMAK Settlement.  The Debtors have complied with all applicable Bankruptcy Rules and Local Rules, including Bankruptcy Rule 3016(c), which requires that the Plan Proponent clearly identify release provisions by putting such provisions in the Confirmation Notice.  Accordingly, the Court finds that the Plan's release, exculpation and injunction provisions are necessary and appropriate under the circumstances.

O.    Retention of Claims.  The Plan provides for the retention of certain claims in accordance with section 1123(b)(3)(B).  In particular, the Plan provides that the Causes of Action set forth on Exhibit "2" to the Plan shall be vested in, and prosecuted by, the Reorganized Debtors.

P.    Plan Modification:  The Debtors have made certain plan modifications in order to resolve the Bouchard Objection  Specifically, the Debtors made the following modifications to Section III.B.4(c) of the Plan (additional language underlined):

> Subject to Section VIII hereof, the Holders of Allowed General Unsecured Claims shall receive one of the following treatments: (i) the payment in Cash of the amount of such Allowed General Unsecured Claim, on the later of the Effective Date or the date upon which such General Unsecured Claim becomes an Allowed General Unsecured Claim; or (ii) such other treatment as agreed to in writing by the Debtors or Reorganized Debtors, as applicable, and such Holder. The Debtors shall pay interest, from the Petition Date until the Allowed General Unsecured Claim is paid, on all Allowed General Unsecured Claims.  Interest shall be calculated at the Federal Judgment Rate.

> In order to resolve the objection to the Plan filed by Bouchard, upon the determination by a Court of competent jurisdiction that Bouchard has an Allowed General Unsecured Claim, Bouchard shall be entitled to interest on such allowed claim as follows: (a) at the Federal Judgment Rate for the period between the Petition Date and the Effective Date; and (b) at the Federal Judgment Rate or other legally appropriate rate of interest for the period following the Effective Date.

1  Plan, § III.B.4(c).[8]

2         For the reasons discussed in the Confirmation Memorandum, these revisions to the Plan

3  are non-material, do not diminish the treatment of Allowed Claims under the Plan, materially alter

4  the Plan, or bear upon its feasibility in such a way that additional disclosure or re-solicitation

5  would be necessary.  No modifications to the Plan since the approval of the Disclosure Statement

6  adversely changed the treatment under the Plan of the Claim of any creditor that voted to accept

7  the Plan.  No modification to the Plan resulted in the Plan failing to meet the requirements of

8  section 1122 or 1123.  Finally, no further or other disclosure was required by section 1125 because

9  no other parties voting on the Plan were materially affected by any of the modifications to the

10 Plan.  Accordingly, all Plan modifications complied in all respects with section 1127(a) and

11 Bankruptcy Rule 3019(a).

12        Q.      The Exhibits to the Plan.  Each of the Exhibits and the other agreements and

13 documents implementing the Plan are approved and the parties to such Exhibits and other

14 agreements and documents are authorized and directed to execute and deliver them in accordance

15 with the Plan.

16        R.      Retention of Jurisdiction.  Until the later of twelve months after the Effective Date

17 or the resolution of the Disputed Claims, the Court retains jurisdiction over the Chapter 11 Cases

18 and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and this

19 Plan as legally permissible, including, without limitation, jurisdiction to enter appropriate orders in

20 aid of implementation of the Plan pursuant to section 1142.

21        S.      Satisfaction of Conditions to Confirmation.  Each of the conditions precedent to

22 the entry of this Confirmation Order, as set forth in Article X of the Plan, has been satisfied or

23 waived in accordance with the Plan.  Specifically, this Court finds, based on the statements of the

24 parties in open court and otherwise, that:

25               a.  The Plan (including all exhibits) has been filed in form and substance

26 reasonably acceptable to the Plan Proponents;

27 ───────────────────
      [8] At the Confirmation Hearing, the Court found the Federal Judgment Rate to be the
28 appropriate interest rate for the period following the Effective Date until the Disputed Claim held
   by Bouchard is allowed.

b.    The proposed Confirmation Order is in a form and substance reasonably acceptable to the Plan Proponents;

c.    All documents and agreements necessary to implement the Plan have been effectuated or executed or are proposed to be effectuated or executed within 15 days of entry of this Confirmation Order; and

d.    The terms of the Crown EMAK Settlement have been satisfied or waived by Crown EMAK.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

**AA.    <u>Confirmation of the Plan</u>**

1.    The Plan filed on May 25, 2011 [Docket No. 458], is CONFIRMED.

2.    The Plan, including the exhibits attached thereto, is approved and confirmed in its entirety under section 1129, and any other applicable provisions, of the Bankruptcy Code.  The failure to reference or discuss any particular provision of the Plan in this Order shall have no effect on this Court's approval and authorization of, or the validity, binding effect and enforceability of, such provision; and each provision of the Plan is hereby expressly authorized and approved and each provision of the Plan shall have the same validity, binding effect and enforceability as every other provision of the Plan.

3.    All objections and responses to and statements and comments regarding the Plan, to the extent not already withdrawn, waived, or settled, and all reservation of rights included therein, including but not limited to the Bouchard Objection, shall be and hereby are, overruled on the merits.

4.    The terms of the Plan, all exhibits thereto, and all other relevant and necessary documents, shall be effective and binding as of the Effective Date of the Plan.  Notwithstanding the foregoing, if there is any direct conflict between the terms of the Plan or any other document and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

5.    The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

**BB.    Plan Modifications**

6.      Any modifications or amendments to the Plan since the solicitation, as embodied in the form of the Plan filed on May 25, 2011 [Docket No. 458], as disclosed in fillings with the Court or disclosed in open Court at or prior to the Confirmation Hearing, or set forth herein, are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.  In addition, subject to any limitations contained in the Plan, the Reorganized Debtors may, upon order of the Court, amend or modify the Plan or remedy any defect or omission or reconcile any inconsistency in the Plan in such a manner as may be necessary to carry out the purpose and intent of the Plan.

**CC.    Plan Classification Controlling**

7.      The terms of the Plan solely shall govern the classification of Claims and Equity Interests for purposes of the distributions to be made thereunder.

**DD.    Binding Effect**

8.      Pursuant to section 1141 of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as expressly provided in the Plan or this Confirmation Order, the provisions of the Plan (including the exhibits to, and all documents and agreements executed pursuant to the Plan) and this Confirmation Order shall be binding on (i) the Debtors; (ii) their Estates; (iii) the Reorganized Debtors; (iv) Newco; (v) all holders of Claims against and Equity Interests in the Debtors, whether or not Impaired under the Plan and whether or not, if Impaired, such Holders accepted the Plan; and (vi) each entity acquiring property under the Plan.

**EE.    Injunction**

9.      Except as otherwise expressly provided in the Plan, this Confirmation Order, or a separate order of the Court, all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtors that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or the Reorganized Debtors with respect to any such Claim or Equity Interest, (b) the enforcement, attachment, collection, or

recovery by any manner or means of any judgment, award, decree, or order against the Debtors or the Reorganized Debtors on account of any such Claim or Equity Interest, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or the Reorganized Debtors or against the property or interests in property of the Debtors or the Reorganized Debtors on account of any such Claim or Equity Interest, and (d) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtors or the Reorganized Debtors or against the property or interests in property of the Debtors or the Reorganized Debtors on account of any such Claim or Equity Interest.

10.    Such injunction shall extend to successors of the Debtors (including, without limitation, the Reorganized Debtors and Newco) and their respective properties and interests in property.

**FF.    Vesting of Assets**

11.    Except as otherwise provided in the Plan or this Order, on the Effective Date, all property of the Estates shall vest in the Reorganized Debtors, free and clear of all Claims, liens, encumbrances, and Equity Interests.  From and after the Effective Date, the Reorganized Debtors may operate their business and use, acquire and dispose of property without supervision by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

12.    On or about the Effective Date, the Reorganized Debtors, and any authorized officers and agents thereof, shall be and hereby are authorized to execute and deliver each and all of the Plan, any exhibits thereto and this Order, as well as execute, deliver, authorize the filing of, record, and/or issue any notes, intercreditor agreements, documents (including but not limited to, UCC financing statements, security agreements, mortgages, deeds of trusts or other security instruments or collateral documents), instruments, certificates, or agreements necessary or appropriate to give effect to the transactions contemplated thereby and/or grant, perfect, impose and continue liens and security interests upon each and all of the real and personal property described therein and intended to be encumbered thereby, and perform each and all of their respective obligations thereunder, in each case without further notice to or order of this Court, act

1   or action under applicable law, regulation, order or rule or the vote, consent, authorization, or

2   approval of any person or entity (other than as expressly required by any applicable document or

3   agreement), including but not limited to the extent that, under applicable non-bankruptcy law, any

4   of these actions otherwise would require the consent or approval of any other person or entity (as

5   such terms are defined in the Bankruptcy Code), all in accordance with the Plan and the

6   documentation, instruments, certificates and agreements entered into and/or delivered in

7   connection therewith.  The foregoing documents and agreements shall be the valid, binding and

8   enforceable obligations of the Reorganized Debtors party thereto concurrently with the respective

9   execution and delivery of each and every such document.  The liens and security interests granted

10  and to be granted by the Reorganized Debtors by the execution and delivery of the foregoing

11  agreements and documents and the entry of this Order shall irrevocably be and be deemed

12  perfected on the Effective Date, subject only to such liens and security interests as may be

13  expressly permitted under the Plan and the documentation, instruments, certificates and

14  agreements entered into and/or delivered in connection therewith.   To effectuate these

15  transactions, the Plan, the authorized officers and agents of the Debtors and the Reorganized

16  Debtors are hereby authorized — without further notice, application to, or order of this Court — to

17  execute, deliver, authorize the filing of, file, or record any documents and to take any other actions

18  that those agents may determine to be necessary or desirable, regardless of whether such actions or

19  documents are specifically referred to in the Plan or this Order.

20  **GG.    <u>The Crown EMAK Settlement</u>**

21        13.    Pursuant to Bankruptcy Rule 9019, the Crown EMAK Settlement constitutes a

22  good faith compromise and settlement of the Derivative Litigation.  The entry of this Confirmation

23  Order constitutes the Court's approval, subject to the occurrence of the Effective Date, of the

24  compromises and settlements of the Derivative Litigation and the Court's finding that such

25  compromise and settlement is in the best interests of the Debtors, their Estates and Holders of

26  Claims and Equity Interests against the Debtors, and that the Crown EMAK Settlement is fair,

27  equitable and reasonable.

28

14.     Pursuant to Bankruptcy Rule 9019, the Reorganized Debtors, the Debtors, their Estates, Holders of Claims and Equity Interests, the Committee, and Crown EMAK, and any respective successors and assigns of each, are bound by the terms of the Crown EMAK Settlement contained in the Plan, whether or not such party (i) will receive or retain any property or interest in property under the Plan, (ii) has filed a proof of claim or interest in the Chapter 11 Cases, or (iii) filed to vote or accept the Plan or affirmatively voted to reject the Plan.

15.     The Debtors, the Reorganized Debtors, and Crown EMAK are authorized to take any action necessary to implement the Crown EMAK Settlement.

**HH.    Executory Contracts and Unexpired Leases**

16.     The executory contracts and unexpired lease provisions of Article VI of the Plan shall be, and hereby are, approved.

17.     As of the Effective Date and upon the payment of any Cure Amounts (if applicable), pursuant to Article VI.B of the Plan, each of the Assumed Leases and Contracts is deemed assumed by the Reorganized Debtors and shall be in full force and effect, except to the extent that they have been modified consensually with the agreement of the parties thereto.  To the extent any Assumed Contract or Lease has been amended prior to the Confirmation Date, such contracts or leases shall be assumed as so amended.  To the extent that the non-debtor party to any Assumed Lease or Contract has filed a proof of Claim against one or more of the Debtors asserting pre-petition arrearages under an Assumed Lease or Contract, payment of the Cure Amount pursuant to Article VI.B of the Plan shall be deemed to satisfy, in full, any pre-petition arrearage, irrespective of whether the Cure Amount is less than the amount set forth in any such proof of claim.

18.     Each of the Rejected Leases and Contracts is deemed rejected by the Debtors as of the Effective Date, and the entry of this Confirmation Order by the Bankruptcy Court constitutes approval of each such rejection pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  All proofs of claim arising from the rejection of the Rejected Leases and Contracts ("Rejection Claims") must be filed within thirty (30) days after the Effective Date.  Any Claims arising from the rejection of the Rejected Leases and Contracts for which a proof of claim is not timely filed

will be forever barred from assertion against the Debtors or the Reorganized Debtors, their Estates and property unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All Rejection Claims shall be subject to the discharge and permanent injunction set forth in Article XI.D.

19.    Each rejection or assumption or assumption and assignment of an executory contract or unexpired lease pursuant to Article VI of the Plan will be legal, valid and binding upon the Debtors, and all non-Debtor parties to such executory contract or unexpired lease, as applicable, all to the same extent as if such rejection or assumption had been effectuated pursuant to an appropriate order of the Bankruptcy Court entered before the Confirmation Date under section 365 of the Bankruptcy Code.  Each of the executory contracts and unexpired leases to be rejected or assumed or assumed and assigned is deemed to be an executory contract or an unexpired lease, as applicable.

**II.    <u>Insurance</u>**

20.    The Debtors' discharge and release from all Claims as provided in the Plan, except as necessary to be consistent with the Plan, shall not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtors, the Reorganized Debtors (including, without limitation, its officers and current and former directors), Newco or any other person or entity.

**JJ.    <u>Exit Facility Approved</u>**

21.    The Exit Facility is here by approved and the Reorganized Debtors are authorized and directed to enter into the Exit Facility.

22.    Pursuant to section 1142(b) of the Bankruptcy Code and without further action by this Court or by the shareholders, directors, members or partners of any of the Reorganized Debtors, the Reorganized Debtors are authorized to enter into the Exit Facility, to perform all of their obligations thereunder and to execute and deliver all documents, agreements and instruments necessary or appropriate to enter into and perform all obligations under the Exit Facility, and to take all other actions and execute, deliver, record and file all other such agreements, documents, instruments, financing statements, releases, applications, reports and any changes, additions and

1    modifications thereto in connection with the consummation of the transactions contemplated by

2    the Exit Facility, including, without limitation, the marking of such filings, or the recording of any

3    security interests, as may be required by the Exit Facility.

4            23.    Without in any way limiting the foregoing, in the event that any person or entity

5    that has filed financing statements, mortgages, *lis pendens*, or other documents or agreements

6    evidencing interests with respect to the Debtors or their assets shall not have delivered to the

7    Debtors on or before the Effective Date, in proper form for filing and executed by the appropriate

8    parties, termination statements, instruments of satisfaction, releases of all liens, claims or interests

9    that such Holder may have with respect to the Debtors or their assets or otherwise, then each of the

10   Debtors, the Reorganized Debtors or any lender under the Exit Facility hereby is authorized to

11   execute and file such statements, instruments, releases and other documents on behalf of the

12   person or entity with respect to the Reorganized Debtors' assets.

13   **KK.    Exemption from Registration**

14           24.    The issuance and distribution of all of the Equity Interests in Reorganized EMAK

15   and Newco when issued or distributed as provided in the Plan, will be duly authorized and validly

16   issued.  The issuance and distribution of Equity Interests in Reorganized EMAK and Newco are in

17   exchange for Claims or Equity Interests against the Debtors, or principally in such exchange.

18   Under section 1145 of the Bankruptcy Code, to the extent, if any, that the Equity Interests in

19   Reorganized EMAK and Newco constitute "securities": (i) the offering of such items is exempt

20   and the issuance and distribution of such items will be exempt from Section 5 of the Securities Act

21   and any State or local law requiring registration prior to the offering, issuance, distribution, or sale

22   of securities; and (ii) all of the above-described items will be freely tradeable by the recipients

23   thereof, subject to (x) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the

24   definition of an underwriter in Section 2(a)(11) of the Securities Act, and compliance with any

25   rules and regulations of the SEC, if any, applicable at the time of any future transfer of such

26   securities or instruments; (y) the restrictions on the transferability of such securities and

27   instruments set forth in the Amended Organizational Documents, and (z) applicable regulatory

28   approval.

25.     In addition, any Equity Interests issued in the Reorganized Debtors or Newco shall bear a legend stating that such Equity Interests are not registered and cannot be transferred without the consent of Reorganized EMAK or Newco.

**LL.     Matters Relating to Implementation of the Plan**

a.     Corporate Existence

26.     Following the Effective Date, Reorganized Debtor EMAK shall be merged with and into Newco, a newly created wholly-owned subsidiary of EMAK.  Newco, which shall be named EMAK Holdings, Inc., shall be the successor-in-interest to EMAK and shall assume all liabilities of EMAK.  Upon the merger of Newco and Reorganized Debtor EMAK, the outstanding shares of Reorganized EMAK issued under the Plan will be converted into identical shares in Newco.  The certificate of incorporation and by-laws or other applicable organizational documents of Newco immediately following the merger shall be substantially the same as the Amended Organizational Documents attached to the Plan, and the equity ownership of Newco immediately following the merger shall be the same as the equity ownership of Reorganized EMAK immediately prior to the merger.

27.     Following the Effective Date, Reorganized Debtor EMAK and, following the merger set forth in paragraph 26 above, Newco, shall have all powers of a corporation, partnership or limited liability company, as the case may be, under the laws of the respective states governing their formation and may operate free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules or by the Court, subject only to the terms and conditions of the Plan (including, without limitation, all documentation, instruments, certificates and agreements entered into and/or delivered in connection therewith) and this Confirmation Order.

28.     Following the Effective Date, Reorganized Debtor EMAK Service shall remain in existence, with all powers of a corporation, partnership or limited liability company, as the case may be, under the law of the respective state governing its formation and may operate free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules or by the Court, subject only to the terms and conditions of the Plan (including, without limitation, all documentation,

instruments, certificates and agreements entered into and/or delivered in connection therewith) and this Confirmation Order.

29.     The Court approves as consistent with the interests of Holders of Claims and Equity Interests against the Debtors and with public policy the continuance of the current officers and directors of the Reorganized Debtors.  On the Effective Date, the operation of Reorganized Debtors shall become the general responsibility of the officers and directors of Reorganized Debtors.

> b.     Cancellation of Old Notes and Interests

30.     On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, and other documents, including documents evidencing the Equity Interests in EMAK, shall be canceled and the obligations of the Debtors thereunder or in any way related thereto shall be fully released, terminated, extinguished and discharged without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or any requirement of further action, vote or other approval or authorization.

31.     On the Effective Date, any Equity Interests in EMAK required to be issued under the Assumed Contracts and Leases shall first be issued and then immediately cancelled pursuant to paragraph 30 of this Confirmation Order.

> c.     Issuance of Equity Interests in the Reorganized Debtors

32.     On the Effective Date, the Reorganized Debtors shall issue, deliver or execute, as the case may be, all securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Plan, including, without limitation, the New Series A Preferred Stock, New Series B Preferred Stock and New Common Stock in Reorganized EMAK to be issued to Crown EMAK.

33.     Upon the merger of Reorganized Debtor EMAK and Newco, the outstanding shares of Reorganized EMAK issued under the Plan will be converted into identical shares in Newco. Following the merger of Reorganized EMAK and Newco, Crown EMAK shall transfer New Common Stock in Newco to those Holders of Common Equity Interests in EMAK that owned

more than 150,000 shares of Common Equity Interests in EMAK, returned the Designation and Release Form to Crown EMAK, and made make typical private placement representations.[9]

       d.    Directors and Officers

34.    The initial directors and officers of the Reorganized Debtors shall be the same directors and officers as the Debtors have immediately prior to the Effective Date, the identities of which are set forth on Exhibit "5" to the Plan.  Each such director, officer and member shall serve from and after the Effective Date pursuant to the terms of the Amended Organizational Documents, or other constituent documents or applicable state law.

35.    The Court approves as consistent with the interests of Holders of Claims and Equity Interests and with public policy the selection, election, and/or continuance, as the case may be, of these individuals; provided, however, that nothing set forth herein shall prevent any of the foregoing individuals from resigning or from being removed or replaced as an officer or director without further order of the Court.  On the Effective Date, the operation of each Reorganized Debtor shall become the general responsibility of the officers and directors of that Reorganized Debtor.

       e.    Corporate Action

36.    On the Effective Date (or on the Confirmation Date with respect to any actions taken prior to the Effective Date), the adoption and filing (as necessary) of the Amended Organizational Documents not otherwise specifically set forth in this Confirmation Order or the Plan, as the case may be, and all other approvals and corporate actions contemplated by the Plan and this Confirmation Order and not otherwise specifically enumerated in this Confirmation Order shall be authorized and approved in all respects (subject to the provisions hereof and to the provisions of the Plan).  All matters provided for herein or in the Plan involving the corporate structure of the Reorganized Debtors and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the equity holders or directors of the Debtors or the Reorganized Debtors.

---

[9] A list of accreditation requirements is attached to the Plan as Exhibit "8."

**MM.  Provisions Governing Distributions**

37.    The distribution provisions of Article VII of the Plan shall be, and hereby are, approved in their entirety.  Reorganized EMAK and, following the merger of Reorganized EMAK Newco, Newco, shall serve as Disbursing Agent pursuant to the terms and conditions of the Plan, shall have all of the rights, powers and duties set forth in Article VII of the Plan, and shall make all distributions required under the Plan.

**NN.    Procedures for Resolution of Disputed, Contingent and Unliquidated Claims or Equity Interests**

38.    The claim resolution procedures of Article VIII of the Plan shall be, and hereby are, approved in their entirety.  The Debtors may extend any deadline for filing objections to Claims by motion approved by this Court, and no such extension shall constitute a modification of the Plan or this Confirmation Order.

**OO.    Discharge, Release, Injunction, Exculpation and Indemnification**

39.    In light of all of the circumstances and the record in these Chapter 11 Cases, including the evidence provided in the Plan, the Supporting Documents or at the Confirmation Hearing, all provisions and sections of Article XI of the Plan shall be, and hereby are approved in their entirety as set forth therein.  Each of the discharge, release, injunction, indemnification and exculpation provisions provided under the Plan, including without limitation those set forth in Article XI of the Plan, are hereby approved as being (i) within the jurisdiction of the Bankruptcy Court to approve under 28 U.S.C. §§ 1334(a), 1334(b) and 1334(d); (ii) an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) an integral element of the transactions incorporated in the Plan; (iv) beneficial to, and in the best interests of, the Debtors, their Estates and the Holders of Claims and Equity Interests against the Debtors; (v) critical to the overall objectives of the Plan; and (vi) consistent with sections 105, 1123, 1129 and all applicable provisions of the Bankruptcy Code.

**PP.    Continuation of the Automatic Stay**

40.    All injunctions or stays imposed during the Chapter 11 Cases or contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms

until the Effective Date.  As of the Effective Date, the stay imposed by section 362 of the Bankruptcy Code shall be dissolved and of no further force and effect, subject to the injunction set forth herein and in the Plan and/or sections 524 and 1141 of the Bankruptcy Code, except that nothing herein shall bar the filing of documents in connection with the Exit Facility or the taking of such other actions as are necessary to effectuate the transactions specifically contemplated by the Plan or by this Confirmation Order.

**QQ.    Retention of Jurisdiction**

41.    Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and sections 157 and 1334 of title 28 of the United States Code, notwithstanding the entry or the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Cases and the Plan after the Effective Date, as legally permissible, on the terms set forth in Article XII of the Plan.

**RR.    Dissolution of the Committee**

42.    On the Effective Date, the Committee shall be released and discharged from the rights and duties arising from or related to the Chapter 11 Cases, except with respect to final applications for professionals' compensation.  The professionals retained by the Committee and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered or expenses incurred after the Effective Date, except for services rendered and expenses incurred in connection with any applications by such professionals or Committee members for allowance of compensation and reimbursement of expenses pending on the Effective Date or timely Filed after the Effective Date as provided in the Plan, as approved by the Court.

**SS.    Payment of Statutory Fees**

43.    All outstanding fees payable pursuant to Section 1930 of title 28, United States Code shall be paid on the Effective Date.  Until such time as the Chapter 11 Cases are closed, the Reorganized Debtors or Newco, as appropriate, shall pay all quarterly fees to the United States Trustee due from the Reorganized Debtors and shall submit all required post-confirmation reports.

1    **TT.    Section 346 Exemption**

2          44.      Section 346 of the Bankruptcy Code shall apply to any taxes that may potentially

3    result from, or may be related to, the events, transactions and occurrences of these Chapter 11

4    Cases, and, in particular, pursuant to section 346(j) of the Bankruptcy Code, no state or local tax

5    imposed on, or measured by, income shall be imposed on the Debtors or the Reorganized Debtors,

6    including, but not limited to, franchise taxes to the extent that any such franchise taxes arc

7    measured by book or taxable income of the Debtors or the Reorganized Debtors as result of the

8    forgiveness or discharge of indebtedness of the Debtors arising from the confirmation and

9    consummation of this Plan, including, but not limited to, undertaking the transactions

10   contemplated by the Plan of the Chapter 11 Cases, or any provision of the Plan or this

11   Confirmation Order.

12   **WW.    Preservation of Causes of Action**

13         45.      The Reorganized Debtors shall retain the right to pursue any and all Causes of

14   Action to the extent the Reorganized Debtors deem appropriate (under any theory of law or equity,

15   including, without limitation, the Bankruptcy Code and any applicable local, state, or federal law,

16   in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the

17   Case), to the extent not expressly released hereby or by prior or other order of this Court as set

18   forth in Article IX of the Plan.  Except as expressly provided in the Plan or the Confirmation

19   Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or

20   relinquishment of any such rights.  Nothing contained in the Plan or the Confirmation Order shall

21   be deemed a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal

22   or equitable defense that the Debtors had immediately prior to the Petition Date that is not

23   specifically waived or relinquished by the Plan.  The Reorganized Debtors shall have, retain,

24   reserve and be entitled to assert all such Claims, Causes of Action, rights of setoff and other legal

25   and equitable defenses that the Debtors had immediately prior to the Petition Date as if the

26   Chapter 11 Cases had not been commenced, and all of the Reorganized Debtors' legal and

27   equitable rights respecting any Claim that are not specifically waived or relinquished by the Plan

28

1 may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been

2 commenced.

3 **XX.    Section 1146 Exemption**

4    46.    Section 1146(c) of the Bankruptcy Code shall apply on the terms set forth in

5 Article XIII.K of the Plan.

6 **YY.    References to Plan Provisions**

7    47.    The Plan is confirmed in its entirety and hereby incorporated into this Confirmation

8 Order by reference.  The failure specifically to include or to refer to any particular provision of the

9 Plan in this Confirmation Order shall not diminish or impair the effectiveness of any such

10 provision.

11 **ZZ.    Post-Confirmation Notices and Bar Dates**

12        a.    Notice of Entry of the Confirmation Order

13    48.    In accordance with Bankruptcy Rule 2002 and 3020(c), within twenty business

14 days of the date of entry of this Confirmation Order, the Debtors (or their agents) shall give notice

15 of the entry of this Confirmation Order by United States mail, first class postage prepaid, by hand,

16 or by overnight courier service to all parties having been served with the Notice of Confirmation

17 Hearing; provided, however, that no notice or service of any kind shall be required to be mailed or

18 made upon any person to whom the Debtors mailed a Notice of Confirmation Hearing, but

19 received such notice returned marked "undeliverable as addressed," "moved, left no forwarding

20 address" or "forwarding order expired," or similar reason, unless the Debtors have been informed

21 in writing by such person, or are otherwise aware, of that person's new address.

22    49.    Mailing of the notice of entry of the Confirmation Order in the time and manner set

23 forth in the preceding paragraph are good and sufficient under the particular circumstances and in

24 accordance with the requirements of Bankruptcy Rule 2002 and 3020(c), and no further notice is

25 necessary.

26        b.    Bar Date for Requests for Administrative Claims

27    50.    All requests for administrative expenses pursuant to section 503 of the Bankruptcy

28 Code, except as otherwise set forth in subsection (c) below, must be filed with within thirty (30)

1  days of the Effective Date.

2      51.    The notice of entry of the Confirmation Order shall conspicuously set forth the bar

3  date for requests for administrative expenses, which shall constitute good and sufficient notice of

4  the bar date and, in accordance with the requirements of Bankruptcy Rules 2002 and 3020, no

5  further notice of the bar date is necessary.

6          c.    Final Fee Applications and Fee Application Bar Date

7      52.    Any professional seeking an allowance, pursuant to sections 327, 328, 330, 331,

8  503(b), 507(a)(1) and/or 1103 of the Bankruptcy Code, of (i) an Administrative Claim or (ii) final

9  compensation or reimbursement of expenses incurred on or before the Confirmation Date for

10 professional services rendered to the Reorganizing Debtors or in relation to these Chapter 11

11 Cases ("Professional Fees and Expenses") shall file an application for allowance of such

12 Administrative Claim or Professional Fees and Expenses (each, an "Application"), within thirty

13 (30) days of the Effective Date.

14     53.    Each Application shall comply with the applicable provisions of the Bankruptcy

15 Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and shall set forth, among other

16 things, in reasonable detail: (i) the name and address of the applicant; (ii) the nature of the

17 Professional Fees and Expenses for which reimbursement is requested for all periods from the date

18 the particular applicant was retained through the Confirmation Date; (iii) the amount of the

19 Professional Fees and Expenses requested; (iv) the amounts of Professional Fees and Expenses

20 previously allowed by the Court, if any; and (v) the amount or amounts of payments made to date,

21 if any, by the Debtors to reduce such allowed amount.

22     54.    A hearing on all Applications for Professional Fees and Expenses will be held on

23 August 11, 2011 at 2:00 p.m., before the Honorable Richard M. Neiter, Courtroom 1645, 255 East

24 Temple Street, Los Angeles, California.

25     55.    To the extent required by section 1129(a)(4) of the Bankruptcy Code, the Court

26 shall continue to have jurisdiction over, and applications shall be filed for, compensation and

27 reimbursement by a professional person for services rendered, costs or expenses incurred on or

28

after the Confirmation Date in or in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases.

**AAA.  Non-Material Changes**

56.    Article XIV.C of the Plan shall govern post-confirmation Plan modifications.

**BBB.    Authorization to Consummate**

57.    The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order.

**CCC.  Post-Confirmation Status Conference and Status Reports**

58.    A post-confirmation status conference will be held on November 3, 2011 at 2:00 p.m., before the Honorable Richard M. Neiter, Courtroom 1645, 255 East Temple Street, Los Angeles, California.

59.    No later than fourteen (14) days prior to the post-confirmation status conference, the Reorganized Debtors shall file a status report explaining what progress has been made toward consummation of the Plan including, but not limited to, all payments made to Holders of Allowed General Unsecured Claims and the status of Bouchard's Claim.  The initial report shall be served on the United States trustee, the 20 largest unsecured creditors, and those parties who have requested special notice.  Further reports shall be filed every 120 days thereafter and served on the same entities, unless otherwise ordered by the Court.

**DDD.  Final Administration**

60.    As and when the Plan is fully administered, the Debtors shall move the Court, pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule 3022, for a final decree and order closing these bankruptcy Chapter 11 Cases.

**EEE.    Final Order**

61.    This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

1

2                                    IT IS SO ORDERED

3

4                                        # # # #

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
     DATED: June 10, 2011
26                                            United States Bankruptcy Judge

27

28

2441825.5 03                              - 41 -

1

**PROOF OF SERVICE OF DOCUMENT**

2

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business
address is:  840 Newport Center Drive, Suite 400, Newport Beach, CA 92660-6324

3

4
The foregoing document described as [Proposed] **ORDER CONFIRMING REVISED FIRST
AMENDED JOINT PLAN OF REORGANIZATION FOR EMAK WORLDWIDE, INC.
AND EMAK WORLDWIDE SERVICE CORP. DATED APRIL 11, 2011, AS MODIFIED**

5
will be served or was served (a) on the judge in chambers in the form and manner required by
LBR 5005-2(d); and (b) in the manner indicated below:

6

7
**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** –
Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document
will be served by the court via NEF and hyperlink to the document. On June ___, 2011,  I checked the

8
CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following
person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es)

9
indicated below:

☐ Service information continued on attached page

10

11
**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity
served)**:**

12
On June 10, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this
bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in
the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as

13
follows. *Listing the judge here constitutes a declaration that mailing to the judge __will be__ completed no later
than 24 hours after the document is filed.*

14

☒ Service information continued on attached page

15

16
**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate
method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on June 10,

17
2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented
in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge
here constitutes a declaration that personal delivery on the judge __will be__ completed no later than 24 hours*

18
*after the document is filed.*

19
SERVED VIA MESSENGER/HAND DELIVERY::
Chambers of Honorable Richard Neiter

20
United States Bankruptcy Court
Roybal Federal Building

21
255 E. Temple Street, Bin Outside of Suite 1652
Los Angeles, CA 90012-3332

22

☒ Service information continued on attached page

23

24
I declare under penalty of perjury under the laws of the United States of America that the foregoing is true
and correct.

25
| 6/10/11 | Lori Gauthier | /s/ Lori Gauthier |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

26

27

28

**SERVED VIA E-MAIL:**

- Austin K Barron    abarron@buchalter.com, IFS_filing@buchalter.com;tcarson@buchalter.com
- Ron Bender    rb@lnbrb.com
- Russell Clementson    russell.clementson@usdoj.gov
- Daniel Denny    ddenny@gibsondunn.com
- Ted A Dillman    Ted.dillman@lw.com
- Joseph A Eisenberg    jae@jmbm.com
- John-patrick M Fritz    jpf@lnbrb.com
- Oscar Garza    ogarza@gibsondunn.com
- Matthew A Gold    courts@argopartners.net
- Michael I Gottfried    mgottfried@lgbfirm.com, msaldana@lgbfirm.com;ncereseto@lgbfirm.com
- Irving M Gross    img@lnbrb.com, angela@lnbrb.com
- Joshua Holt    josh.holt@bingham.com
- Donald K Ludman    dludman@brownconnery.com
- Kerri A Lyman    klyman@irell.com
- David L. Neale    dln@lnbrb.com
- Lisa N Nobles    LNobles@LGBFirm.com, MSaldana@LGBFirm.com;cscott@LGBFirm.com
- Justin E Rawlins    jrawlins@winston.com, docketla@winston.com
- Jeffrey M. Reisner    jreisner@irell.com
- Jeffrey Rosenfeld    jeffrey.rosenfeld@bingham.com
- Mark M Sharf    mark@forbankruptcy.com, msharf00@gmail.com
- Michael K Sugar    msugar@irell.com
- Rocky C Tsai    rocky.tsai@ropesgray.com,
  thad.davis@ropesgray.com;james.wilton@ropesgray.com;ross.martin@ropesgray.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Pamela Kohlman Webster    pwebster@buchalter.com
- Hatty K Yip    hatty.yip@usdoj.gov

**SERVED VIA FIRST-CLASS MAIL**

| | |
|---|---|
| Debtors<br>EMAK Worldwide, Inc.<br>EMAK Worldwide Service Corp.<br>c/o Teresa Tormey, Esq.<br>350 N. Orleans Street, 5th Floor<br>Chicago, IL 60654 | Russell Clementson, Esq.<br>c/o Office of the U.S. Trustee<br>725 S. Figueroa Street, Suite 2600<br>Los Angeles, CA 90017-5413 |
| Counsel for Official Committee<br>David Neale, Esq. and John-Patrick Fritz, Esq.<br>Levene, Neale, Bender, Yoo & Brill<br>10250 Constellation Blvd., Ste. 1700<br>Los Angeles, CA 90067 | Counsel for Creditor, Bouchard Margules &<br>Friedlander. PA<br>Landau Gottfried & Berger LLP<br>Attn: Michael I. Gottfried, Esq.<br>1801 Century Park East, Suite 1460<br>Los Angeles, CA 90067 |
| Crown EMAK Partners, LLC<br>c/o Gibson Dunn & Crutcher, LLP<br>Attn: Steven K. Talley, Esq.<br>1801 California Street, Suite 4200<br>Denver, CO 80202 | Crown EMAK Partners, LLC<br>c/o Gibson, Dunn & Crutcher LLP<br>Attn: Oscar Garza, Esq.<br>3161 Michelson Drive<br>Irvine, CA 92612 |

1

2 | In re:
EMAK WORLDWIDE, INC. | CHAPTER 11

3 | Debtor(s). | CASE NUMBER 2:10-BK-42779

4

## NOTICE OF ENTERED ORDER AND SERVICE LIST

5 Notice is given by the court that a judgment or order entitled (*specify*) **ORDER CONFIRMING
REVISED FIRST AMENDED JOINT PLAN OF REORGANIZATION FOR EMAK**
6 **WORLDWIDE, INC. AND EMAK WORLDWIDE SERVICE CORP. DATED APRIL 11,
2011, AS MODIFIED** was entered on the date indicated as "Entered" on the first page of this
7 judgment or order and will be served in the manner indicated below:

8 **I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** Pursuant to
controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served
9 on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of
June ___, 2011, the following person(s) are currently on the Electronic Mail Notice List for this
10 bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es)
indicated below.

11

12 ☒ Service information continued on attached page

13 **II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this
judgment or order was sent by U.S. Mail, first class, postage prepaid, to the following person(s)
14 and/or entity(ies) at the address(es) indicated below:

15 ☐ Service information continued on attached page

16 **III. TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this
judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will
17 serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile
transmission or email and file a proof of service of the entered order on the following person(s)
18 and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es)
indicated below:

19

20 ☒ Service information continued on attached page

21

22

23

24

25

26

27

28

2441825.5  03

**SERVED VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- Austin K Barron    abarron@buchalter.com, IFS_filing@buchalter.com;tcarson@buchalter.com
- Ron Bender    rb@lnbrb.com
- Russell Clementson    russell.clementson@usdoj.gov
- Daniel Denny    ddenny@gibsondunn.com
- Ted A Dillman    Ted.dillman@lw.com
- Joseph A Eisenberg    jae@jmbm.com
- John-patrick M Fritz    jpf@lnbrb.com
- Oscar Garza    ogarza@gibsondunn.com
- Matthew A Gold    courts@argopartners.net
- Michael I Gottfried    mgottfried@lgbfirm.com, msaldana@lgbfirm.com;ncereseto@lgbfirm.com
- Irving M Gross    img@lnbrb.com, angela@lnbrb.com
- Joshua Holt    josh.holt@bingham.com
- Donald K Ludman    dludman@brownconnery.com
- Kerri A Lyman    klyman@irell.com
- David L. Neale    dln@lnbrb.com
- Lisa N Nobles    LNobles@LGBFirm.com, MSaldana@LGBFirm.com;cscott@LGBFirm.com
- Justin E Rawlins    jrawlins@winston.com, docketla@winston.com
- Jeffrey M. Reisner    jreisner@irell.com
- Jeffrey Rosenfeld    jeffrey.rosenfeld@bingham.com
- Mark M Sharf    mark@forbankruptcy.com, msharf00@gmail.com
- Michael K Sugar    msugar@irell.com
- Rocky C Tsai    rocky.tsai@ropesgray.com,
  thad.davis@ropesgray.com;james.wilton@ropesgray.com;ross.martin@ropesgray.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Pamela Kohlman Webster    pwebster@buchalter.com
- Hatty K Yip    hatty.yip@usdoj.gov

**TO BE SERVED BY LODGING PARTY VIA FIRST-CLASS MAIL:**

| | |
|---|---|
| Debtors<br>EMAK Worldwide, Inc.<br>EMAK Worldwide Service Corp.<br>c/o Teresa Tormey, Esq.<br>350 N. Orleans Street, 5th Floor<br>Chicago, IL 60654 | Russell Clementson, Esq.<br>c/o Office of the U.S. Trustee<br>725 S. Figueroa Street, Suite 2600<br>Los Angeles, CA 90017-5413 |
| Counsel for Official Committee<br>David Neale, Esq. and John-Patrick Fritz, Esq.<br>Levene, Neale, Bender, Yoo & Brill<br>10250 Constellation Blvd., Ste. 1700<br>Los Angeles, CA 90067 | Counsel for Creditor, Bouchard Margules &<br>Friedlander. PA<br>Landau Gottfried & Berger LLP<br>Attn: Michael I. Gottfried, Esq.<br>1801 Century Park East, Suite 1460<br>Los Angeles, CA 90067 |
| Crown EMAK Partners, LLC<br>c/o Gibson Dunn & Crutcher, LLP<br>Attn: Steven K. Talley, Esq.<br>1801 California Street, Suite 4200<br>Denver, CO 80202 | Crown EMAK Partners, LLC<br>c/o Gibson, Dunn & Crutcher LLP<br>Attn: Oscar Garza, Esq.<br>3161 Michelson Drive<br>Irvine, CA 92612 |